## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BARBARA K. FELDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0910 (CKK) |
| | ) | |
| MIKE JOHANNS, | ) | |
| Secretary, Department of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Defendant hereby moves to dismiss the above captioned matter pursuant to Fed. R. Civ. P.

12(b)(6) and 56.  Plaintiff's complaint involves a challenge to an aspect of the equitable relief

provided by the Department of Agriculture following a jury trial in Civ. A. No. 99-1860 (GK), and

thus is not a proper subject for a new civil action.  A memorandum of points and authorities,

statement of material facts not in dispute, and proposed order are included with this motion.

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____/s/_____
PETER D. BLUMBERG, D.C. Bar # 463247
Assistant United States Attorney
United States Attorneys Office
Judiciary Center Building
555 4th Street, N.W., 10th Floor
Washington, D.C. 20530
(202) 514-7157

Dated: September 8, 2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BARBARA K. FELDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0910 (CKK) |
| | ) | |
| MIKE JOHANNS, | ) | |
| Secretary, Department of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

In January 2003, defendant Department of Agriculture provided Marvin Felder a position as an Area Director in the Animal and Plant Health Inspection Service ("APHIS"), International Services ("IS"), Foreign Service. The assigned position was graded at the FP-2 (GS-14 equivalent) level. This placement was done pursuant to an equitable relief Order issued by Judge Gladys Kessler following a plaintiff's verdict in <u>Felder v. Glickman</u>, Civ. A. No. 99-1860 (GK).

In her 2006 Complaint, plaintiff Barbara Felder (Marvin Felder's widow and personal representative) asserts that this 2003 assignment should have been at the FP-1 rather than FP-2 level (In the Foreign Service, higher graded positions carry a lower FP designation). As such, this Complaint plainly challenges the adequacy of the equitable relief provided by the Department of Agriculture, and, as such, should be brought (if at all) in a proceeding before Judge Kessler on either a Motion to Enforce her February 4, 2002 Order or on a Motion to Alter or Amend that Order.

In any event, even assuming that the issues raised in plaintiff's Complaint could be properly

adjudicated through a separate civil action, the case may be readily dismissed on either of two alternative grounds. First, Mr. Felder failed to make timely EEO contact as required under 29 C.F.R. § 1614.105(a)(1). He received his assignment to the IS position in January 2003 and was notified at that time that the position that was being provided pursuant to Judge Kessler's order would be at the FP-2 level. He did not contact the agency's EEO office until November 2003, well outside the 45 day period prescribed by regulation.

Further, APHIS has a legitimate, non-discriminatory reason for why Mr. Felder's co- plaintiff (Alester Van Simmons) received a retroactive "paper promotion" with his assignment, while Mr. Felder did not. Specifically, in complying with Judge Kessler's equitable relief Order, the Department of Agriculture sought to determine what FP level each of the two plaintiffs would occupy in 2003 if they had been selected into the Foreign Service in 1997 (the year they would have been selected but for the discrimination). Since Mr. Simmons would have entered onto duty at the FP-4 level, he likely would have received a promotion to the FP-3 level in the ensuing five years; thus, he was given an FP-3 to place him where he would have been but for the discriminatory non-selection. Mr. Felder, on the other hand, would have entered onto duty as an FP-2. At that higher level, promotions to FP-1 are far less common and require lengthier foreign service experience. In other words, though Mr. Felder and Mr. Simmons were plaintiffs in the same case, the two are not "similarly situated" for purposes of a disparate treatment claim because they were on different selection rosters and thus would have entered into the Foreign Service at different FP levels. Moreover, given that Mr. Felder and Mr. Simmons are both African American and were both prevailing plaintiffs in the same case, the notion that the difference in treatment may be ascribed to race or prior protected activity simply cannot withstand scrutiny.

-2-

## II.    **FACTUAL BACKGROUND**

_____ Plaintiff Barbara Felder brings this action as the personal representative of the estate of her

husband, Marvin Felder.  See Complaint ("Comp.") at ¶ 5.  Mr. Felder, an African American male,

was an employee of the Department of Agriculture/APHIS from 1978 through his death in March

2005.  See id. at ¶ 6.  In July 1999, Mr. Felder and another Department of Agriculture employee,

Alester Van Simmons, filed a civil action under Title VII of the Civil Rights Act on 1964, captioned

Felder v. Glickman, Civ. A. No. 99-1890 (GK) ("1999 Case"), alleging that they were discriminated

against on the basis of race when they were not selected for Foreign Service management vacancies

in IS in 1997.  Id. at ¶ 7.  The 1999 Case was tried to a jury, and the jury returned a verdict in favor

of the plaintiffs.  See id. at ¶ 8.

The  parties  then  briefed  post-trial  equitable  relief.    In  a  February  4,  2002  Order

accompanying a Memorandum Opinion on All Post Trial Motions, the District Court ordered:

> that Plaintiffs' Motion for Equitable Relief is granted in part and denied in part in
> that Plaintiffs are awarded instatement to the first opening or vacancy which becomes
> available in IS, back pay to the dates on which the first and second vacancies in IS
> were filled after creation of the roster on which each plaintiff was placed (without
> regard to whether selections were made from those rosters and without regard to
> whether selections were made from within or without IS), and front pay; and that
> Plaintiffs are denied housing allowances, subsistence allowances, lost home leave,
> lost overtime, lost sick leave, and entry of a broad injunction affecting future hiring
> and selection practices to fill vacancies in IS.

See February 4, 2002 Order at 2 (Ex. 1).  As Mr. Felder readily acknowledges, "[a] promotion was

not ordered."  See May 11, 2004 Affidavit of Marvin Felder (Ex. 2).

Pursuant to the District Court's Order, in January 2003 the agency assigned Mr. Felder to the

position of APHIS area director in Seoul, South Korea.  See January 15, 2003 letter from John H.

Wyss to Marvin Felder. (Ex. 3).  The position was classified as an agriculturalist, FP 401-2,

equivalent to a GS-14 in the civil service.  See id.  Through the assignment, Mr. Felder was converted into the Foreign Service at the FP-2 level.  See id.

Mr. Felder's co-plaintiff, Alester Simmons, was selected to fill the position of Plant Protection and Quarantine, Officer in Charge, in Kingston, Jamaica.  See February 27, 2003 letter from John H. Wyss to Alester Simmons (Ex. 4).  The position was classified as a Plant Protection and Quarantine Officer, FP-463-3 (GS-13 equivalent).  See id.  Through the assignment, Mr. Simmons was converted to the Foreign Service at the FP-3 level.

_____By letter of April 14, 2003 and an email of April 22, 2003, both Mr. Felder and Mr. Simmons requested that certain questions be answered before accepting these positions.  See May 9, 2003 letter from Ayoka Campbell to Kim Mann (Ex. 5) (referencing these communications).  Among the requests was one by Mr. Felder  for an FP-1 position either upon entry onto duty, or, alternatively, a non-competitive promotion after one year of successful performance.  See id.  By letter of May 9, 2003, the agency responded as follows:

> The Agency has agreed to place Mr. Felder into an FP-2 position equivalent to his current salary.  The record is clear that most individuals working in IS in 1997 at the FP-3 level remain at the FP-2 level today.  Therefore, the agency has offered Mr. Felder an FP-2 position.  Mr. Felder will be eligible for promotion to the FP-1 level and will be subject to IS promotion rules and regulations.  USDA is unable to give Mr. Felder preferential treatment with regard to promotion to the FP-1 level after 1 year of service.

See id.

In September 2003, Mr. Felder sent an email to Ralph Iwamoto, Deputy Administrator, APHIS, seeking to resolve, among other things, the "[d]ifference in handling the particulars of my case in comparison with the handling of Mr. Simmons case (promotion)."  See September 25, 2003 email from Marvin Felder to Ralph Iwamoto (Ex. 6).  In November 2003, Mr. Felder met with

-4-

several APHIS officials, and claims that he was not given a satisfactory conclusion with respect to his concerns. <u>See</u> Affidavit of Marvin Felder at 3 (Ex. 2); Affidavit of John Wyss at 5 (Ex. 7).

## III.    <u>PROCEDURAL HISTORY</u>

Mr. Felder contacted an EEO counselor on November 4, 2003. <u>See</u> Comp. at ¶ 15. On December 19, 2003, he filed formal charges with the agency, alleging discrimination on the basis of race and reprisal for not "promoting" him in the manner as Mr. Simmons. <u>See id</u>. After the investigation, the agency moved to dismiss on the basis that Mr. Felder's complaint constituted a collateral attack on the judgment Judge Kessler entered at the conclusion of the 1999 Case. Comp. at ¶ 17. In June 2005, the EEOC Administrative Judge dismissed the matter, finding that the EEOC did not have jurisdiction over Mr. Felder's Complaint. <u>Id</u>. at ¶ 19. Plaintiff appealed and in January 2006 the EEOC granted the appeal and vacated the order dismissing the Complaint. <u>Id</u>. at ¶ 20-21. The agency filed a Motion for Reconsideration which was denied in March 2006. <u>Id</u>. at ¶ 23.

Plaintiff filed her federal court Complaint on May 12, 2006. The first claim alleges disparate treatment discrimination on the basis of race, because the agency failed or refused to promote Mr. Felder from an FP-2 class, step 1 prior to his entry onto duty, while promoting Mr. Simmons from an FP-4 to an FP-3. <u>See</u> Comp. at ¶ 24. The second claim for relief alleges that the failure to provide plaintiff a position at the FP-1 level is attributable to unlawful retaliation. <u>See id</u>. at ¶¶ 29-30. As relief, plaintiff seeks compensatory damages, a retroactive promotion to the FP-1 level with commensurate lost wages and other benefits, and attorneys fees and costs.

## IV.    <u>STANDARD OF REVIEW</u>

### A.  **Dismissal Under 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a plaintiff

has stated a claim upon which relief can be granted. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds</u>, <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). In deciding a motion to dismiss under Rule 12(b)(6), the court is bound to consider all well-pleaded facts as true, and to draw all reasonable inferences in favor of the nonmovant. <u>Scheuer</u>, 416 U.S. at 236; <u>U.S. ex. rel. Harris</u>, 275 F. Supp.2d 1, 5 (D.D.C. 2003). Therefore "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Atchinson v. District of Columbia</u>, 73 F.3d 418, 422 (D.C. Cir. 1996).

### 2. Summary Judgment

If the Court looks to matters outside the pleadings in resolving the Motion to Dismiss, the motion is treated as one for summary judgment and addressed under Rule 56. <u>See</u> Fed. R. Civ. P. 12(b). Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986); <u>Tao v. Freeh</u>, 27 F.3d 635, 638 (D.C. Cir. 1994). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587. The mere existence of a factual dispute, however, will not defeat summary judgment. The non-moving party must show that the dispute is genuine and material to the case. That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party. <u>Anderson</u>, 477 U.S. at 247-48; <u>Laningham v. United States Navy</u>, 813

F.2d 1236, 1242-43 (D.C. Cir. 1987). If the evidence favoring the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. See Anderson, 477 U.S. at 249-50 (citations omitted). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'" Celotex Corp., 477 U.S. at 323 (citations omitted).

Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Rather, when the movant files a properly supported summary judgment motion, the burden shifts to the nonmoving party to show "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Further, the non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Further, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex , 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## V.    ARGUMENT

### A.    As This Matter Concerns the Adequacy of the Position in Which Mr. Felder Was Appointed Pursuant to Judge Kessler's Equitable Relief Order, This Case Is Not Properly Brought as a New Civil Action

Plaintiff's contention in this lawsuit is that the Department of Agriculture should have placed him at the FP-1 rather than FP-2 level when giving him his IS/APHIS foreign service assignment.

The starting point for evaluating this allegation of allegedly discriminatory and retaliatory conduct begins, necessarily, with a consideration of how Mr. Felder came to obtain this foreign service position in the first instance. Mr. Felder did not receive the job through a competitive selection process. Nor was he given the position through an accretion of duties or some other form of non-competitive selection. Rather, he was placed in this position in order to satisfy the Department of Agriculture's obligation to comply with Judge Kessler's February 2002 equitable relief Order. Since plaintiff's challenge concerns the adequacy of the position that the agency provided – i.e., that the position did not constitute "make whole" relief because it was at the FP-2, rather than FP-1 level – the proper forum for hearing these claims is in a proceeding before Judge Kessler either on a Motion to Enforce, or on a Motion to Alter/Amend the Equitable Relief order.

No matter how cleverly plaintiff tries to re-package this claim, the substance of the Complaint concerns relief that Mr. Felder claims to be entitled to as a consequence of the finding of discrimination following the trial in the 1999 Case. Lest there by any doubt on this point, it should be noted that one of the things that plaintiff claims that would follow from a change in FP level are "step increases associated with the retroactive reinstatement." See Complaint of Employment Discrimination (Ex. 8). Most assuredly, a claim of agency error that if resolved in plaintiff's favor might increase the salary and/or other benefits that Mr. Felder would receive as a result of his initial placement in the Foreign Service under Judge Kessler's order is a dispute about post-trial relief. Such a claim must be addressed as part of the case that gave rise to that relief; and not in a separate Title VII proceeding.[1]

---

[1]Indeed, the appellate record in the 1999 Case suggests that plaintiffs *did* try to (belatedly) raise an issue with respect to being placed in certain FP "pay brackets" and argue that they were entitled to lost back wages. See Appellant's Opposition to Appellee's Motion for Summary

Furthermore, the contemporaneous communications from Mr. Felder's counsel demonstrate that the FP level was an issue inextricably bound up with the agency's obligations under Judge Kessler's order. In a January 31, 2003 letter from Mr. Felder's attorney to the Assistant United States Attorney who defended the earlier action, Mr. Felder's attorney discusses the FP level assignments as part of "conclud[ing] the process of transferring Marvin Felder and Van Simmons," laying bare the fact that the FP level is an element of the relief phase of the 1999 Case, and not an issue for a separate Title VII claim. See January 31, 2003 letter from Kim Mann to Marina Utgoff Braswell at 1 (Ex. 12); see also id. at 3 (describing the resolution of the FP level as part of the "wind up" of the 1999 Case). The fact that this issue was not ultimately resolved in a manner satisfactory to Mr. Felder does not entitle him to jury-triable de novo proceedings.

In sum, the Complaint here claims that there is a deficiency in the position that Mr. Felder was provided under Judge Kessler's relief order; namely, that it should have been at the FP-1, rather than FP-2 level. Mr. Felder's claim is that only an FP-1 position would make him whole; that is, that but for the discrimination that he suffered back in 1997, he would have been an FP-1 in January 2003. The Department of Agriculture, conversely, submits that the FP-2 position satisfied the Department's obligation under Barbour v. Merrill, 48 F.3d 1270, 1278 (D.C. Cir. 1995), to make a victim of discrimination as whole as possible. See infra Part V.C. This dispute is plainly about the adequacy of the relief provided as a consequence of the judgment in the 1999 Case, and must be addressed by Judge Kessler through an appropriate proceeding in that case. Consequently, the 2006

---

Affirmance at 3-6 (Ex. 9); Appellee's Reply to Appellant's Opposition to Appellee's Motion for Summary Affirmance at 2-5 (Ex. 10). The Court of Appeals dismissed this claim on the basis that plaintiff did not raise any issue concerning lost wages with the District Court. See Order of September 11, 2002, Felder v. Veneman, App. No. 02-5141 (Ex. 11).

Civil Action should be dismissed.

**B.  If Construed As a Separate Title VII Case, This Claim May Be Readily Dismissed For Failure to Make EEO Contact Within 45 Days of the Alleged Adverse Employment Action**

"[A] timely administrative charge is a prerequisite to initiation of a Title VII action in the District Court." Cones v. Shalala, 945 F. Supp. 342, 346 (D.D.C. 1996) (quoting Jarrell v. U.S. Postal Serv., 753 F.2d 1088, 1091 (D.C. Cir. 1985)), rev'd on other grounds, 199 F.3d 512 (D.C. Cir. 2000). Mr. Felder, as a federal employee, was required to contact an EEO counselor within forty-five days of the matter alleged to be discriminatory. 29 C.F.R. § 1614.105(a)(1).

The requirement that an aggrieved employee initially seek relief from the agency by exhausting administrative remedies is "not a mere technicality." Park v. Howard University, 71 F.3d 904, 907 (D.C. Cir. 1995). Instead, "it is part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment." Kizas v. Webster, 707 F.2d 524, 544 (D.C. Cir. 1983). Exhaustion serves the important functions of providing notice to the agency, allowing prompt adjudication and a narrowing of issues, and giving federal agencies the chance to handle matters internally to the maximum extent possible. See Park, 71 F.3d at 907.

Application of these principles precludes plaintiff from proceeding with this matter as a distinct Title VII civil action. The "discriminatory event" challenged in the Complaint is Mr. Felder's being assigned to the APHIS Area Director position at the FP-2 level, rather than the FP-1 level. See Comp. at ¶ 14; Delaware State College v. Ricks, 449 U.S. 250, 257-58 (1980) (stating that in an employment discrimination case, the limitations period begins to run at the time of the adverse act). APHIS provided Mr. Felder with his area director position on January 15, 2003, and he was

-10-

informed in the assignment letter that he was being converted into the Foreign Service at the FP-2 level.  See January 15 letter (Ex. 3).  Thus, assuming arguendo that Mr. Felder's claim is a proper subject for a new civil action, rather than a thinly disguised challenge to an equitable relief award, then Mr. Felder was required to make EEO contact no later than March 1, 2003, the forty-fifth day following receipt of his assignment.

In light of this plain failure to make timely EEO contact, defendant anticipates that Mr. Felder will respond by arguing that he was not actually aware of the alleged difference in treatment between himself and Mr. Simmons until sometime after the January 15 notice of his assignment.  The Complaint is curiously and tellingly vague on exactly when Mr. Felder learned that Mr. Simmons would be entering onto duty as an FP-3 rather than an FP-4.  Given that both Mr. Felder's and Mr. Simmons' FP levels are addressed in Mr. Mann's January 31 letter to AUSA Braswell, and that the letter was cc'd to the two clients, Mr. Felder was surely aware of the issue by January 31.  See Jan 31 Lett. (Ex. 12).  Ultimately, however, this date is immaterial, because  the decisional law makes it abundantly clear that the date on which Mr. Felder learned of Mr. Simmons' promotion is not the operative date for commencing the 45 day period.

The CFR provides that the 45-day limitations period for EEO contact is triggered when a "complainant should reasonably suspect discrimination, but before all the facts that would support a charge of discrimination have become apparent." 29 C.F.R. § 1614.105(b) (emphasis added). Thus, for example, in McCants v. Glickman, 180 F. Supp.2d 35, 39 (D.D.C. 2001), the plaintiff was not selected for a position as a Department of Agriculture attorney in 1992.  He did not make contact with USDA's EEO office, however, until 1994.  Id.  His expressed reason for the delay that he did not have "tangible information" of discrimination until 1994, at which time he learned that nine

black women graduates of Howard University had been selected. Id. He contended that because

he made EEO contact within three days of learning this information, he satisfied the exhaustion

requirements. The exact language used by the Court in its rejection of this argument is instructive:

> In essence, the plaintiff argues that the court should focus on the date the complainant
> acquires evidence of discrimination rather than the actual date of the act or the date
> that the complainant first suspects discrimination as a motivation for the act.
> Existing law, however, does not support the plaintiff's argument that the time
> limitation did not begin to run until he learned of facts that supported his employment
> discrimination claim. In Delaware State College v. Ricks, 449 U.S. 250 (1980), the
> Supreme Court held that the limitations period in an employment discrimination case
> begins to run at the time of the adverse act. The Fourth Circuit later expounded on
> that decision, holding that while a plaintiff's ignorance of the discriminatory motive
> for an adverse act is "relevant to an analysis of equitable tolling," it plays no role "in
> determining the beginning of the statutory limitation period." See Felty v.
> Graves-Humphreys Co., 785 F.2d 516, 518-19 (4th Cir.1986). The 45-day time
> period began to run, then, when Mr. McCants learned that he was not selected for the
> position. Consequently, Mr. McCants failed to contact an EEO counselor within the
> proper time frame.

Id. at 40. This holding is on all fours with the situation presented in the instant case. The 45 day

time period to make contact with the agency's EEO office began to run at the time of the alleged

violation, which was on January 15, 2003, when Mr. Felder learned that he was being placed in the

area director position at an FP-2 level. Since EEO contact was not made within 45 days of January

15, 2003, Mr. Felder has failed to meet the regulatory prerequisites to have his case heard in federal

court. Cf. Krishnan v. Mineta, 150 F. Supp.2d 31, 35 (D.D.C. 2001) (using date that plaintiff learned

of non-selection to establish trigger date for EEOC contact); see also J.D. Hamilton v. First Source

Bank, 928 F.2d 86, 89 (4th Cir. 1990) (citing numerous cases).

Nor can plaintiff be heard to say that he did not have cause to question the FP-2 placement

at the time the assignment was made, because Mr. Felder did, in fact, voice a concern about the FP

level of the area director assignment. After learning that he would be placed in an FP-2 position, Mr.

Felder, through counsel, requested that he either be given an FP-1 immediately upon entry on to duty, or receive a non-competitive promotion to the FP-1 level after one year of successful performance. See May 9, 2003 Letter from Ayoka Campbell to Kim Mann (Ex. 5); see also January 31, 2003 letter from Kim Mann to Marina Utgoff Braswell (Ex. 12). Moreover, the January 31 letter also discusses Mr. Simmons' FP placement, meaning that Mr. Felder was certainly aware of any difference in treatment between the two by that date.  See Jan. 31 letter (Ex. 12).

For these reasons, insofar as the subject of plaintiff's Complaint is a cognizable Title VII challenge rather than a challenge to the equitable relief awarded in the 1999 Case, it should be summarily dismissed under well-settled administrative exhaustion principles.

### C.    Mr. Felder and Mr. Simmons Are Not Similarly Situated, Thereby Explaining The Differences in Treatment Upon Entry Into the Foreign Service.

Even if this Court determines both that plaintiff's claims are the proper subject of a new Title VII proceeding and that the requirement of timely EEO contact has been satisfied, the claim of disparate treatment discrimination may be nonetheless readily dismissed as a matter of law. Plaintiff's entire Complaint is based on a demonstrably false premise; namely, that he and Mr. Simmons are "similarly situated" employees, such that if placing Mr. Simmons in his 2002 foreign service position required moving him up one FP level, then Mr. Felder should have been moved up one FP level as well.

To understand how the agency determined the FP levels for the two co-plaintiffs from the 1999 Case, one must begin with Judge Kessler's equitable Order (which only further supports why this matter should be heard, if at all, as part of an equitable proceeding before Judge Kessler).  The Order required instatement to an IS opening as soon as one  became available.  See February 4, 2002

-13-

Order. Both Mr. Felder and Mr. Simmons had applied for positions in 1997. Thus, the agency had to determine what level positions the two would likely be occupying in 2002 had they been selected back in 1997. See Wyss Aff. at 3 (Ex. 7) (explaining that class levels were determined by extrapolating what would have happened if the two had entered onto duty in 1997); Barbour, 48 F.3d at 1278.

Though Mr. Felder and Mr. Simmons were co-plaintiffs in the 1999 case, they were at different GS levels at the time they applied for the positions that were the subject of that lawsuit, and thus were on the selection rosters at different levels. See Affidavit of Freida Skaggs ("Skaggs Aff.") at 3-4 (Ex. 13). At the time Mr. Simmons applied for the 1997 position that was the subject of the 1999 lawsuit, he was on the FS-436-4 (GS-12) roster. See Skaggs Aff. at 4 (Ex. 13). In order to provide "make whole" relief and place Mr. Simmons where he would have been but for the discriminatory act, the agency determined that it had to find someone who was selected at approximately the same time close to Mr. Simmons's GS level, and then parallel that individual's progression through the Foreign Service with Mr. Simmons'. See id.; see also Wyss Aff. at 3 ("the class level, salary and conditions [the plaintiffs] received in 2003 and 2004 were determined by extrapolating what would have happened if they entered the APHIS-IS FS in 1997") (Ex. 7). Since the comparitor received a promotion through the Foreign Service Board Process in the ensuing 5 year period, the agency concluded that Mr. Simmons had to be brought in at a higher level as well. See id. It is for this reason that Mr. Simmons was brought in as an FP-3 rather than an FP-4 and received a "paper promotion" prior to his entry onto duty. See Comp. at ¶ 13.

Mr. Felder, in contrast, was on the FS-436-3 (GS-13) level roster when he applied to the Foreign Service in 1997. See Skaggs Aff. at 4 (Ex. 13). Since 1994, APHIS had operated under an

internal policy of bringing individuals into the Foreign Service career system at a level no higher than the FP-3 (GS-13) level.  See Skaggs Aff. at 2 (Ex. 13); see also Wyss Aff. at 2 (Ex. 7)(same; further explaining that some employees have even taken downgrades in order to enter the Foreign Service).  Thus, the agency would have been well within its right to bring Mr. Felder in as an FP-3. Despite the policy, the determination was made to bring Mr. Felder into the system at the FP-2 level, one level higher than the typical entry level.  See Skaggs Aff, at 2-3 (Ex. 13); see also Campbell Lett. at 2 (Ex. 5).  In other words, far from being treated adversely on account of his successful lawsuit, Mr. Felder actually was placed in a better position than a typical entrant into the Foreign Service career system, as he was permitted to enter onto duty as an FP-2 rather than an FP-3.

Promotions from the FP-2 level to the FP-1 are much more scarce than promotions at lower FP levels, and the Department of Agriculture determined that a person entering onto duty in the Foreign Service in 1997 at the FP-2 level with just five years foreign service experience would not likely have obtained an FP-1 position by 2002.  See Affidavit of Nicholas Gutierrez ("Gutierrez Aff.") at 4 (Ex. 14); Skaggs Aff. at 3-8 (Ex. 13); Wyss Aff. at 3 (Ex. 7); Campbell Lett at 2 (Ex. 5).

In sum, both Mr. Felder and Mr. Simmons were treated the same. With respect to both prevailing plaintiffs, the agency sought to determine what level position they would likely be occupying assuming that they had been selected for the 1997 Foreign Service positions that were the subject of the 1999 Case.  The reason that Mr. Simmons received a "paper promotion" while Mr. Felder did not is attributable to the fact that Mr. Simmons would have entered onto duty in 1997 at a lower FP level, and would have likely received a promotion by 2002.  Since Mr. Felder was entering onto duty at the FP-2 level (though the typical entry level is an FP-3), he likely would not have received a promotion to an FP-1 by 2002.  The "contrast" between the two that gives rise to

-15-

plaintiffs challenge (see Comp. at ¶ 14) is attributable to the level at which they would have entered the foreign service, and not for any reason prohibited under Title VII. Indeed, since Mr. Felder and Mr. Simmons are both African American and were both plaintiffs in the same lawsuit, it strains all credulity to suggest that the difference in treatment gives rise to an inference of discrimination or retaliation. See Chappell-Johnson v. Powell, 440 F.3d 484, 488 (D.C. Cir. 2006) (requiring a plaintiff to show that an adverse act gives rise to an inference of discrimination to make a prima facie case); Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002) (same) (quoting Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir.1999)); see also Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir.1999) (establishing prima facie case of discrimination by showing that plaintiff was treated differently from similarly situated employees outside the protected class).

During the administrative proceedings, Mr. Felder contended that there were internal employees who were promoted from the FP-2 to the FP-1 ranks in each year from 1997 through 2003. See Felder Aff. at 2 (Ex. 2). However, in order to support a contention that these other employees are "similarly situated" for purposes of a disparate treatment analysis, Mr. Felder "is required to demonstrate that all of the relevant aspects of [his] employment situation were 'nearly identical to those of the comparitors.'" Neuren v Aducci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir.1994)); see also Holbrook, 196 F.3d at 261; Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1554 (D.C. Cir. 1997); Dickerson v. Secteck, Inc., 238 F. Supp.2d 66, 77 (D.D.C.2002).

Here, it is not the case that all of the relevant aspects of Felder's employment situation were nearly identical to those persons who did receive promotions from the FP-2 to FP-1 level. First, all of the individuals identified by Mr. Felder had been in the foreign service longer than the five years

-16-

of service that Mr. Felder would be credited with (presuming service by Felder from 1997 to 2002). <u>See</u> Wyss Aff. at 3-5 (Ex. 7) (going through each of the alleged comparitors and providing information as to their length of service).  Second, when making promotion determinations, the employees reviewed are grouped by occupational series and compete against persons in their series for promotions.  <u>See</u> Skaggs Aff. at 5.  Mr. Felder's attempt to look to employees in other occupational series is therefore irrelevant; what is relevant is the experience of people in his series.

In addition, as Mr. Wyss explained in his declaration, "it is normally much easier to come in as an FP-4 and get promoted to an FP-3 than it would be to come in at an FP-3 and get promoted to an FP-2 and then to an FP-1." Wyss Aff. at 3.  This is borne out by a consideration of the number of promotions on a year-to-year basis.  In 1997 there were three promotions from the FP-2 to FP-1 level out of a total of 23 employees; one out of 17 in 1998; three out of 19 in 1999; three out of 18 in 2002 and three out of 22 in 2003.  <u>See</u> Skaggs Dec. at 5-8.  This low number of promotions, combined with the fact that all of those promoted to the FP-1 level had more than five years foreign service experience demonstrates that the agency properly placed Mr. Felder at the FP level where he would have been had he been selected into the Foreign Service in 1997.

## VI.    <u>CONCLUSION</u>

WHEREFORE, defendant requests that this matter be dismissed, with prejudice.  A proposed order is included.

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

-17-

_____ /s/ _____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____ /s/ _____
PETER D. BLUMBERG, D.C. Bar # 463247
Assistant United States Attorney
United States Attorneys Office
Judiciary Center Building
555 4th Street, N.W., 10th Floor
Washington, D.C. 20530
(202) 514-7157


Dated: September 8, 2006