# WITNESS AFFIDAVIT

I, John H. Wyss (Caucasian, white, no EEO activity) am an employee of the U.S. Department of Agriculture (USDA), Animal and Plant Health Inspection Service (APHIS), International Services (IS), located in Riverdale, Maryland. In the capacity of Assistant Deputy Administrator, IS, APHIS, USDA, FE-701-2/5 from January 13, 2002, to the present. My telephone number during working hours is 301-734-5257.

I HAVE BEEN ADVISED OF THE FOLLOWING:

I am required by Federal regulations and Department of Labor policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the Department of Agriculture. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations. This means that any employees whom I accuse of discrimination or other acts of impropriety may be shown relevant portions of my affidavit and be provided an opportunity to respond for the record. In addition, the Complainant and the appropriate Departmental officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

I am entitled to representation by a person of my choice during my participation in the EEO process, so long as my choice does not result in a conflict of interest. I have not chosen a personal representative at this time.

EEO regulations specifically protect participants in the EEO complaint process from any acts of reprisal, discrimination, coercion, harassment, restraint, or interference as a result of their participation in the complaint process.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly _ swear or x affirm that the statement which follows is true and complete to the best of my knowledge and belief, and fully addresses the issues and allegations raised with me by the investigator.

I understand Mr. Felder has filed a formal EEO complaint which was acknowledged but not formally accepted (no date). The text of this letter states:
Whether the agency subjected the Complainant to discrimination based on race (African American), color (Black) and reprisal (unspecified), when it failed to:
Instate him at the FP-1 level before his transfer on January 5, 2004; and,
Grant him step increases retroactive with the instatement.



Page 1 of 5         59         ____/JHW____ Initials

Specifically, Mr. Felder claims that he should have been instated, effective February 14, 1997, to salary grade FP-1/02 rather than FP-2/09. He also contends he was not given salary step increases he would have received since that date.

**Please briefly list the responsibilities of your position.**

I am the Assistant Deputy Administrator for International Services Administrative Services (ISAS) and report to the Deputy Administrator, International Services, APHIS, USDA. The position has the responsibility for the overall planning, management, and supervision of ISAS activities. The position supervises five Directors, each with their own personnel, who are responsible for managing and supervising their respective sections. The ISAS Directors cover the following administrative areas: 1) Personnel and Travel, 2) Budget and Fiscal, 3) Information Technology, 4) General Services, and 5) Special Projects.

**Were you involved in decisions regarding Complainant's salary? Who was responsible for making the final decision regarding his salary?**

Our Director of Personnel and Travel, Ms. Freida Skaggs and I provided requested information to the assigned attorney in the USDA Office of General Counsel (OGC) which made the decisions in consultation with the Complaint's lawyer. I prepared the letter to Mr. Felder which stated his starting class level, salary, and conditions. I understand that the OGC lawyer received statements from Complaint's lawyer that they agreed to the class level, salary, and conditions.

**What policy did IS follow with regards to salary for candidates entering IS in 1997?**

APHIS follows U.S. Department of State and USDA Foreign Agriculture Services policies. It's called lateral entry policy. The entry level for APHIS-IS Foreign Service (FS) is FP-3 which is equivalent to a GS-13. Prospective employees above the GS-13 grade level must sign a statement agreeing to take a downgrade for entry into the APHIS-IS FS. We have had employees that have taken downgrades to enter APHIS-IS FS. Ms. Skaggs can provide names.

**Complainant contends the State Department Foreign Affairs policy should have been followed. Is this your understanding?**

We did follow those policies. There are some differences. They use a lateral entry of FS-4 (a lower level) but we use the FP-3 entry level.

**Complainant contends that a comparative, Alester Simmons, received the equivalent of his base salary and locality pay upon entry into IS. Is this correct? Can you provide documentation (SF-52) to show his salary conversion from the GS to FP pay plan?**

You'll need to ask Ms. Freida Skaggs for the documentation and salary calculation.

Exhibit 11
Page 2 of 5
_____ Initials

**Was this salary conversion calculated per policy?**

I believe the policy was followed as close as possible, but being a court ordered settlement case there may have been some deviation in favor of the Complaint. Both Mr. Simmons and Mr. Felder were instated retroactively to February 14, 1997. The class level, salary, and conditions they received in 2003 and 2004 were determined by extrapolating what would have happened if they entered the APHIS-IS FS in 1997. This extrapolation took into consideration all standard increases and the probability of promotions. Mr. Simmons' case was based on a comparative, Mr. Ken         a who entered the APHIS-IS FS in 1997. Mr.         came in at an FP-5, less than an FP-4, and was promoted to an FP-4. In Mr. Felder's case there were no equivalent employees to be used for comparison. In addition, it is normally much easier to come in as an FP-4 and get promoted to an FP-3 than it would be to come in at an FP-3 and get promoted to an FP-2 and then to an FP-1.

**Complainant claims that because of discrimination, at no time during the period February 14, 1997 (instatement) until December 3, 2003, was he allowed to meet with the Promotion Review Board in order to submit his accomplishments and receive consideration for promotion. Please explain the policy and practice for promotion from FP-2 to FP-1.**

No employees meet with the board; each employee's performance evaluation is reviewed by the APHIS Intermediate Selection Board. That Board looks at all the performance evaluations of employees of the same class level and series, and then ranks them. There is a forced ranking of the employees. One employee is ranked number 1. The next employee is ranked number 2, etc. If there are one or more promotional opportunities, the top ranked employees would be the ones recommended eligible for the promotion. APHIS-IS FS has no discretion, the number 1 employee has to be recommended for promotion first, the second ranked employee, second, etc. The Board makes recommendations to the IS Deputy Administrator who makes recommendations to the APHIS Administrator. The APHIS Administrator makes the decision to accept the recommendations or not. This process and the probability of each Complainant receiving a promotion were taken into consideration in arriving at the suitable class level, salary, and conditions.

**Complainant claims IS has stated there were no comparatives, i.e., no employees who received a promotion from FP-2 to FP-1 in 2001, however, he claims four employees were promoted from FP-2 to FP-1 in 2001: J.         , D.         i E.         and R.         . Is this correct? Are these employees similarly situated to Complainant? Does it matter that these employees were in a different series than Complainant?**

What OGC looked for in comparatives were employees who came on board (started) in 1997.         (Caucasian, white, no EEO activity)         (Caucasian, white, no EEO activity), and         (Hispanic, white, no EEO activity) have all been with the APHIS FS since the 1980s and had been in several different positions.         and         are both 414 Series Entomologists. These were not similarly situated comparatives for Mr. Felder in that they had been with the APHIS IS FS much longer. There were no comparatives of equivalent employees who came in 1997.

I do not know for sure when Dr         (Asian, yellow, no EEO activity) came into the FS.

I know he did take a downgrade (from GS-14 to GS-13) when he came in as an FP-3. He was promoted back up in the next 3-5 years. Mr. _____ came in as a 701 Series, Veterinary Medical Officer (VMO) in Puerto Rico then moved to a 701 Series position in Japan. Now he is in a 401 Series, Agriculturist in Japan. Mr. _____ has been in two locations in three different positions. Ms. _____ was a 436 Series, Plant Protection Quarantine Officer (PPQ), the same as Mr. Felder. Mr. Felder is currently in a 401 Series position. Promotional opportunities are series specific.

Ms. Freida Skaggs can give you more specific information.

**Complainant claims in 1997 J. _____ C. _____ and P. _____ were promoted from FP-2 to FP-1. Is this correct? Were these employees in the same series/job classification as Complainant?**

Yes, they were all promoted in 1997. Mr. _____ Caucasian, white, no EEO activity), retired in 2001 with 38 years experience. He was in the 341 Series, Administrative Officer. Mr. _____ Caucasian, white, no EEO activity) came in 1989. He was in the same series as Mr. Felder. Dr. _____ (Hispanic, white, no EEO activity) came in 1993. Dr. _____ was a 701 Series, VMO. This group of employees had all been with APHIS IS FS for more years than Complainant.

**Complainant claims in 1998, N. _____ was promoted from FP-2 to FP-1. Is this correct? Was this employee in the same series/job classification as Complainant?**

Mr. _____ (Hispanic, white, no EEO activity) was promoted in 1998. He is also a long term APHIS-IS FS employee. He started working in the 1980. He is in the same series as Mr. Felder.

**Complainant claims in 1999, D. _____ S. _____ and G. _____ were promoted from FP-2 to FP-1. Is this correct? Please explain each promotion, whether the promotion was a result of submitting accomplishments and meeting with the Promotion Review Board, the race, color and EEO status of each. Were these employees in the same series/job classification as Complainant?**

Dr _____ (Caucasian, white, with EEO activity), is in the 414 Series, Entomologist. He started in the mid 1980s with APHIS-IS FS. Dr. _____ (Caucasian, white, no EEO activity) is in the 701 Series, VMO. He entered in the mid 1980s. Mr. _____ (Caucasian, white, no EEO activity) is a 436 Series, PPQ Officer the same as Mr. Felder. He started in mid 1980s. No employees appear before the Board; their performance evaluations are reviewed and compared to other FS employees in their same class and series.

Exhibit 11
Page 4 of 5

**Complainant claims in 2002, C. E., and K. were promoted from FP-2 to FP-1. Is this correct? Please explain each promotion, whether the promotion was a result of submitting accomplishments and meeting with the Promotion Review Board, the race, color and EEO status of each. Were these employees in the same series/job classification as Complainant?**

All three (C. Black, light, no EEO activity), E. (Caucasian, white, no EEO activity) and K. (Caucasian, white, no EEO activity)) are Veterinary Medical Officers. All three had their performance evaluations submitted to the Board. Ms. has been with APHIS-IS FS since the mid 1980s. Dr. started in 1980. He was a FP-2 for 16 or 17 years before being promoted to FP-1. Dr. has been with the agency since early 1990s. No employees appear before the Board; their performance evaluations are reviewed and compared to other FS employees in their same class and series.

**Complainant claims in 2003, G. D. and H. were promoted from FP-2 to FP-1. Is this correct? Were these employees in the same series/job classification as Complainant?**

Yes, the first two (G. (Black, medium, no EEO activity), D. el (Caucasian, white, no EEO activity)) are in the 436 Series, PPQ Officers. Dr. (Caucasian, white, no EEO activity) is in the 414 Series, Entomologist. Mr stated in the late 1980s or early 1990s. Mr. is a long term employee. Dr. was grand fathered into the APHIS-IS FS in 1983.

The important thing here to remember is that this was a part of a court ordered settlement. The details of the settlement were reached between the OGC's and Complainant's attorneys. All ISAS did was provide information and do the necessary paperwork. In December 2002, there was a meeting between all the lawyers and everything was discussed and worked out in the following months. In November 2003, there was a meeting where I remember that the Complainant stated that he was displeased with the class level and that he would handle it "another way." There were several letters and discussions with the USDA OGC lawyer over a period of several months before the Complainant accepted and eventually started to work.

I have reviewed this statement, which consists of five (5) pages, and hereby solemnly _ swear x affirm that this is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_John H. Wynn_      6/22/04
Signature of Deponent      Date

Signed before me at 4700 River Road, Riverdale, Maryland on this 22nd day of June, 2004.

_Janice D...._
Signature of Witness

Exhibit  11
Page  5  of  5

____ Initials