IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Case No. 02-5141
(C.A. No. 99-1860)

MARVIN FELDER and ALESTER VAN SIMMONS
v.
ANN M. VENEMAN, SECRETARY
UNITED STATES DEPARTMENT OF AGRICULTURE

APPELLANTS' REPLY IN OPPOSITION TO
APPELLEE'S MOTION FOR SUMMARY AFFIRMANCE

BACKGROUND

Appellants Marvin Felder and Alester Van Simmons, plaintiffs below, respectfully request the Court deny Appellee's Motion for Summary Affirmance ("Motion"). Appellee has failed to meet her "heavy burden" of demonstrating the merits of her case on appeal are so clear that expedited, summary affirmance is justified. *See Taxpayers Watchdog, Inc. v. Stanley*, 919 F.2d 294, 297 (D.C. Cir. 1987) (*per curiam*). In disposing of Appellee's Motion, this Court must "view the record and the inferences to be drawn there from 'in the light most favorable to [the non-moving party].'" *Id.* at 298, *quoting U.S. v. Diebold, Inc.*, 359 U.S. 654, 655 (1962).

I.  **The Proceedings Below.**

At trial, Appellant succeeded on all their claims for race-based discrimination and retaliation, resulting in a jury verdict of $450,000 and $500,000 for Appellants Felder and Simmons, respectively. (R. 66). Appellee's post-trial motions were all denied, except the District Court did reduce the jury awards of compensatory damages to $125,000 and $175,000 for Appellants Felder and Simmons, respectively. (R. 96 at 2-9). [1]

---

[1]  "R" refers to the document by number in the District Court's list of docket entries, except that refer herein to the trial transcript are to appendices ("App.") attached to this Reply where the pertinent transcript pages are reproduced.

The District Court granted in part and denied in part Appellants' Motion for Equitable Relief.[2/] It granted Appellants "instatement" to International Services ("IS"), the agency within the U.S. Department of Agriculture that had refused to select them -- because of their race, according to the jury -- to fill vacancies in IS. The District Court ordered their instatement in the first positions that become available in IS for which Appellants had applied. Appellants contend -- and Appellee now agrees -- the District Court intended their instatement to become retroactive to some time in 1997.[3/] Finally, the District Court ordered unspecified back pay and front pay. (Court Order at 2).

The District Court denied the other forms of equitable relief Appellants had requested in their post-trial motions. Appellants were denied a back-pay award comprised of lost benefits, lost because of the unlawful failure and refusal of the Agency to select Appellants for vacant positions in IS for which the District Court has now ordered instatement. These lost benefits are housing allowances, subsistence allowances, and, for Appellant Simmons, lost overtime. Also denied was restoration of lost "home leave" and the sick leave Appellant Simmons took in response to the physical and emotional effects of the race-base discrimination to which he was subjected. (R. 96 at 9-11).

The District Court, by order entered April 2, 2002, granted Appellees' Motion for Reconsideration in Part, amending its Memorandum Opinion and Order of February 4, 2002 to eliminate the award of front pay and back pay from the grant of equitable relief. The District Court offered no explanation for this action. (R. 103).

---

[2/] The District Court declined to hold a bifurcated trial to receive evidence on equitable damages. (App. A).

[3/] Appellants have framed as an issue for appeal whether the District Court had erred in not making instatement retroactive to the dates when IS first filled openings following the dates Appellants first became eligible for selection from 1997 rosters on which they were listed as "best qualified." Appellee now agrees that Appellants' understanding regarding the retroactive effect of instatement is "a fair reading of what the District Court intended." Motion at 4. This acknowledgement moots the issue as to the retroactive effect of instatement.

## II. Appellate Relief Sought Is Limited.

Upon appeal, Appellants challenge the adequacy of the District Court's award of equitable relief to the extent it denies them back pay and front pay, denies them fringe benefits they have lost, and refuses to restore their lost home leave and, for Appellant Simmons, his sick leave.

## ARGUMENT

### I. The District Court Abuses Its Discretion In Denying Back Pay.

In *Barbour v. Merrill*, 48 F.3d 1270 (D.C. Cir. 1995), a case upon which Appellee relies for the standard of judicial review, the Court further refined the "abuse-of-discretion" standard when assessing the adequacy of the equitable relief granted: "The district court should fashion this [equitable] relief so as to provide a victim of employment discrimination the most complete make-whole relief possible," *id.* at 1278, *citing Franks v. Bowman Transp. Co.*, 424 U.S. 747, 764 (1976). Appellants submit that an order of back pay is necessary in order to provide them complete make-whole relief and to avoid any dispute about the pay, grade, and step to which they are entitled upon instatement.

Appellants intend to show during full briefing that the issue of whether they lost any base pay is not as simple and straightforward as Appellee represents. Appellants will establish they would have received, under principles of merit pay applicable to federal employees, meaningful back-pay salary enhancements, with interest, between the effective dates of their retroactive instatement (in 1997) and the dates IS in fact instates them (in 2002) in IS in compliance with the District Court's order providing equitable relief.

The District Court does not explain why, on reconsideration, it eliminates its prior award of back pay and front pay. Given the arguments Appellee advances in her Motion for Reconsideration in Part (R. 98), the Court may have concluded it had erred in granting back pay initially, surmising no back pay is in fact available to Appellants given the nature of their cause of action and the effect of the Court's original denial of equitable relief. Appellants' complaint attacks the denial of their

lateral transfers from one agency of USDA into another at the functional equivalent of the same grades, *i.e.*, without a promotion, a fact that assumes too much, and although the District Court denies Appellants the right to recover as equitable relief any fringe benefits, some of which would have been awarded as back pay, Appellants contend that District Court action is erroneous and an abuse of discretion.

Prior to applying to IS, Appellants were working domestically in the Plant Protection and Quarantine ("PPQ") unit of Animal and Plant Health Inspection Service, an agency within USDA, Mr. Felder in Charleston, SC and Mr. Simmons in Atlanta, GA. Those positions are governed by Civil Service General Schedule pay principles and pay scales, set annually. The Office of Personnel Management ("OPM") publishes these pay scales, fixed by Congress. At the time of their applications to IS, Appellants Felder and Simmons were GS-14, Step 5 and GS-12, Step 3, PPQ employees, respectively. Each sought a lateral transfer (*i.e.*, transfer without a promotion or general change in base-salary level) into the Foreign Service branch of IS. IS is governed by a different set of pay principles, basically the State Department's Foreign Service pay system and pay schedules. (App. B). Had IS selected Appellants from the 1997 rosters of best-qualified candidates pursuant to their applications, they would have entered IS at comparable grades or classes and salaries in the Foreign Service system, grade or class "FP-3" for Appellant Felder, equivalent to a GS-13 position in the General Service system, and grade or class "FP-4" for Appellant Simmons, equivalent to a GS-12 position at the General Service system. These FP positions, too, carry specific congressional-fixed base-pay scales or schedules, a pay scale the Foreign Service publishes annually. *See* 22 U.S.C. §§ 3963, 3964.

Under merit-promotion and merit-pay principles, federal employees transferring from one position to another may not, as a result of the transfer, receive in any lower pay than they had been receiving unless they are placed in the other lower-pay position voluntarily or as a result of a disciplinary measure. Appellant Mr. Felder alludes to this principle in his testimony. (App. C).

Applying this principle to Appellants, IS would have had to place them in pay brackets no lower than those they were in at PPQ at the time.

Appellants respectfully request the Court take judicial notice of these published, publicly available government pay schedules. *See Government of Canal Zone v. Burjan*, 596 F.2d 690 (5th Cir. 1979); *Nantucket Investor II v. California Fed. Bank*, 61 F. 3d 197 (3rd Cir. 1995). Examples of pay scales downloaded from the websites for 2000 and 2001 are appended hereto as <u>Appendix D</u>. They will show that Appellants, as a matter of law, would have been placed without promotions in pay brackets producing slightly higher base salaries than those they had been receiving as PPQ Officers immediately prior to their instatement. Thus, for example, in FY 2000, Mr. Felder was GS-14, Step 6 PPQ employee making $82,197, but as an FP-3 IS employee in 2000, the position to which he applied, IS would have to have paid him $84,347, the nearest pay bracket in IS that is not less than $82,197. Likewise, Mr. Simmons in FY 2000 was a GS-12, Step 4 PPQ employee making $55,606, but as an FP-4 IS employee, IS would have to have paid him a FP-4, Step 9 salary, $57,041 a year. *See* <u>App. D</u>.[4]

Thus, unlike the private-sector salaries analyzed in *Barbour*, the salaries of federal-sector employees such as Appellants are fixed by Congress and governmentwide regulation, are published periodically, and must be followed without individual negotiation or alteration. The District Court should have expressly awarded Appellants whatever incremental pay increases go with the lateral transfers they will receive through instatement, with interest.[5] Even in the absence of a court order of back pay, Appellants believe they are entitled to, and IS must compensate them in accordance with, those incrementally higher salary levels, but the District Court's elimination of the back-pay order clouds the issue.

---

[4] These slight differences between IS and PPQ pay scales for comparable positions remain constant, whether examining 1997 or 2002, throughout the relevant five-year period.

[5] Under the principles discussed in *Barbour* and the cases cited therein, the award of back pay and front pay should include an award of prejudgment interest, even "when the amount of the back-pay award is not readily ascertainable." 48 F.3d at 1279.

As explained in Appellants' opposition to Appellee's Motion for Reconsideration, absent a court order for back pay, IS could seize upon the District Court's retraction and conceivably simply freeze Appellants in their initial IS positions, at their same grades, steps, and base pay, from the moment of their retroactive instatements through the effective dates of their initial placements in positions in IS in compliance with the District Court's instatement order. Because instatement is or will be, under the retroactive application of the instatement award, effective in 1997, IS could attempt to block Appellants from receiving any change in steps and salary over the ensuing five years, in effect freezing them at their rates of pay as of the dates of their retroactive instatement. This "frozen-in-time" result is patently unfair and does not provide make-whole relief to which they are entitled. *See Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1214 (2d Cir. 1993).

Even though Appellants may not be entitled to grade or class increases between 1997 and 2002, they are or should be, as a matter of law, entitled to step increases and the base-pay increases that go with them. Step increases are virtually automatic within IS, absent extreme performance deterioration, after serving one to two years. 22 U.S.C. § 3966(a). Applicants could, therefore, face an argument from IS that they are not entitled to that "benefit" if the IS attempts to take the District Court's no-back-pay ruling to its extreme. The District Court's order on reconsideration unduly clouds this issue as well.

If Appellee is correct in asserting that Appellants should not receive any back pay simply because they were in fact seeking only lateral transfers into their new positions at IS, without promotion or pay increases, then, Appellants ask, why did Appellee elect to press the District Court to revise its initial order to eliminate specifically an express award of back pay and front pay? The result Appellee sought and achieved is inconsistent with her own argument.

II.  **The District Court's Failure to Award Lost Fringe Benefits Abuses Discretion.**

As this Court notes in *Barbour*, "back pay should generally include the value of lost fringe benefits" (in that case, car allowance), *citing Saulpaugh v. Monroe Community Hosp.*, 4 F.3d. 134,

145 (2d Cir. 1993), *cert. denied* \_\_ U.S. \_\_, 114 S.Ct. 1189 (1994), and *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1446, 1552 (11th Cir. 1986), *cert. denied* 479 U.S. 883 (1986).

By denying Appellants certain lost benefits, specifically housing allowances and subsistent allowances, the District Court fails to make the Appellants whole. The District Court's rationale for denying these two back-pay fringe benefits, as well as restoration of their lost home leave, is based upon conjecture. It speculates the purpose of these benefits "is to compensate employees for the hardship and additional cost of living overseas." (R. 96 at 11). The District Court then concludes that because Plaintiffs-Appellants had not been selected to IS -- because of the unlawful discrimination to which they had been subjected, according to the jury -- they did not actually serve in overseas assignments and therefore are not entitled to the housing or subsistence allowances or the lost home leave, presumably because they suffered no hardship or increase in cost of living. (*Id.*).

Appellants submit there is no basis in the record for the District Court's unexplained conclusion regarding the purpose of IS-sponsored housing and subsistence allowances -- to compensate employees for the alleged hardship of living abroad and the additional cost of living overseas. Appellee in her Motion cites nothing in the record to support such a supposition either. Appellants' witness at trial described these two types of allowances as simply two of the many benefits of serving in IS, benefits other employees working in domestic positions within PPQ do not receive. Appellee's own witness concurred. (App. E).

The District Court has confused housing and subsistence allowances with two other types of IS benefits for which Appellants did not seek an equitable-relief award, "post allowances" and "post differentials." Post allowances are given to IS's Foreign Service employees serving in posts "where the cost-of-living is significantly higher than in Washington, D.C." (App. F, Plts. Ex. 9). Post differentials are additional compensation, up to 25 percent of base pay, paid IS employees "assigned to hardship posts where extraordinarily difficult conditions exist." (*Id.*). Appellant Felder's testimony confirms these distinctions and the District Court's error. (App. G).

The housing-allowance benefits for IS employees take the form of subsidized housing, a subsidy that varies in amount, as Appellee notes, depending upon where the employee is assigned. Appellants introduced testimony from Mr. Strong, describing the range of housing allowances available to IS officers living overseas as up to $33,000 annually, depending upon where they lived. Based upon his many years of experience and assignments throughout the world, and contrary to Appellee's assertion (Motion at 8), Mr. Strong fixes the average housing allowance as a range, a range he describes as approximately $18,000 to $28,000, with the middle, $22,500, being about the average (App. H). Not only is Mr. Strong's testimony unrebutted, Appellee's own witness, Ms. Skaggs, corroborates that testimony (App. E). The District Court abuses its discretion in ignoring this unrebutted testimony, testimony that neither indicates housing allowances are intended to be some form of hardship off-set nor suggests it is any more expensive to live overseas than in the United States. Mr. Strong simply describes in his testimony that house allowances are one of the fringe benefits of employment in IS, varying in amount depending upon where the employee is assigned.

Appellants' Motion for Equitable Relief requested a back-pay benefit for this lost housing allowance at the high end of the stated average, $27,000 per year. If the District Court had concluded, which it does not, this amount is too speculative or otherwise unreasonable, it could have fixed the awarded amount as the specific housing benefit applicable to the location where IS first assigns each Appellant following his initial instatement into IS. But the District Court does not deny Appellants this benefit because of any concern about speculation or unreasonableness, but solely because, in its view, Appellants are not entitled to housing allowances or subsistence allowances absent having served in IS in overseas assignments. This rationale is like holding that Appellants are not entitled to the benefits attendant to serving in IS because they were not selected to fill positions in IS; that is, of course, what this case is all about -- Appellants were unlawfully denied the opportunity to serve in IS because of race-based discrimination in violation of the Civil Rights Act

-8-

and are entitled to a make-whole remedy to compensate them for this wrong, one that should include these lost benefits.

That Appellants did not testify as to the cost of their own housing in the United States is immaterial. Their failure to do so was not, as Appellee claims (Motion at 7), a failure to state a claim for this benefit. As IS employees, they would have been entitled to the benefit of subsidized housing without regard to the status of their own housing in the United States. Subsidized housing for IS employees is not contingent upon the employees relinquishing their homes in the United States, although it would, of course, enable them to give up whatever "domestic" housing they did have, whether a rented home or a purchased home, thus relieving them of the obligation to pay a mortgage and rent. But there is no obligation they do either one. The IS housing allowance is a subsidy, not a reimbursement, and is never described by any witness as a reimbursement.

As explained in Plaintiffs' Memorandum of Points and Authorities in Support of their Motion for Equitable Relief, the Merit Systems Protection Board, charged with enforcing the Back Pay Act, 5 U.S.C. §5596(b)(1), has held in a somewhat comparable setting that an employee stationed in an overseas location who is required to vacate government quarters as a result of an unjustified or unwarranted personnel action is entitled, as a remedy, to receive living-quarters allowances, irrespective of the fact the employee was not actually receiving living-quarters allowances on the date of his separation from the military. *Greco v. Dep't of Army*, 30 MSPR 288 (March 25, 1980).[6/] The Comptroller General of the United States has ruled, in applying this section of the Back Pay Act, that wrongfully terminated employees are entitled to all the allowances they would have earned but for the wrongful dismissal, including allowances for living quarters and cost of living, notwithstanding the fact the employees do not physically remain in the location giving rise to such allowances. 59 Op. Comp. Gen. 261 (1989).

---

[6/]   The Back Pay Act enables awards of back pay when a federal employee has encountered a loss or reduction of "allowances or differentials." 5 U.S.C. §5596(b)(1). That statute awards federal employees under those conditions an amount equal to all or any part of the allowance the employee would have earned or received during the period had the unwarranted or unjustified personnel action not occurred. 5 U.S.C. §5596(b)(1)(A)(i).

The denied subsistence allowance is also a fringe benefit available to IS personnel stationed overseas in the positions to which the District Court ordered Appellants instated, a benefit they do not receive while working for PPQ. Again, Mr. Strong describes this subsistence allowance as a payment to subsidize, not reimburse, IS personnel's costs of utilities and certain other cost-of-living expenses. This separate category of allowance embraces utilities, including electricity and water, and averages, on an annual basis, "upward to [$]3,000 to [$]5,000 depending again on where you're posted, location" (App. H). This is not speculation. In fact, Appellee not only does not contest Mr. Strong's testimony, Appellee's primary witness confirms it. (*See* App. E).

As with housing, this allowance is a subsidy Appellants do not receive in their domestic employment positions in PPQ, but would have received had IS not discriminated against them when filling vacancies in its Foreign Service branch. This allowance, too, is not contingent upon the IS employee discontinuing paying "domestic" utilities and similar expenses. There is nothing to prevent the IS employee from continuing to own or rent a home in the United States and continuing to pay whatever utility bills are associated with the maintenance of that home.

Again, there is no basis for the District Court's speculation about the purpose of the subsistence allowance and specifically for ruling that the purpose is to offset some hardship associated with living overseas or compensation for additional cost of living overseas. Those costs may indeed not be as high as they are in the United States, depending upon where the employee lives domestically and where he or she is stationed abroad. This conclusion of the District Court is arbitrary and capricious because it has no basis in the record, and Appellee can point to nothing in the record to support it.

### III. The District Court's Refusal to Restore Home and Sick Leave Is Also An Abuse of Discretion.

#### A. "Home Leave"

The District Court denies restoration of Appellants' "home leave," lost because IS illegally failed to select them for openings in IS. As with the housing and subsistence allowances, the District

erroneous speculates home leave is designed to compensate employee for the hardship and additional cost of living overseas. (R. 96 at 11). And, as with the housing and subsistence allowances, there is no evidence in the record to support this basis for denial.

Home leave is just like vacation or annual leave; an IS employee accumulates it at the rate of 15 days per year in addition to his or her accumulation of annual leave. Had IS selected Appellants as employees in 1997, by mid-2002 they would have accrued approximately 75 days of "home leave" they could have used and for which they would have been compensated when used pursuant to their regular base salary. Appellants have not requested IS pay them for such accrued leave, only that it be accumulated and restored or credited to them once they are instated in IS. This equitable relief would leave Appellants in the position of using their credited "home leave" in accordance with the regulations and policies of IS and the Foreign Service.

The analogy of home leave to annual leave is so striking the District Court, in its decision of March 1, 2001, relied upon those similarities as a basis for finding that Appellants' loss of home leave constituted an adverse employment action justifying the Court's denying in part Appellee's Motion for Summary Judgment. (Slip Op. at 12). The District Court does not explain the inconsistency between its two rulings, beyond its erroneous hardship rationale.

### B.  Sick Leave

The District Court declined to award Appellant Simmons restoration of the hours of sick leave he took as a direct result of the discrimination and retaliation to which the jury had found he had been subjected. This action is difficult to square with the record and the undisputed testimony of Mr. Simmons.

The District Court denies the request for restoration of sick leave on the grounds that "there was no evidence to specifically support this claim and calculation is speculative." (R. 96 at 11). Mr. Simmons does testify, however, that he was forced to spend considerable time away from work, for which he had to take sick leave in response to his doctor's orders, as a direct result of the physical

-11-

and emotional trauma brought about by the Agency's acts of discrimination. (App. I). There was no conflicting evidence offered. The District Court abused its discretion in ignoring this testimony.

A straightforward directive from the District Court ordering the Agency to restore those sick-leave hours would be sufficient to make Appellant Simmons whole. As Appellants point out in their Reply to Defendant's Opposition to the Motion for Equitable Relief and Attorneys' Fees, Mr. Simmons' employer, PPQ, is required by law to keep and maintain precise records of all sick leave taken. The District Court's equitable award could simply require the Agency to restore all sick leave that its records show Mr. Simmons took from the date he first received medical treatment from his treating physician, Dr. Ramsdell, to the date of trial. Whatever the Agency's official record show, they show and form the basis for the precise computation of the award. *Compare Davis v. City of Dallas*, 748 F. Supp 1165, 1178 (N.D. Tex. 1990):

> Difficulty in calculating the precise amount of back pay does not defeat an injured plaintiff's right to back pay in a Title VII action. *Silanas v. Roadway Exp., Inc.*, 735 F.2d 1574 (5th Cir. 1984). Because retroactive relief places the victim in the position that he would have occupied but for the discrimination, back pay includes not only salary loss, but also compensation for lost overtime, shift differential, and fringe benefits (*e.g.*, sick pay, annual leave, and vacation pay). *Willett v. Emory & Henry College*, 569 F.2d 212 (4th Cir. 1978).

## CONCLUSION

For the reasons set forth above, Appellee's Motion for Summary Affirmance should be denied in its entirety.

Respectfully submitted,

*Kim D. Mann*

Scopelitis, Garvin, Light & Hanson, P.C.
1850 M Street, N.W., Suite 280
Washington, DC 20036-5803
(202) 783-9222
(202) 783-9230 (fax)

Dated and Filed:
July 3, 2002

Counsel for Appellants
Marvin Felder and Alester Van Simmons

## CERTIFICATE OF SERVICE

I certify that a copy of Appellants' Reply in Opposition to Appellee's Motion For Summary Affirmance was served this 3rd day of July 2002 upon Appellee by U.S. mail, first class postage prepaid addressed to:

Marina Utgoff Braswell, Esquire
Assistant United States Attorney
Judiciary Center Building, Room 10-413
555 4th Street, N.W.
Washington, D.C. 20001

_____
Kim D. Mann