

INDIANAPOLIS
Norman R. Garvin
Andrew K. Light
James H. Hanson
Lynne D. Lidke
Thomas E. Farrell
Gregory M. Feary
Robert L. Browning
Steven A. Pletcher
Timothy W. Wiseman
Jay D. Robinson, Jr.
Michael B. Langford
Angela S. Cash
Carla R. Householder

Karla Couper-Boggs
Jeffrey S. Toole
W. Todd Metzger
Christopher R. Whitten
Craig J. Helmreich
A. Jack Finklea

Of Counsel
Allen E. Scopelitis*
David D. Robinson
Richard A. Clark

*Certified Mediator

CHICAGO
Gerald A. Cooper, Jr.
William D. Bierylo
Victor P. Shane
Dennis J. Duffy
Stephen A. Oakley

Of Counsel
Robert C. Kuboi
Maria E. Portela

WASHINGTON, D.C.
Daniel E. Barney
Kim D. Mann

SAN FRANCISCO
Of Counsel
James Armitage

KANSAS CITY
Of Counsel
James T. Graves*

## SCOPELITIS, GARVIN, LIGHT & HANSON
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

INDIANAPOLIS
CHICAGO • WASHINGTON, D.C. • SAN FRANCISCO • KANSAS CITY
1850 M Street, N.W., Suite 280   Washington, D.C. 20036-5804
phone (202) 783-9222    fax (202) 783-9230
www.scopelitis.com

KIM D. MANN
Direct Number
202 296 5003
kmann@scopelitis.com

January 31, 2003

**VIA TELECOPIER**
(202) 514-8780

Marina Utgoff Braswell, Esquire
U.S. Department of Justice
United States Attorney
Judiciary Center, Room 10-413
555 Fourth Street, NW
Washington, D.C. 20001

Re:  *Marvin Felder and Alester Van Simmons vs. USDA;*
     *Settlement/Transition to IS*

Dear Marina:

In order to conclude the process of transferring Marvin Felder and Van Simmons from PPQ to IS, I have attempt to provide a "checklist" of unconcluded items we need to address and resolve:

1. Two weeks ago, I emailed you, at your request, a citation to the law regarding federal interest rates on judgments. You indicated you needed this information in order to calculate the amounts due each of the plaintiffs and to process their checks. I have provided this information and would be happy to furnish taxpayer ID numbers (including our own) if necessary. When can the clients and our firm expect payment?

2. To the extent the Agency intends to issue Messrs. Felder and Simmons "1099" forms to reflect their payments, I would respectfully request the Agency take into account the law in the law in 11th Circuit on this matter. Messrs Simmons and Felder are required to pay income taxes on the full amounts of their awards, but excluding the amount of the attorneys' fees the Agency must pay as a result of the outcome of this case. *See Willie Mae Burlow Davis v. Commissioner of IRS*, 210 F.3d 1346 (11 Cir. 2000). (Of course, Van Simmons lives and works in Georgia, an 11th Circuit state.)

3. You and I agreed to engage Kathy Skipper, a State Department attorney, in a conference-call discussion of the retroactive effect of the retirement benefits. (You told me the State Department asserts it can not, as a matter of law, give them retroactive effect. Frankly, I

Jan-31-2003 12:54pm From-SCOPELITIS,GARVIN,LIGHT&HANSON [Case 1:06-cv-00910-CKK  Document 4-14  Filed 09/08/2006  Page 2 of 3]

Marina U. Braswell, Esquire
January 31, 2003
Page 2

find the State's assertion hard to believe: is the State Department alleging its employees are excluded from claiming Title VII rights under the Civil Rights Act?) This is an important issue we need to put to bed as soon as possible. Please advise when you are available for a conference call with your State Department contact, Ms. Skipper.

4. The materials the Agency provided to Mr. Simmons at our December 6, 2002 meeting contain an improved offer from IS. *See* Attachment 1. In its earlier letter of September 26, 2002 (from Dr. Wyss), IS had offered Mr. Simmons, as his original conversion class and step, a FP-4, Step 9 position with a base salary of $47,780. Attachment 1 ups the offer to an FP-3, Step 6 position with a base salary on the stated date of promotion (11/18/01) of $60,671. That same offer sheet indicates his current IS salary, as of 12/6/02, would be $62,856. Mr. Simmons had to reject the improved offer because of the location of the position, Bermuda, a position we knew to be slated for the Department of Homeland Security, not IS. For some unexplained reason, Dr. Wyss's most recent offer of a position, set forth in his letter dated January 15, 2003, Attachment 2, involves what amounts to a substantial <u>demotion</u> -- from the FP-3/6 position, paying $62,856, offered on December 6, 2002, to a FP-4/10 position with a base salary of only $59,101. Mr. Simmons objects to this demotion and substantial decrease in salary. We respectfully request Mr. Simmons' position be offered at the same level, in terms of FP class and step, as the last offer on the table on December 6, 2002, namely a FP-3/6 position with a base salary, under the 2003 salary charts, of $64,805. This is only fair; demoting him is not.

5. Whereas the materials the Agency furnished the parties at our December 6, 2002 meeting indicates the Agency deems Mr. Simmons to have been "hired" for a position in IS dating back to February 16, 1997 (*see* Attachment 1), those same materials regarding Marvin Felder's proposed position in IS are silent as to the date of his hire or "conversion." *See* Attachment 3. It merely references "conversion" to an opening in IS some time in 1997. Please provide us the date when his hiring became effective. This is important, particularly with regard to the retroactive effect of any retirement benefit.

6. Similarly, the Attachment 1 sheet records Mr. Simmons' date of promotion (from FP-4, Step 9 to FP-3, Step 6) as occurring on November 18, 2001. However, Mr. Wyss's latest letter to Mr. Felder, offering him the same position IS offered him at the December 6, 2002 meeting, but at the higher FP-2, Step 9 "class," fails to disclose the date the Agency will deem him as promoted from the <u>FP-3 class to the FP-2 class.</u> Please advise us as to this date. It is important because two years from that "promotion" date, whatever it is, Mr Felder is entitled to his next step increase.

7. In the five-year interim between Mr. Felder's instatement in IS as an FP-3, Step 14 in 1997 and today, the Agency's latest offer treats Mr. Felder as though he received a single "promotion," at some unspecified date, to an FP-2, Step 9. Mr. Felder observes that other IS specialists holding FP-3 positions in 1997 have, by the end of 2002, received two promotions, not just one. For example, Elba _____ was, according IS records, an FP-3 in 1997 and, in 2001, received her second promotion to an FP-1 position. That is two promotions for her in only four years. Mr Felder requests similar treatment, even if, for him, it means he receives the second promotion as an "FP-1 designee."

SCOPELITIS, GARVIN, LIGHT & HANSON

Marina U. Braswell, Esquire
January 31, 2003
Page 3

    8. The materials distributed to Messrs. Felder and Simmons at the December 6 meeting assert they are subject to "tenure review" in three years. As mentioned in my earlier letter to you of October 9, 2002, they are entitled to be characterized as tenured at the time they accept their IS offers because by transfer into IS in 1997, they would have become "tenured" by 2002. They can not be placed in any worse position as a result of the discrimination in hiring. We respectfully request the Agency confirm in writing they will, upon accepting offers in IS, be fulfilling tenured positions once they report to their first assignments.

    9. The positions offered Mr. Felder and Mr. Simmons in IS are contingent upon them securing medical and security clearances. They still are waiting on their medical clearances, and Mr. Simmons has yet to receive any word about his security clearance. When may they expect the results of their clearance investigations?

    Except as outlined above, Mr. Simmons and Mr. Felder are satisfied with the positions to which they have been assigned. I would like to wind up this matter as soon as possible. Please give me a call to discuss at your earliest convenience.

                                  Sincerely,

                                  Kim D. Mann

cc:    Mr. Marvin Felder (via telecopier)
       Mr. Alester Van Simmons (via telecopier)

KDM/snp
Enclosure

SCOPELITIS GARVIN, LIGHT & HANSON