## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BARBARA K. FELDER, as Personal Representative of the Estate of Marvin Felder, Deceased )<br><br>Plaintiff, )<br><br>v. )<br><br>MIKE JOHANNS, Secretary, U.S. Department of Agriculture )<br><br>Defendant. ) | **Civil Action No. 06-0910 (CKK)** |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND MOTION PURSUANT TO RULE 56(f) FOR CONTINUANCE TO OBTAIN DISCOVERY

### BACKGROUND

Plaintiff Barbara K. Felder, in her capacity as personal representative of the estate of Marvin Felder ("Plaintiff"), submits Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss or For Summary Judgment ("Motion"), filed September 8, 2006.  Plaintiff also moves the Court to continue this proceeding while she conducts limited discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") in the event the Court agrees to treat all or a portion of Defendant's Motion as a request for summary judgment under Rule 56 of Fed. R. Civ. P.

### I.    Procedural History.

On May 15 2006, Plaintiff filed her Complaint against Michael Johanns in his official capacity as Secretary of the U.S. Department of Agriculture ("Defendant"), alleging discrimination against Plaintiff's husband, Marvin Felder ("Mr. Felder"), on the

basis of his race and in retaliation for Mr. Felder's protected activity.[1]  The illegal conduct emanates from the disparate treatment that Defendant's separate operating unit, International Services ("IS"), a subagency within USDA's Animal and Plant Health Inspection Service, accorded Mr. Felder in failing to promote Mr. Felder, an African American, to a position within IS while promoting Mr. Alester Van Simmons, a similarly situated employee of IS.

In lieu of filing an answer to the Complaint, Defendant filed its Motion and Supporting Memorandum ("Def. Mem."). Defendant's Motion requests the Complaint be dismissed pursuant to Rule 12(b)(6) of the Fed. R. Civ. P. or, alternatively, summary judgment granted pursuant to Rule 56 of the Fed. R. Civ. P.  Without designating the precise cited federal rule upon which it relies for relief with respect to any of its arguments, Defendant urges dismissal or summary judgment, proffering two separate arguments: (1) this Court lacks jurisdiction to review the Complaint because in effect it constitutes a collateral attack upon the orders of Judge Kessler entered in prior litigation between the parties (the "Kessler Litigation")[2] and because Mr. Felder failed to contact an EEO counselor within 45 days of the adverse employment action as required under 29 CFR § 1614.105(a)(1), thus failing to exhaust his administrative remedies; and (2) the alleged disparate treatment accorded Mr. Felder, in comparison with Mr. Simmons, was justified because of differences in their federal grades or ranks and because, unlike Mr. Simmons, there were no similarly situated employees in Mr. Felder's grade and series at IS who had received promotions between 1997 and 2004.

---

[1] Mr. Felder passed away on March 10, 2005. *See* Complaint ("Comp.") at ¶¶ 2, 4.

[2] Defendant avoids using the terms "lack of jurisdiction" and "collateral attack" in its Motion, preferring only to claim, "this case is not properly brought as a new civil action," but should have been brought in some proceeding before Judge Kessler. Def. Mem. at 1, 7, 9.  Regardless of the label Defendant attaches to its argument, it suggests this Court may not have jurisdiction to hear Plaintiff's claim.  For purposes of this Opposition, Plaintiff will view this argument through the prism of a contention that this Court lacks subject-matter jurisdiction.

The Motion relies upon numerous exhibits attached to the Def. Mem., including correspondence between counsel for Mr. Felder and the Agency, correspondence between counsel for Mr. Felder and attorneys for the Agency, and affidavits from current and former employees of IS.

No discovery has thus far been initiated by either party in this proceeding.

## II.    **Procedural Posture of Motion; Request For Rule 56 Treatment.**

Defendant's Motion relies largely upon the attached documents not found in the record before the Court, consisting at this point entirely of the Complaint, and, except for the appended Kessler Litigation documents, those documents also are beyond the scope of judicial notice. Defendant attaches correspondence between and among the Agency, Agency representatives, Mr. Felder, and Mr. Felder's counsel expressly to support its claim that Mr. Felder did not exhaust his administrative remedies because of an alleged delay in contacting the Agency's EEO counselor. Defendant attaches affidavits from Agency employees expressly to support its argument that Mr. Felder was not similarly situated to Mr. Simmons and the Agency had a legitimate, non-discriminatory reason for not promoting Mr. Felder while promoting Mr. Simmons.

Defendant's reliance upon these two categories of extraneous documents (correspondence and affidavits) is sufficient to convert the Motion arguments based upon those documents into a Rule 56 summary judgment motion. Pursuant to Rule 12(b), Plaintiff requests the Court to treat Defendant's Motion with respect to the above two arguments as "one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b).

Defendant's two-part argument that Mr. Felder was not similarly situated to Mr. Simmons or to others in IS who did receive promotions, to be disposed of pursuant to Rule 56, requires special treatment attributable to the lack of discovery. Plaintiff moves the Court for a continuance in order to conduct discovery pursuant to Rule 56(f)

and thus to give her a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). *First Chicago International v. United Exchange Co., Ltd.*, 836 F.2d 1375, 1390 (D.C. Cir. 1988). Plaintiff's Motion Pursuant to Rule 56(f) for Continuance to Obtain Discovery ("Motion for Continuance") appears as Part V of this pleading. Plaintiff is submitting, in support of her Motion for Continuance, a Rule 56(f) affidavit requesting reasonable opportunity to conduct additional discovery to address the issues raised by Defendant's lack-of-comparability argument in the event the Court agrees to treat the Motion or any part of it as a Rule 56 motion. If it does, Plaintiff, in her Motion for Continuance, respectfully moves the Court to provide notice to the parties and postpone ruling on this aspect of Defendant's Motion until limited discovery has been concluded in response to her Motion for Continuance and her Rule 56(f) affidavit and the parties have been accorded time to brief the Rule 56 issue in light of the discovery results. *See First Chicago, id.; Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, n.5 (1986); *Doe v. U.S. Dep't of Labor,* ___ F.Supp.2d ___, 2006 WL 2615101 (D.C.C. Sept. 6, 2006) at *3-4.

With respect to the other Motion argument that is the subject of Plaintiff's requests for Court consideration under Rule 56 -- the asserted failure to exhaust administrative remedies as a result of alleged delay in contacting the EEO counselor -- Plaintiff fully addresses that argument, *infra*, in Part IV of her Opposition. Plaintiff does not believe discovery is necessary in order for the Court to dispose of it.

With respect to the Motion attachments from the prior Kessler Litigation and references to it in the Motion, Plaintiff acknowledges that, unlike the appended affidavits and letters, the Court may take judicial notice of those extraneous matters and consider them, along with the allegations of the Complaint, in disposing of Defendant's collateral-attack argument under Rule 12(b)(6). *Harrison v. Norton,* 429

F.Supp.2d 83, 88 (2006).  Part III of this Opposition addresses Defendant's Kessler Litigation argument for dismissal based upon Rule 12(b)(6).

## OPPOSITION TO MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

### III.   Motion to Dismiss Based Upon Collateral-Attack Argument Should Be Denied.

Defendant argues that Plaintiff's Complaint challenging the failure of IS to promote Mr. Felder is nothing more than a collateral attack upon the orders of Judge Kessler entered in the Kessler Litigation and, as such, must be brought before Judge Kessler, not in this Court as part of a separate civil action.  It moves to dismiss under Rule 12(b)(6) of Fed. R. Civ. P.

Defendant advanced this identical argument on three separate occasions before the Equal Employment Opportunity Commission ("EEOC") in the administrative proceeding from which this suit arose, and the EEOC fully considered and rejected that argument, as well as the factual and legal premises upon which it was based, in refusing to dismiss Plaintiff's EEO complaint.  Copies of the EEOC decisions expressly rejecting Defendant's collateral-attack arguments are attached as Exhibits A and B to this Opposition.[3/]  Defendant's argument before the Court, like its argument before the EEOC, relies upon a misstatement of the facts and a misinterpretation of the nature of Plaintiff's Complaint in this proceeding and before the EEOC.  Properly viewed, the Rule 12(b)(6) Motion should be denied.

### A.   The Applicable Legal Standards.

This Court sets forth the legal standards for reviewing Rule 12(b)(6) motions to dismiss for failure to state a claim under somewhat analogous circumstances in *Harrison v. Norton,* 429 F.Supp.2d 83 (D.D.C. 2006):

---

[3/] While Defendant's Motion refers briefly to these adverse EEO decisions in passing, it quite understandably fails to attach copies to its Memorandum.  *See* Def. Mem. at 5.

> In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike resolving a motion under Rule 12(b)(1), the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.   *In re United Mine Workers of Am. Employee Benefit Plans Litig.,* 854 F. Supp. 914, 115 (D.D.C. 1994); *see also Schuler v. United States,* 617 F.2d 605, 608 (D.D. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). . . .
>
> While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[ ] if such inferences are not supported by the facts set out in the complaint." *Kowal,* 16 F.3d at 1276.  Moreover, the court is not bound to accept the legal conclusions of the non-moving party.  *See Taylor v. FDIC,* 132 F.3d 753, 762 (D.C. Cir. 1997).  The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See St. Francis Xavier Sch.,* 117 F.3d at 624; *Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1226 n. 6 (D.C. Cir. 1993).   Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint.  *Henthorn v. Dep't of Navy,* 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier,* 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

429 F.Supp.2d at 88.

### B.    What the Record Shows.

Consequent to the final decision and orders of Judge Kessler in the Kessler Litigation, all parties eventually agreed upon precisely what was necessary in order for the Agency, IS, to satisfy and comply with the terms of Judge Kessler's order: the Agency had to place ("instate") Mr. Felder and his co-plaintiff, Mr. Simmons, without a promotion into the first opening/vacancy in IS, retroactive to the date the Agency first filled positions in IS, after IS created the vacancy rosters containing their names.  The parties also agreed this placement or instatement date in IS was to be retroactive to February 14, 1997.  Comp. at ¶ 8.  What Defendant fails or refuses to grasp is that Plaintiff concedes and completely agrees the Agency fully complied with Judge

<u>Kessler's orders in every material respect</u>. IS placed both Mr. Felder and Mr. Simmons in the first available vacant positions in IS, at the FP levels consistent with their then current grades, salaries, and areas of expertise, made retroactive to February 14, 1997. Comp. at ¶ 9. In other words, Plaintiff does not contend and has never contended before the EEOC or in this Court that IS has in any way violated Judge Kessler's orders in the Kessler Litigation.

Plaintiff does contend, and cites as discriminatory treatment in her Complaint here as well as in her complaint before the EEOC, that what the Agency did to Mr. Felder <u>after</u> his instatement date in IS, retroactive to February 14, 1997, constitutes race-based disparate treatment. Before Mr. Simmons reported for work at IS, on September 21, 2003, the Agency advised Mr. Simmons that it had given him a "paper promotion" retroactive to November 18, 2001. When Mr. Felder sought the same treatment, namely a similar paper promotion retroactive to a date also around November 18, 2001, the Agency ultimately refused. Comp. at ¶¶ 13 and 14. Defendant points to nothing to suggest Mr. Felder or Plaintiff has ever contended the Kessler Litigation ended with an obligation imposed upon IS to promote Mr. Felder or Mr. Simmons in connection with instating them into IS. Rather, IS elected to promote Mr. Simmons and, at the same time, declined to promote Mr. Felder and, in so doing, discriminated against Mr. Felder. Comp. at ¶¶ 15, 24, 25, 29, and 30. IS's own independent conduct following its fully compliant instatement of Mr. Felder constitutes the basis for a separate cause of action and is the subject of this Complaint.

### C.    **Plaintiff Has Met Her Burden; Defendant's Argument Has No Factual or Legal Basis.**

It is difficult to discern the legal theory or principle Defendant advances in support of its 12(b)(6) Motion with respect to the Kessler Litigation. Defendant apparently contends this Court lacks subject-matter jurisdiction because jurisdiction to hear Plaintiff's claim rests or rested exclusively with Judge Kessler. *See* fn. 2 *supra.*

Regardless of whether this is an argument asserting lack of jurisdiction or, as in *Harrison, supra,* an argument asserting the doctrine of *res judicata* or other issue-preclusion theory bars consideration of Plaintiff's claims, Plaintiff has shown above that she does not attack Judge Kessler's decision or allege Defendant failed to comply fully with her decision and the orders emanating from that decision.

It is correct that Mr. Felder did allege in the Kessler Litigation he was entitled to a promotion in conjunction with his instatement as part of his make-whole remedy. Plaintiff accepts that Judge Kessler denied that relief. What Mr. Felder did not litigate before Judge Kessler was whether the Agency was free, after instating him and Mr. Simmons in IS, to discriminate against Mr. Felder in subsequent promotions. Plaintiff's Complaint claims IS was not free, post-instatement, to promote Mr. Simmons while refusing to promote Mr. Felder before they reported to work at IS.

In the underlying EEOC complaint case, Defendant also moved to dismiss Plaintiff's EEO complaint claiming the EEOC did not have jurisdiction precisely because Mr. Felder's EEO complaint amounted to nothing more than a collateral attack upon Judge Kessler's decisions and orders and could only be challenged in a proper proceeding before Judge Kessler. The EEOC, in its decision dated January 31, 2006, reversing the contrary finding of an EEOC Administrative Judge, totally rejected Defendant's collateral-attack argument for dismissal:

> Upon review of the record, we find that complainant's complaint was improperly dismissed pursuant to 29 C.F.R. § 1614.107(a)(1), and we reverse the agency's final order and remand the complaint to the agency to request a hearing. The record indicates that the DCJ's order required the agency to instate complainant and employee A to the first opening or vacancy available retroactive to the agreed upon effective date of February 14, 1997. The DCJ's orders are silent, however, with regard to any action the agency was to take beyond the effective date of instatement for either employee, and do not order any specific grade or pay level, or effective promotion, from the employees previous GS grade and pay. The record shows that complainant, from the beginning of the complaint and throughout, has asserted that it was not the agency's actions in implementing the DCJ's Orders to

-8-

instate him that was discriminatory, but the agency's own independent actions that went beyond the Orders' requirements by promoting employee A and not complainant. Moreover, simply because the agency effectively combined the implementation of the court ordered instatement with its own decisions and actions concerning promotions for complainant and employee A, does not make those decisions and actions an extension of the District Court's ordered relief, or insulate them from the Title VII scrutiny by the Commission. Accordingly, we find that the AJ incorrectly determined that the instant complaint was a collateral attack on the DCJ's orders, and that the Commission has no jurisdiction over the matter. Therefore, the agency's adoption of the AJ's dismissal was improper and we return the matter to the agency to request a hearing on the merits of the complaint.

EEO Decision at 3-4, Ex. A attached.

Not content with the EEOC's decision, Defendant timely requested its reconsideration. By order entered March 16, 2006, the EEOC declined to reconsider or to alter its prior decision, concluding Defendant had failed to demonstrate the prior decision "involved a clearly erroneous interpretation of material fact or law" or "will have a substantial impact on the policies, practices, or operations of the agency," the EEOC regulatory criteria for reconsideration. EEO Denial at 1, Ex. B attached.

Plaintiff does not contend this Court is bound by or even must provide deferential treatment to the findings and conclusions of the EEOC in the EEOC decisions entered in the Agency administrative proceeding leading up to this Complaint. Defendant has, however, failed to point out any errors in the analysis, findings, or conclusions of the EEOC or to present any new facts or arguments in its Rule 12(b)(6) Motion not previously presented to the EEOC in support of its jurisdictional argument for dismissal. This Court should, therefore, reach the same result as the EEOC: Plaintiff's complaint is not a collateral attack upon the Kessler Litigation.

## IV.    Summary Judgment Claiming Failure to Exhaust Administrative Remedies Should Be Denied.

Defendant argues for summary judgment on the theory that, in contravention of EEOC regulations, 29 CFR §§ 1614.105(a)(1), Mr. Felder waited more than 45 days after learning of the actionable conduct to contact the Agency's EEO counselor and, thus, failed to exhaust his administrative remedies. *See* Def. Mem. 10-13.

Defendant's failure-to-exhaust argument hinges on Defendant's claim that January 15, 2003 is the trigger date for making EEO counselor contact. January 15, 2003 is the date of the Agency letter from Assistant Deputy Administer Wyss to Mr. Felder, allegedly "providing him the position." Mr. Felder did not contact his EEO counselor until November 4, 2003. *Id.*; Comp. at ¶ 15. Defendant's argument relies upon and attaches as exhibits to its Def. Mem. a series of extra-record documents, including the January 15, 2003 letter to Mr. Felder (Ex. 3), a January 31, 2003 letter from counsel for Messrs. Felder and Simmons to Agency counsel (Ex. 12), and a May 9, 2003 letter from Agency counsel to counsel for Messrs. Felder and Simmons (Ex. 5). Because of Defendant's reliance upon this attached correspondence, Plaintiff requests this Court to consider and dispose of Defendant's failure-to-exhaust argument under Rule 56 of the Fed. R. Civ. P.

### A.    The Applicable Legal Standards.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). *See also Lathram v. Snow,* 336 F.3d 1085, 1088 (D.C. Cir. 2003). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The nonmoving party need not resolve the issue of material fact, but merely demonstrate the existence of the claimed factual dispute which requires the fact-finder's resolution. *Id.* at 248-49. However, all inferences are to be drawn in favor of the nonmoving party. *See id.* at 255.

**B.    A Genuine Dispute Exists As to Material Fact, The Date Mr. Felder Knew He Would Not Receive The Promotion Accorded Mr. Simmons.**

Defendant attempts to establish that January 15, 2003 is the critical accrual date, depicted in the Motion as the date Mr. Felder knew his efforts to obtain the same promotional treatment accorded Mr. Simmons were unsuccessful, compelling him to transfer to IS at the FP-2 level, the same level at which the Agency instated him. Defendant cites the January 15, 2003 letter as well as two subsequent letters (Def. Mem. Exs. 5 and 12), selected from the Record of Investigation ("ROI"), to buttress its argument.

Plaintiff completely disagrees with Defendant's assertion that the January 15, 2003 letter marks the official notice to Mr. Felder that he would not be receiving a promotion similar to Mr. Simmons's upon reporting to IS. That notice date is October 30, 2003. More importantly, the event in question, the FP class assignment to Mr. Felder when he is officially transferred to IS, is an official Agency personnel action, and, as such, its effective date is the pivotal "discriminatory event," not when he knew of the FP class he would receive. *See James v. England,* 332 F.Supp.2d 239, 245-46 (D.C.D. 2004) (cited with approval in *Silver v. Leavitt,* (unreported) 2006 WL 626928 at *7 (D.C.D. Mar. 13, 2006). This effective date is not of record, but Mr. Wyss's post-October 30, 2003 meeting letter to Mr. Felder, dated December 5, 2003, confirms the official action of the Agency and designates that effective date as December 28, 2003. *See* Exhibit C attached hereto.

Moreover, Defendant's selectivity as to the correspondence it presents to the Court to shape the basis for the Court's finding of the accrual date covers up what

-11-

really happened between the parties. Proffering only three letters as "proof" disguises a long, drawn-out set of negotiations among the parties, conducted by letter, email, and in-person meetings, starting in September 2002 and culminating in the formulation of a final Agency position on the terms of Mr. Felder's entry, a formulation hardened during a meeting with IS officials on October 30, 2003. Only at the conclusion of that meeting did Mr. Felder know he would have to go to Seoul, Korea as an FP-2.

Contrary to the picture Defendant paints, neither Mr. Felder nor the Agency treated the so-called "assignment letter" of January 15, 2003 as anything more than one more step or phase in the negotiation process, a revised Agency offer of an assignment. It is an offer that includes a number of written and unwritten terms and conditions, a number of related elements, only one of which is the subject of this Complaint, the FP level. That letter, Exhibit 3 to Def. Mem., offers Mr. Felder an assignment in IS (1) in a particular position, Area Director, (2) at a particular location, Seoul, Korea, (3) in a particular series, Agriculturalist, FP-401, (4) with a particular job title, "Career Foreign Service Specialist," (5) at a particular grade or FP class or level, FP-2, (6) at a particular step level within the FP-2 class, FP-2, Step 9, (7) at a specific base salary, $87,392, (8) at an unspecified effective date for transfer, to be negotiated among Mr. Felder, his supervisor, and the IS Regional Director, and (9) upon satisfying specified clearance prerequisites, medical and security clearances. *See* Def. Mem. Ex. 3. The letter ends with a request that Mr. Felder notify the Agency of his acceptance of the assignment.

Preceding and subsequent correspondence and negotiations between the parties concerning the terms and condition of this proffered assignment demonstrate the Agency and Mr. Felder considered the "assignment" set forth in the January 15, 2003 letter as nothing more than an offer of a position in IS, the proposed parameters of

which the letter purports to define with its proffered terms and conditions. The Agency apparently hoped Mr. Felder would accept or reject the offered "assignment" or, as it turns out, at least continue to negotiate and counteroffer over its terms and conditions. Mr. Felder's qualified response to the Agency's offer of January 15, 2003 confirms this characterization: Mr. Felder, by letter dated January 17, 2003, attached hereto as <u>Exhibit D</u>, advises Dr. Wyss he will accept the position as Area Director in Seoul, Korea "pending all issues being resolved. . . ."

The complete paper trail of correspondence between the parties on this subject of the terms and conditions of the transition reveals an ongoing negotiating process that begins in September 2002. The pertinent steps are described below. By letter dated September 26, 2002 from Assistant Deputy Administrator Wyss to Mr. Felder (<u>Exhibit E</u> attached hereto), the Agency makes its initial written offer of an assignment in IS, employing essentially the same wording as the January 15, 2003 letter upon which Defendant relies in its Motion. The September 26, 2002 letter omits, however, any reference to an offer of an FP-2 step, a base salary, or the position description, all proposed terms in the subsequent January 15, 2003 revised-offer letter. Other than that, the letter is identical, including the representation that the September 26, 2002 letter "constitutes your assignment." Mr. Felder responds to the initial offer from Assistant Deputy Director Wyss on October 9, 2002, copy attached as <u>Exhibit F</u>. He tentatively accepts the position offered in Seoul, Korea, but again "pending all issues being resolved. . . ."

Mr. Felder's letter of October 9, 2002 makes reference to another letter of October 9, 2002, this one from his counsel to counsel for the Agency, attached as <u>Exhibit G</u>. That other letter provides a more detailed explanation of "all the issues" that needed to be resolved before Mr. Felder could deem the conditional acceptance final. It refers to the <u>offers</u> from Mr. Wyss to Mr. Felder (and to Mr. Simmons) of

-13-

positions in IS.  It requests a meeting with IS officials "to discuss certain aspects of those selections, including terms and conditions not mentioned in Mr. Wyss's letter." At the bottom of page two and at the top of page three, the letter spells out pending issues that needed to be resolved, at a meeting with IS officials.

The October 9, 2002 letter from counsel precipitates the requested meeting between the parties, including counsel, occurring on December 6, 2002.  *See* attached Exhibit H, a letter dated January 31, 2003, from Mr. Felder's counsel to counsel for the Agency.  As numbered paragraph four of that letter notes, that meeting results in "an improved offer from IS" for Mr. Simmons, an offer actually made worse by the subsequent January 15, 2003 revised Agency offer.  The letter also reflects ongoing efforts to persuade the Agency to revise the offers to Messrs. Simmons and Felder, to clarify issues, and to address the conditions and concerns raised by both former plaintiffs.  In other words, the negotiations remain open and ongoing and subject to further counteroffers as well as to requests for counteroffers.[4]

With respect to Mr. Felder, a letter dated April 14, 2003 from counsel for Mr. Felder to Agency counsel, attached as Exhibit J, confirms that further negotiations are to take place.  In addition to addressing the proper step increase Mr. Felder should receive upon his acceptance into IS, it concludes with another request on behalf of Mr. Felder to meet with high-level IS officials "before officially accepting the position offered in IS."  The letter spells out the specific issues to be discussed at such a meeting. Again, Mr. Felder and the Agency continue to behave as negotiators of a multi-faceted contractual arrangement between the Agency and Mr. Felder, not over the assignment, but over the terms and conditions of that assignment.

---

[4] As a result of these ongoing negotiations, the Agency makes a further counteroffer to Mr. Simmons by letter dated February 27, 2003, described in that offering letter as "your new assignment."  A copy of the letter is attached as Exhibit I.

-14-

Mr. Felder then confirms the details of the agenda for the meeting with IS officials in an email to the Agency counsel, dated April 22, 2003, attached hereto as Exhibit K. Agency counsel responds by letter dated May 9, 2003, attached as Exhibit L. It demands an unconditional written response accepting or rejecting "the offered positions" in IS. The agency letter also responds to certain of the unanswered questions and concerns of Mr. Felder and agrees to facilitate a meeting with IS officials once Mr. Felder submits his acceptance letter, described as an orientation meeting, but to include "other issues as appropriate." Mr. Felder responds through counsel to the May 9, 2003 letter from Agency counsel. His response, dated May 19, 2003, accepts "the offer of employment in IS," but again subject to pursuing the open issues in the face-to-face meeting now scheduled with named IS officials. *See* attached Exhibit M.

Mr. Felder continues to negotiate terms with Agency officials above the level of Mr. Wyss. On September 25, 2003, he sends an email to IS Deputy Administrator Ralph Iwamoto requesting a meeting with him and Agency Administrator Mr. Bobby Acord while Mr. Felder is in Washington, DC for his October orientation session. That email, copy attached as Exhibit N, sets forth four specific topics Mr. Felder wishes "to resolve" at that meeting. One is the "difference in handling the particulars of my case in comparison with the handling of Mr. Simmons case (promotion)." That meeting with Deputy Administrator  Iwamoto, his Associate Deputy Gutierrez, and others takes place on October 30, 2003. *See* attached Exhibit O, an email from Stacy Newton, Program Assistant at IS, dated September 29, 2003, to Mr. Felder, among others. As discussed below, that meeting concludes the discussions between Mr. Felder and the Agency over his assigned FP class. He accepts the assignment with the FP-2 grade. Mr. Wyss confirms this acceptance in his letter to Mr. Felder, dated December 5, 2003, stating the effective date of his transfer will be December 28, 2003. *See* Exhibit C.

-15-

The Complaint does not specifically allege the precise date when Mr. Felder knew that the terms of his Agency's assignment were not going to include an FP-1 position when he reported to Seoul; however, the formal EEO complaint he filed with the Agency on December 15, 2003 does contain this information. That EEO complaint as filed is attached as Exhibit P. It states that he knew on October 30, 2003, the date of his meeting with Deputy Administrator Iwamoto *et al.* An earlier signed version of that EEO complaint, attached Exhibit Q, includes an attachment giving more detail about that October 30, 2003 meeting:  it states that Mr. Felder met on October 30, 2003 with Messrs. Iwamoto, Gutierrez, Fedchock, and Wyss to discuss his entry into IS. He describes there the outcome of the meeting as well as the topics discussed: "I also discussed the fact that Mr. Simmons was given a promotion and I was not.  Mr. Iwamoto told me that he was told I received a promotion, in fact I did not.  Then all agreed that they thought I should have received all the rights and privileges of my position since January 1994." *Id.* That attachment also indicates that Mr. Felder felt the outcome of that meeting led him to believe he had been discriminated against.[5]

Thus, it is clear the Agency representatives as well as Mr. Felder considered the so-called "assignment" set forth in the letter of January 15, 2003 as little more than an offer, subject to acceptance and negotiable as to the particulars of its terms, including whether Mr. Felder would report to his new duty station in IS in Seoul, Korea as an FP-1 or an FP-2.  While Mr. Felder may have known by February 27, 2003 that Mr. Simmons had received a promotion, he did not know until October 30, 2003 that he would not be receiving one.

---

[5] While the Complaint filed in this case does not specify the specific date on which Mr. Felder knew of the discriminatory act about which he complains -- because Plaintiff never believed this date would become an issue in this proceeding -- Plaintiff will, with the permission of the Court, move to amend her Complaint to incorporate an allegation that Mr. Felder knew on October 30, 2003 that he was the victim of discrimination.

If Defendant expects the Court to accept the proposition that the Agency truly believed Mr. Felder acted in an untimely manner, the Agency's conduct throughout the period in question, September 2002-October 2003, belies that assertion. The Agency representatives, including its legal counsel, continued to meet and discuss the terms and conditions of the so-called assignment with him right up through the October 30, 2003 meeting. It should be estopped from asserting, at this stage and for the first time,[6] that Mr. Felder knew he had been discriminated against on January 15, 2003. Clearly, he did not, and he continued to treat the so-called assignment, particularly as to the specifics of its terms, including his FP class, as merely an offer subject to further negotiations. The Agency did, too. Title IV cases are subject to equitable estoppel, although Plaintiff recognizes the courts apply this doctrine only sparingly. *See Singleton v. Potter,* 402 F.Supp.2d 12, 33 (D.C.D. 2005); *Chaple v. Johnson,* ___ F.Supp.2d ___, 2006 WL 2709617 at *4 (D.D.C. Sept. 22, 2006). Plaintiff believes, however, the Agency's conduct here warrants its application.

Defendant's legal argument not only erroneously pegs January 15, 2003 as the date Mr. Felder knew his assigned position in IS would be at the FP-2 level, but it focuses on the wrong event, his personal knowledge. As discussed *supra* at 11, the applicable "discriminatory event" when dealing with federal agency personnel actions is the effective date of that personnel action. *James v. England, supra,* 332 F.Supp.2d at 245-56. Here, Defendant fails to introduce Mr. Felder's official personnel action agency record into evidence to show when his transfer to IS at the FP-2 level became effective, but it is clear it occurred on or about December 28, 2003. *See* Wyss letter to Mr. Felder, dated December 5, 2003, <u>Exhibit C</u> ("On December 28, 2003, at the

---

[6] Significantly, the Agency never raised the failure-to-exhaust administrative remedies argument in the proceeding before the EEOC even though it filed a motion with the EEOC to dismiss Mr. Felder's EEO complaint. As discussed *infra*, the Agency's motion to dismiss filed with the EEOC was predicated upon a single argument, the EEO complaint constituted merely a collateral attack upon the final orders of Judge Kessler in the Kessler Litigation and had to be resolved before Judge Kessler in the context of that litigation.

beginning of Pay Period 26, you will be converted retroactively into APHIS Foreign Service at the FP-2 level (GS-14 equivalent), effective January 14, 1997."). Mr. Felder contacted his EEO counselor on November 4, 2003, well before December 28, 2003. His contact is timely. *See James, id.* at n.2 ("[B]ased on the ruling in *Scarborough* [*v. Natsios*, 190 F.Supp.2d 5, 15-16 (D.D.C. 2002)], it is clear that the plaintiffs could seek EEO review prior to the effective date of the personnel action.").

To the extent this Court concludes the effective date of the personnel action is not the applicable accrual date and the January 15, 2003 letter provided the defining notice to Mr. Felder, Plaintiff requests the Court to recognize that Mr. Felder's ongoing complaint to the Agency's high-ranking officials, including its attorneys responsible for its EEO complaint defense, about the disparate treatment he received in terms of post-instatement promotion in comparison with Mr. Simmons constitutes compliant EEO contact and satisfies 29 CFR § 1614.105(a)(1). *Lloyd v. Chao,* 240 F.Supp.2d 1, 3 (D.D.C. 2002).[LL] *See* January 31, 2003 letter from Mr. Felder's counsel to Agency counsel (<u>Exhibit H</u>).

## MOTION FOR CONTINUANCE TO CONDUCT DISCOVERY

### V.    <u>Discovery Necessary to Flesh Out Lack-of-Comparability Arguments</u>

Unlike the support for Defendant's other asserted bases for dismissal or summary judgment, Defendant relies primarily upon attached affidavits of IS employees to support its contention that differences between Mr. Felder and Mr. Simmons and the absence of similarly situated IS employees justified the disparate treatment accorded Mr. Felder. Defendant attaches affidavits of John Wyss (Ex. 7), Freida Skaggs (Ex. 13), and Nicholas Gutierrez (Ex. 14) selected from the Record of

---

[LL] Plaintiff recognizes that at least one District Court judge in this Circuit declined to follow the holding of *Lloyd* on this point, opting instead to enforce literal compliance. *See, Carter v. Greenspan*, 304 F.Supp.2d 13, n.10 (D.D.C. 2004).

Investigation ("ROI") prepared by the Agency's EEO investigator as his support. Neither Plaintiff, Mr. Felder, nor their legal representative has had an opportunity before the EEOC, the Agency, or this Court to "cross examine" or otherwise interrogate the affiants regarding the contents of their affidavits. Their proffered "testimony" is, therefore, untested at this time. No discovery has been initiated in this proceeding.

Defendant raises its Motion for Summary Judgment prematurely because genuine issues of material fact exist that can only be addressed fully and adequately through further discovery. Plaintiff believes she is entitled to that discovery under Rule 56 of the Fed. R. Civ. P. Rule 56(c) mandates summary judgment only after an adequate time for discovery. *See Celotex*, 477 U.S. at 322; *Evans v. Tech. Application and Serv. Co.,* 80 F.3d 1954, 961 (4th Cir. 1996). "Summary judgment must be refused if a nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Id.* (citing *Liberty Lobby*, 477 U.S. at 250, n.5).

Premature motions for summary judgment made prior to the time for conducting discovery "[c]an be adequately dealt with under Rule 56(f), which allows a summary judgment motion to be denied, or a hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery." *Celotex*, 577 U.S. at 326. *See also Burlington Northern Santa Fe R.R. Co. v. The Assiniboine and Sioux Tribes of the Fort Peack Reservation*, 323 F.3d 767, 773 (9th cir. 2003) ("Where, however, a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion freely."); *Berkeley v. Home Ins. Co.,* 68 F.3d 1409, 1414 (D.C. Cir. 1995); *Wichita Falls Office Assoc. v. Banc One Corp.,* 978 F.2d 915, 919 n.4 (5th Cir. 1992); *Sames v. Gable,* 732 F.2d 49, 52 (3d Cir. 1984).

As spelled out in the accompanying Rule 56(f) affidavit from Mrs. Barbara Felder, attached hereto as <u>Exhibit R</u>, Plaintiff advises the Court she needs to conduct

limited discovery in order adequately and fully to address and test the assertions in the affidavits of Messrs. Wyss and Gutierrez and Ms. Skaggs and requests the Court to continue this proceeding for the express purposes of allowing her to do so. Affiants' proffered testimony is more than two years old and represents responses to "friendly questions" posed by the Agency's own investigator. Those affidavits appear to offer versions of the events sometimes at odds with the recitals of other affiants. The requested discovery is needed in order to expose and explore those weaknesses and to examine the basis (or lack thereof) for their personal knowledge of the alleged facts described in their affidavits, the bases for their knowledge of Agency policies and procedures for promotions in IS, the scope and sources of those policies and procedures, the actual IS rationale for promoting IS employees referenced but not identified in their affidavits, the identity of those IS employees referenced in the affidavits who received promotions (their identities are redacted from the affidavits),[8] and the identity and positions of others within IS who have knowledge of the facts and issues Defendant raises in its Motion and the scope and extent of that knowledge.

Plaintiff has reason to believe the Agency's alleged policies and procedures regarding promotions within IS do not in fact exist (*i.e.*, they lack any written source) and are not as explained in the self-serving affidavits of Messrs. Wyss and Gutierrez and Ms. Skaggs. Certain IS employees referenced in those affidavits did not receive just one promotion in the interim as claimed, but, in some cases, more than one. Plaintiff suspects other IS employees at relevant FP grade levels, not identified in the affidavits, also may have received promotions at IS, but Plaintiff is unable to verify her suspicion or to determine their identity at this time because Defendant has redacted

---

[8] Mr. Felder compiled his own list of comparable IS employees who Plaintiff understands received promotions during the pertinent time frames.

their names from the affidavits as attached to its Memorandum. (Those affidavits submitted to the investigator and included in the ROI are not sanitized.)

Plaintiff also needs to establish through discovery the reasons why IS had no employees who were comparable to Mr. Felder, using the Agency's own self-serving and unacceptable criteria for comparability. The rebuttal affidavit of Mr. Felder, given to the Agency's EEO investigator, attached hereto as Exhibit S, explains that Agency racial discrimination and Agency policy not to hire from outside IS made it inevitable the Agency would not be able to locate any "comparable" employees, as IS has chosen to define that term.

The additional evidence described above, if produced during Rule 56(f) discovery, will have a bearing upon the comparability argument Defendant raises in its Motion and thus upon the Agency's latest justification or pretext for failing to promote Mr. Felder. It also may warrant Plaintiff filing a motion to strike all or portions of the tendered Defendant affidavits for offering inadmissible evidence beyond the personal knowledge of affiants. See, e.g., Gulf USA Corp. v. Federal Insurance Co., 259 F.3d 1049, 1056 (9th Cir. 2001).

In order adequately to explore these issues identified above, Plaintiff requests an opportunity to propound interrogatories designed to identify those IS staff and employees with personal knowledge about the IS promotion policies and process, the promotions actually awarded IS employees, the reasons for those promotions, and the hiring policies of IS in 1997. Plaintiff also proposes to propound interrogatories to determine the identity of any additional IS personnel with knowledge about why Mr. Simmons was promoted and Mr. Felder was not. Plaintiff intends to depose Messrs. Wyss and Gutierrez, Ms. Skaggs, and others at IS who, through answers to interrogatories, are shown to have information relevant to the issues surrounding the promotions. Plaintiff is prepared to expedite the process of preparing the

interrogatories and deposing witnesses in order to avoid unduly delaying this Court's disposition of the Motion.

Under the caselaw cited *supra* at 4, Plaintiff believes she is entitled to engage in this limited discovery as well as to receive a reasonable continuance or postponement of this Court's ruling on Defendant's Motion until the limited discovery has been concluded and the parties have been accorded sufficient time to brief the remaining Rule 56 issue in light of the discovery obtained.  Plaintiff respectfully so requests. "Fed. R. Civ. P. 56(f) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003).

## VI.   <u>Denial of Summary Judgment Is Warranted Even Without Discovery</u>.

In the event the Court denies Plaintiff's Motion for a Continuance or elects not to act upon it, and thus denies the requested discovery at this juncture, Plaintiff respectfully requests the Court in the alternative to deny Defendant's Motion to the extent it seeks summary judgment on the basis of the lack of comparability between Mr. Felder and Mr. Simmons and between Mr. Felder and others in IS who received promotions.

Defendant argues that in order to establish a *prima facie* case, Mr. Felder must show he was treated differently than persons not in the same protected class as Mr. Felder, and Mr. Felder has failed to do so because Mr. Simmons, like Mr. Felder, is an African American.  This is not the law in this Circuit:  a similarly situated employee does not have to be of the same protected class as the plaintiff. *George v. Leavitt*, 407

F.3d 405, 413 (D.C. Cir. 2005) (*citing Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002); *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850-51 (D.C. Cir. 2006).

The attached rebuttal affidavit of Mr. Felder, Exhibit S hereto, contains an employee-by-employee refutation of the attempts by affiants Mr. Wyss and Ms. Skaggs to distinguish Mr. Felder's situation from those of the IS employees who received promotions from FP-2 to FP-1 between 1997 and 2003. (Discovery may be necessary in order to confirm Mr. Felder's position on rebuttal.) He also demonstrates and alleges in his rebuttal affidavit that the Agency could never locate an IS employee who had been hired from outside the Agency in 1997 and was subsequently promoted precisely because the Agency's then-existing discriminatory policies included refusal to hire employees outside the internal ranks of IS to fill management-level positions in IS. (Discovery may be necessary to confirm this fact as well.)

Defendant's affiants also contend that IS employees are not eligible for promotions or to fill vacancies in IS unless they are in the exact same series as the vacant position. This unsubstantiated claim is inaccurate and contrary to establish IS policy. The attached letter from Mr. Wyss, dated October 2, 2003, and policy statement from Deputy Administrator Iwamoto, dated August 15, 2003, Exhibit T hereto, confirm that IS employees in the FP 436, 414, and 701 series may compete with employees in the Agriculturist 401 series for positions in IS.

The attached evidence discussed above is, Plaintiff submits, sufficient to establish that genuine disputes do exist as to material facts associated with Defendant's summary judgment motion argument based upon the asserted lack of comparators. The Motion should be denied for that reason alone.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or For Summary Judgment should be denied in its entirety or, in the alternative, Plaintiff's Motion for

-23-

Continuance to obtain Rule 56 discovery should be granted and the Court should defer ruling on Defendant's Motion, requesting summary judgment for failing to establish Mr. Felder's comparability to Mr. Simmons and to other IS employees who received promotions, until the limited discovery has been conducted and the parties have briefed the unresolved grounds for the Motion based upon that discovery.

Respectfully submitted,

Due and Filed:
October 6, 2006

_____ /s/ _____
KIM D. MANN, D.C. Bar # 81471
SCOPELITIS, GARVIN, LIGHT & HANSON, P.C.
1850 M Street, N.W., Suite 280
Washington, DC 20036-5804
(202) 783-9222
(202) 783-9230 (fax)

**Attorney for Plaintiff
Barbara K. Felder**