## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BARBARA K. FELDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0910 (CKK) |
| | ) | |
| MIKE JOHANNS, | ) | |
| Secretary, Department of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RENEWED MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Defendant hereby moves to dismiss the above captioned matter pursuant to Fed. R. Civ. P.

12(b)(6) and 56.    A memorandum of points and authorities, statement of material facts not in

dispute, and proposed order are included with this motion.

Dated: March 17, 2008

Respectfully submitted,

___/s _/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

__/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

__/s/_____
ALEXANDER D. SHOAIBI, D.C. BAR #423587
Assistant United States Attorney
5O1 Third Street, N.W., Rm E-4218
Washington, D.C.  20530
(202) 514-7236

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BARBARA K. FELDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0910 (CKK) |
| | ) | |
| MIKE JOHANNS, | ) | |
| Secretary, Department of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF RENEWED
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

In January 2003, defendant Department of Agriculture provided Marvin Felder a position as an Area Director in the Animal and Plant Health Inspection Service ("APHIS"), International Services ("IS"), Foreign Service.  The assigned position was graded at the FP-2 (GS-14 equivalent) level.  This placement was done pursuant to an equitable relief Order issued by Judge Gladys Kessler following a plaintiff's verdict in <u>Felder v. Glickman</u>, Civ. A. No. 99-1860 (GK).

In her 2006 Complaint, plaintiff Barbara Felder (Marvin Felder's widow and personal representative) asserts that this 2003 assignment should have been at the FP-1 rather than FP-2 level (In the Foreign Service, higher graded positions carry a lower FP designation).  The case may be readily dismissed on either of two alternative grounds.  First, Mr. Felder failed to make timely EEO contact as required under 29 C.F.R. § 1614.105(a)(1).  He received his assignment to the IS position in January 2003 and was notified at that time that the position that was being provided pursuant to Judge Kessler's order would be at the FP-2 level. He did not contact the agency's EEO office until

November 2003, well outside the 45 day period prescribed by regulation.

Further, APHIS has a legitimate, non-discriminatory reason for why Mr. Felder's co-plaintiff (Alester Van Simmons) received a retroactive "paper promotion" with his assignment, while Mr. Felder did not. Specifically, in complying with Judge Kessler's equitable relief Order, the Department of Agriculture sought to determine what FP level each of the two plaintiffs would occupy in 2003 if they had been selected into the Foreign Service in 1997 (the year they would have been selected but for the discrimination). Since Mr. Simmons would have entered onto duty at the FP-4 level, he likely would have received a promotion to the FP-3 level in the ensuing five years; thus, he was given an FP-3 to place him where he would have been but for the discriminatory non-selection. Mr. Felder, on the other hand, would have entered onto duty as an FP-2. At that higher level, promotions to FP-1 are far less common and require lengthier foreign service experience. In other words, though Mr. Felder and Mr. Simmons were plaintiffs in the same case, the two are not "similarly situated" for purposes of the remedy awarded because they were on different selection rosters and thus would have entered into the Foreign Service at different FP levels. Moreover, given that Mr. Felder and Mr. Simmons are both African American and were both prevailing plaintiffs in the same case, the notion that the difference in treatment may be ascribed to race or prior protected activity simply cannot withstand scrutiny.

## II.    FACTUAL BACKGROUND

Plaintiff Barbara Felder brings this action as the personal representative of the estate of her husband, Marvin Felder. See Complaint ("Comp.") at ¶ 5. Marvin Felder, an African American male, was an employee of the Department of Agriculture/Animal and Plant Health Inspection Service ("APHIS") from 1978 through his death in March 2005. See Complaint ("Comp.") at ¶ 6.

In July 1999, Mr. Felder and another Department of Agriculture employee, Alester Van Simmons, filed a civil action under Title VII of the Civil Rights Act on 1964, captioned <u>Felder v. Glickman</u>, Civ. A. No. 99-1890 (GK) ("1999 Case"), alleging that they were discriminated against on the basis of race when they were not selected for Foreign Service management vacancies in 1997. <u>Id</u>. at ¶ 7. The 1999 Case was tried to a jury, and the jury returned a verdict in favor of Mr. Felder and Mr. Simmons. <u>See id</u>. at ¶ 8.

By Order of February 4, 2002, the District Court awarded Mr. Felder and Mr. Simmons equitable relief, including "instatement to the first opening or vacancy which becomes available in IS." <u>See</u> February 4, 2002 Order at 2 (Exhibit 1). The February 4, 2002 Order did not order a promotion for either plaintiff. <u>See</u> Feb. 4 Order (Exhibit 1); May 11, 2004 Affidavit of Marvin Felder (Exhibit 2).

In order to implement the Court Order, counsel for defendant, Assistant U.S. Attorney Marina Utgoff Braswell, and Agency Counsel Ayoka Campbell, and counsel for Plaintiff and Mr. Simmons, Kim Mann, participated in discussions about Plaintiff's and Mr. Simmons' new positions and locations. October 9, 2002 letter from Kim D. Mann to Assistant United States Attorney Marina Utgoff Braswell (Exhibit 3) . In his October 9, 2002 letter to Ms. Braswell about implementing the Court Order, Mr. Mann stated that Mr. Felder "had no issues regarding the specific position and location for which he has been selected and assigned, APHIS Area Director, Seoul, Korea, Agriculturalist, FP-401-2 (GS-14 equivalent)." <u>Id</u>. at p.1. Mr. Mann, however, also stated that "We believe each Plaintiff is entitled to in-grade step increases as a matter of law in accordance with the federal regulations governing their positions in IS. They would like an explanation as to the dates

-3-

on which these in grade step increases affect their promotion potential retirement." Id. at p.3.

In response to this letter, Ayoka Campbell wrote an October 31, 2002 email to the Agency's Human Resources Director of Travel and Personnel, Freida Skaggs. October 31, 2002 email from Ayoka Campbell to Freida Skaggs (Exhibit 4). Agency counsel Campbell requested that Ms. Skaggs analyze Mr. Felder and Mr. Simmons with regard to their status in 1997, and track what promotions and within grade increases they would have received if they had entered APHIS-IS in 1997. Id. Ms. Skaggs tracked employees who were similar to Plaintiff and Mr. Simmons in grade level and series and who entered APHIS-IS in 1997. With regards to Mr. Simmons, she determined Mr. Ken Nagata to be a similar employee who occupied the same occupational series as Mr. Simmons, and was only one grade level lower than Mr. Simmons. October 11, 2007 Deposition of Frieda Skaggs, pp. 43-44 (Exhibit 5); Affidavit of Frieda Skaggs at p. 4 (Exhibit 6). Mr. Nagata entered APHIS-IS in 1997 at an FP-5 level and received a promotion to an FP-4. Id. Therefore, following that same career ladder, APHIS-IS Human Resources placed Mr. Simmons into APHIS-IS at an FP-3 level. Id. This was a retroactive paper promotion from an FP-4 level. Id.

With regard to Plaintiff, however, there were no equivalent employees with Plaintiff's years of service or series to be used as a comparison that would show an FP-2 grade level promotion to an FP-1 grade level in 1997. November 29, 2007 deposition of John Wyss, pp.27-28 (Exhibit 7); Affidavit of John Wyss at p. 3 (Exhibit 8).

On December 19, 2002, Dr. John H. Wyss, former Assistant Deputy Administrator of APHIS IS, wrote a letter to Mr. Felder in which he assigned him to the position of APHIS Area Director, Seoul, Korea, at the FP-2 (GS-14) grade equivalent, and requested Mr. Felder's acceptance of the assignment. December 19, 2002 letter from John H. Wyss to Marvin Felder (Exhibit 9). Dr.

-4-

Wyss sent a second written notice to Mr. Felder on January 15, 2003, again stating that the Agency had selected Plaintiff to fill the position of APHIS Area Director, Seoul, Korea at an FP-2, step 9 grade level.    January 15, 2003 letter from John H. Wyss to Marvin Felder (Exhibit 10).  Further, Dr. Wyss included the base salary of the position in the letter, and again requested plaintiff's acceptance of the assignment.  Id.

In other words, pursuant to the February 4, 2002 Order, in January 2003 the agency assigned Mr. Felder to the position of APHIS area director in Seoul, South Korea. Id.  Mr. Felder's position was classified as an agriculturalist, FP 401-2, equivalent to a GS-14 in the civil service.  See id. Through the assignment, Mr. Felder was converted into the Foreign Service at the FP-2 level.  See id.

Mr. Felder, through counsel, raised issues concerning his FP level a in letter dated January 31, 2003.  See January 31, 2003 letter from Kim Mann to Assistant United States Attorney Marina Utgoff Braswell (Exhibit 11).  The January 31 letter from Mr. Mann to AUSA Braswell characterized Mr. Felder's FP level as one among a "'checklist' of unconcluded items" that was part of concluding the process of transferring Mr. Felder to IS. Id.

On February 27, 2003, Dr. Wyss sent a letter to Mr. Simmons explaining that Mr. Simmons was selected to fill the position of Officer-in-Charge, Kingston, Jamaica, FP-3, Step 6 (GS-13 equivalent).  February 27, 2003 letter from John H. Wyss to Alester V. Simmons (Exhibit 12).  Mr. Simmons was selected to fill the position of Plant Protection and Quarantine Officer in Charge, in Kingston, Jamaica.  Id.  Mr. Simmons' position was classified as a Plant Protection and Quarantine Officer, FP-463-3 (GS-13 equivalent).  Id.  Through the assignment, Mr. Simmons was converted into the Foreign Service at the FP-3 level.

To comply with Judge Kessler's equitable relief Order, the agency had to determine what FP level the two plaintiffs would likely be occupying in 2003 had they been selected back in 1997. Affidavit of John Wyss ("Wyss Aff") at 3 (Exhibit 8); November 29, 2007 deposition of John Wyss, pp. 31-32 (Exhibit 13). Mr. Felder and Mr. Simmons were at different GS levels at the time they applied for the positions that were the subject of the 1997 lawsuit, and thus were on the selection rosters at different levels. Affidavit of Freida Skaggs ("Skaggs Aff.") at 3-4 (Exhibit 6).

At the time Mr. Simmons applied for the 1997 position that was the subject of the 1999 lawsuit, he was on the FS-436-4 (GS-12) roster. See Skaggs Aff. at 4 (Exhibit 6). Since a comparitor to Mr. Simmons received a promotion through the Foreign Service Board Process in the ensuing 5 year period, the agency concluded that Mr. Simmons had to be brought in at the FP-3 level. See Skaggs Aff. at 4 (Exhibit 6), Wyss Aff. at 3 (Exhibit 8).

Mr. Fedler was on the FS-436-3 (GS-13) level roster when he applied to the Foreign Service in 1997. Skaggs Aff. at 4 (Exhibit 6) . Since 1994, APHIS had operated under an internal policy of bringing individuals into the Foreign Service career system at a level no higher than the FP-3 (GS-13) level. Skaggs Aff. at 2 (Exhibit 6). Despite this internal policy, the determination was made to bring Mr. Felder into the system at the FP-2 level, one level higher that the typical entry level. Skaggs Aff, at 2-3 (Exhibit 6) ; see also Campbell Lett. at 2 (Exhibit 14) .

The agency determined that a person first entering onto duty in the Foreign Service in 1997 at the FP-2 level would not likely have obtained an FP-1 position by 2002. See Affidavit of Nicholas Gutierrez ("Gutierrez Aff.") at 4 (Exhibit 15) ; Skaggs Aff. at 3-8 (Exhibit 6); Wyss Aff. at 3 (Exhibit 8); Campbell Lett at 2 (Exhibit 14). Those individuals who did receive promotions from the FP-2 to the FP-1 level between 1997 and 2003 had greater than the five years of foreign service

experience that Mr. Felder would be credited with (presuming service by Felder from 1997 to 2002). Wyss Aff. at 3-5 (Exhibit 8) (going through each of the alleged comparitors and providing information as to their length of service).   At the time, when making promotion determinations, Foreign Service employees were grouped by occupational series and competed against persons in their series for promotions.  See Skaggs Aff. at 5 (Exhibit 6); October 11, 2007 Deposition of Frieda Skaggs at pp. 36-38 (Exhibit 16).

Very few employees are promoted from the FP-2 to the FP-1 level each year.  In 1997 there were three promotions from the FP-2 to FP-1 level out of a total of 23 employees; one out of 17 in 1998; three out of 19 in 1999; three out of 18 in 2002 and three out of 22 in 2003.  See Skaggs Dec. at 5-8 (Exhibit 6).

On April 14, 2003, Mr. Mann wrote Ms. Ayoka Campbell a letter in which he explains the hurdles to Mr. Felder accepting his assigned position.  April 14, 2003 letter from Kim D. Mann to Ayoka A. Campbell (Exhibit 17).  According to Mann, Mr. Felder "feels very strongly that he is entitled to a within-grade for the year 2002, placing him at the FP-2, Step 10 level upon his acceptance to IS." Id. at p.1.  Mann claims that assuming Mr. Felder was promoted as late as Mr. Simmons in February 2001, Mr. Felder should have received an annual within grade step increase. Id.  at p.2.

On April 22, 2003, Mr. Felder wrote an email directly to Ms. Ayoka Campbell in which he gave Ms. Campbell a list of demands before agreeing to finalize his assignment.  See email dated April 22, 2003 (Exhibit 18).  His second demand in that email was to receive an FP-1 grade level upon entry to APHIS IS.  Id.  Ms. Campbell sent Mr. Mann a letter on May 9, 2003 requesting that both Mr. Felder and Mr. Simmons accept or deny the offered positions at APHIS-IS.  May 9, 2003

letter from Ayoka Campbell to Kim Mann (Exhibit 14). In this letter, Ms. Campbell acknowledged Mr. Felder's demand that he receive an FP-1 grade level upon entry. Id. Ms. Campbell clearly stated that Mr. Felder would be instated at the FP-2 grade level, and would not be given a promotion to the FP-1 grade level. Id.

In a May 19, 2003 letter to Ayoka Campbell, Mr. Mann stated, "In response to the Agency's ultimatum given Messrs. Felder and Simmons in your letter dated May 9, 2003, I have been authorized by my clients to express their acceptance of the offers of employment in International Services." May 19, 2003 letter from Kim Mann to Ayoka Campbell (Exhibit 19). In this letter Mr. Mann said that his clients did not waive their right to review their SF-50 forms to ensure that they reflect the FP positions outlined in Ms. Campbell's letter dated May 9, 2003. Id.

Finally, in a June 5, 2003 e-mail to Ms. Braswell, Kim Mann stated, "After some back and forth, Messrs. Felder and Simmons did accept positions in IS unequivocally. They are not particularly satisfied with their FP- and grade levels and, in Mr. Simmons's case, the promotion potential of the position, but decided to accept the offers. Mr. Felder will continue to seek a meeting with the head of IS to discuss his future in IS. June 4, 2003 e-mail from Kim Mann to Marina Braswell (Exhibit 20).

Plaintiff contacted an EEO counselor on November 4, 2003. See Comp. at ¶ 15.

### III.    PROCEDURAL HISTORY

Mr. Felder contacted an EEO counselor on November 4, 2003. See Comp. at ¶ 15. On December 19, 2003, he filed formal charges with the agency, alleging discrimination on the basis of race and reprisal for not "promoting" him in the manner as Mr. Simmons. See id. After the investigation, the agency moved to dismiss on the basis that Mr. Felder's complaint constituted a

collateral attack on the judgment Judge Kessler entered at the conclusion of the 1999 Case. Comp. at ¶ 17. In June 2005, the EEOC Administrative Judge dismissed the matter, finding that the EEOC did not have jurisdiction over Mr. Felder's Complaint. Id. at ¶ 19. Plaintiff appealed and in January 2006 the EEOC granted the appeal and vacated the order dismissing the Complaint. Id. at ¶ 20-21. The agency filed a Motion for Reconsideration which was denied in March 2006. Id. at ¶ 23.

Plaintiff filed her federal court Complaint on May 12, 2006. The first claim alleges disparate treatment discrimination on the basis of race, because the agency failed or refused to promote Mr. Felder from an FP-2 class, step 1 prior to his entry onto duty, while promoting Mr. Simmons from an FP-4 to an FP-3. See Comp. at ¶ 24. The second claim for relief alleges that the failure to provide plaintiff a position at the FP-1 level is attributable to unlawful retaliation. See id. at ¶¶ 29-30. As relief, plaintiff seeks compensatory damages, a retroactive promotion to the FP-1 level with commensurate lost wages and other benefits, and attorney's fees and costs.

On September 8, 2006, Defendant filed a Motion to Dismiss or for Summary Judgment, arguing that Plaintiff's claims should be brought, if at all, in an action before Judge Gladys Kessler, the judge in the original case, because they involve equitable relief provided by Defendant as a result of the 2002 case. Defendant alternatively argued that the case should be dismissed for either of two reasons: because Plaintiff failed to exhaust her administrative remedies or because Defendant had a legitimate, non-discriminatory reason for promoting Mr. Simmons while not promoting Mr. Felder. Plaintiff filed an opposition to Defendant's motion, and, at the same time, filed a Motion Pursuant to Rule 56(f) for Continuance to Obtain Discovery.

On May 25, 2007, this Court denied Defendant's Motion to Dismiss or for Summary Judgment to the extent that it argued Plaintiff's case must be brought before Judge Kessler relating

to her February 4, 2002 order, and denied without prejudice the portion of Defendant's Motion to

Dismiss that argues that Plaintiff has failed to exhaust her administrative remedies. This Court

further denied Defendant's Motion for Summary Judgment without prejudice, and instead granted

Plaintiff's Rule 56(f) Motion for Continuance, in order to allow Plaintiff to conduct discovery.

The parties have concluded discovery, and Defendant here files its Renewed Motion to

Dismiss or for Summary Judgment.

## IV.    STANDARD OF REVIEW

### A.  Dismissal Under 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a plaintiff

has stated a claim upon which relief can be granted. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),

overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982). In deciding a motion to

dismiss under Rule 12(b)(6), the court is bound to consider all well-pleaded facts as true, and to draw

all reasonable inferences in favor of the nonmovant. Scheuer, 416 U.S. at 236; U.S. ex. rel. Harris,

275 F. Supp.2d 1, 5 (D.D.C. 2003). On a motion to dismiss for failure to state a claim upon which

relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint

fails to plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic

Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from Conley v. Gibson, 355

U.S. 41, 47 (1957)); see also In re Sealed Case, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing

Twombly). Hence, the focus is on the language in the complaint, and whether that language sets

forth sufficient factual allegations to support plaintiff's claims for relief.

### 2.  Summary Judgment

If the Court looks to matters outside the pleadings in resolving the Motion to Dismiss, the

motion is treated as one for summary judgment and addressed under Rule 56. See Fed. R. Civ. P. 12(b). Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587. The mere existence of a factual dispute, however, will not defeat summary judgment. The non-moving party must show that the dispute is genuine and material to the case. That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party. Anderson, 477 U.S. at 247-48; Laningham v. United States Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). If the evidence favoring the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. See Anderson, 477 U.S. at 249-50 (citations omitted). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'" Celotex Corp., 477 U.S. at 323 (citations omitted).

Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Rather, when the movant files a properly supported summary judgment motion, the burden shifts to the nonmoving party to show "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Further, the

-11-

non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Further, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## V.     ARGUMENT

### A.  This Claim May Be Readily Dismissed For Failure to Make EEO Contact Within 45 Days of the Alleged Adverse Employment Action

"[A] timely administrative charge is a prerequisite to initiation of a Title VII action in the District Court." Cones v. Shalala, 945 F. Supp. 342, 346 (D.D.C. 1996) (quoting Jarrell v. U.S. Postal Serv., 753 F.2d 1088, 1091 (D.C. Cir. 1985)), rev'd on other grounds, 199 F.3d 512 (D.C. Cir. 2000). Mr. Felder, as a federal employee, was required to contact an EEO counselor within forty-five days of the matter alleged to be discriminatory. 29 C.F.R. § 1614.105(a)(1).

The requirement that an aggrieved employee initially seek relief from the agency by exhausting administrative remedies is "not a mere technicality." Park v. Howard University, 71 F.3d 904, 907 (D.C. Cir. 1995). Instead, "it is part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment." Kizas v. Webster, 707 F.2d 524, 544 (D.C. Cir. 1983). Exhaustion serves the important functions of providing notice to the agency, allowing prompt

adjudication and a narrowing of issues, and giving federal agencies the chance to handle matters internally to the maximum extent possible.  See Park, 71 F.3d at 907.

In order for Mr. Felder to have properly exhausted his administrative remedies, he must have contacted an EEO counselor within 45 days of the alleged discriminatory act.  See 29 C.F.R. § 1614.105 (a) (1).  Therefore, since Mr. Felder contacted the EEO counselor in this matter on November 4, 2003, in order to have timely contact with an EEO counselor, the alleged discriminatory act had to occur on or after September 20, 2003.  Plaintiff, however, first gained knowledge that he would not be receiving a promotion to the FP-1 grade level on December 19, 2002, when Dr. Wyss sent him an official letter that assigned him to the position of APHIS Area Director, Seoul, Korea, at the FP-2 (GS-14) grade equivalent, and requested Mr. Felder's acceptance of the assignment.  See  December 19, 2002 letter from Dr. Wyss to Plaintiff (Exhibit 9).  Dr. Wyss gave a second written notice to Mr. Felder on January 15, 2003, that the Agency had selected Plaintiff to fill the position of APHIS Area Director, Seoul, Korea at an FP-2, step 9 grade level.  See January 15, 2003 letter from Dr. Wyss to Plaintiff (Exhibit 10).

Plaintiff, therefore, was aware that his assigned position would be at the FP-2 level by January 15, 2003, and, therefore, he should be precluded from proceeding with this matter because of failure to contact an EEO counselor in a timely fashion.  The "discriminatory event" challenged in the Complaint is Mr. Felder's being assigned to the APHIS Area Director position at the FP-2 level, rather than the FP-1 level.  See Comp. at ¶ 14; Delaware State College v. Ricks, 449 U.S. 250, 257-58 (1980) (stating that in an employment discrimination case, the limitations period begins to run at the time of the adverse act).  APHIS provided Mr. Felder with his area director position on January 15, 2003, and he was informed in the assignment letter that he was

-13-

being converted into the Foreign Service at the FP-2 level.  See January 15 letter (Exhibit 10).

Thus, Mr. Felder was required to make EEO contact no later than March 1, 2003, the forty-fifth

day following receipt of his assignment.

     In light of this plain failure to make timely EEO contact, defendant anticipates that Mr.

Felder will respond by arguing that he was not actually aware of the alleged difference in

treatment between himself and Mr. Simmons until sometime after the January 15 notice of his

assignment.  The Complaint is curiously and tellingly vague on exactly when Mr. Felder learned

that Mr. Simmons would be entering onto duty as an FP-3 rather than an FP-4.  Given that both

Mr. Felder's and Mr. Simmons' FP levels are addressed in Mr. Mann's January 31 letter to

AUSA Braswell, and that the letter was cc'd to the two clients, Mr. Felder was surely aware of

the issue by January 31.  See Jan 31 letter (Exhibit 10).  Ultimately, however, this date is

immaterial, because  the decisional law makes it abundantly clear that the date on which Mr.

Felder learned of Mr. Simmons' promotion is not the operative date for commencing the 45 day

period.

     The CFR provides that the 45-day limitations period for EEO contact is triggered when a

"complainant should reasonably suspect discrimination, but before all the facts that would

support a charge of discrimination have become apparent." 29 C.F.R. § 1614.105(b) (emphasis

added).  Thus, for example, in McCants v. Glickman, 180 F. Supp.2d 35, 39 (D.D.C. 2001), the

plaintiff was not selected for a position as a Department of Agriculture attorney in 1992.  He did

not make contact with USDA's EEO office, however, until 1994.  Id.  His expressed reason for

the delay that he did not have "tangible information" of discrimination until 1994, at which time

he learned that nine black women graduates of Howard University had been selected.  Id.  He

contended that because he made EEO contact within three days of learning this information, he

satisfied the exhaustion requirements. The exact language used by the Court in its rejection of

this argument is instructive:

> In essence, the plaintiff argues that the court should focus on the date the
> complainant acquires evidence of discrimination rather than the actual date of the
> act or the date that the complainant first suspects discrimination as a motivation
> for the act. Existing law, however, does not support the plaintiff's argument that
> the time limitation did not begin to run until he learned of facts that supported his
> employment discrimination claim. In Delaware State College v. Ricks, 449 U.S.
> 250 (1980), the Supreme Court held that the limitations period in an employment
> discrimination case begins to run at the time of the adverse act. The Fourth Circuit
> later expounded on that decision, holding that while a plaintiff's ignorance of the
> discriminatory motive for an adverse act is "relevant to an analysis of equitable
> tolling," it plays no role "in determining the beginning of the statutory limitation
> period." See Felty v. Graves-Humphreys Co., 785 F.2d 516, 518-19 (4th
> Cir.1986). The 45-day time period began to run, then, when Mr. McCants learned
> that he was not selected for the position. Consequently, Mr. McCants failed to
> contact an EEO counselor within the proper time frame.

Id. at 40. This holding is on all fours with the situation presented in the instant case. The 45 day

time period to make contact with the agency's EEO office began to run at the time of the alleged

violation, which was on January 15, 2003, when Mr. Felder learned that he was being placed in

the area director position at an FP-2 level. Since EEO contact was not made within 45 days of

January 15, 2003, Mr. Felder has failed to meet the regulatory prerequisites to have his case

heard in federal court. Cf. Krishnan v. Mineta, 150 F. Supp.2d 31, 35 (D.D.C. 2001) (using date

that plaintiff learned of non-selection to establish trigger date for EEOC contact); see also J.D.

Hamilton v. First Source Bank, 928 F.2d 86, 89 (4th Cir. 1990) (citing numerous cases).

Nor can plaintiff be heard to say that he did not have cause to question the FP-2

placement at the time the assignment was made, because Mr. Felder did, in fact, voice a concern

about the FP level of the area director assignment. After learning that he would be placed in an

FP-2 position, Mr. Felder, through counsel, requested that he either be given an FP-1 immediately upon entry on to duty, or receive a non-competitive promotion to the FP-1 level after one year of successful performance.  See May 9, 2003 Letter from Ayoka Campbell to Kim Mann (Exhibit 14); see also January 31, 2003 letter from Kim Mann to Marina Utgoff Braswell (Exhibit 11) . Moreover, the January 31 letter also discusses Mr. Simmons' FP placement, meaning that Mr. Felder was certainly aware of any difference in treatment between the two by that date.  See Jan. 31 letter (Exhibit 11).

Still, any possible argument by Plaintiff that the 45 day period begins to run when Mr. Felder "became aware" of a difference in treatment between he and Mr. Simmons results in dismissal of this case for failure to exhaust in a timely fashion. On February 27, 2003, Dr. Wyss sent a letter to Mr. Simmons explaining that Mr. Simmons was selected to fill the position of Officer-in-Charge, Kingston, Jamaica, FP-3, Step 6 (GS-13 equivalent).  See February 27, 2003 letter from Dr. Wyss to Mr. Simmons (Exhibit 12).  Kim Mann represented both Plaintiff and Simmons  at the time, so it is reasonable to charge Mr. Felder with his counsel's indisputable knowledge that Mr. Simmons received a promotion to the FP-3 level by at least around February 27, 2003.  Again, Mr. Felder contacted an EEO counselor well beyond 45 days after that date.

Furthermore, there is documented evidence that Plaintiff's counsel gave Mr. Felder knowledge of the Agency's alleged discriminatory act of giving Mr. Simmons a promotion and not him.   In his April 14, 2003 letter to Ms. Campbell, Mr. Mann explains why Mr. Felder was having problems accepting the assignment.  April 14, 2003 letter from Kim Mann to Ayoka Campbell (Exhibit 17).  In this letter, Mr. Mann states that Mr. Felder wanted a within grade increase to an FP-2, Step 10 upon his acceptance to IS.  He states that assuming Mr. Felder was

promoted as late as Mr. Simmons in February 2001, he should have received annual within grade step increase.  Id.

Further documenting Mr. Felder's knowledge of the alleged discriminatory actions of the Agency are his repeated attempts to convince the Agency to give him the promotion.  On April 22, 2003, Mr. Felder wrote an email directly to Ms. Campbell in which he gave Ms. Campbell a list of demands in order to finalize his acceptance of the assignment.   April 22, 2003 e-mail from Mr. Felder to Ayoka Campbell (Exhibit 18).  His second demand in that email was to receive an FP-1 grade level upon entry to APHIS IS.  Id.

Giving Plaintiff the benefit of any conceivable doubt, the record reflects Mr. Felder's understanding as of  May 9, 2003 that he was receiving an assignment at the FP-2 level.  Ms. Campbell sent Mr. Mann a letter on May 9, 2003, requesting that both Plaintiff and Mr. Simmons accept or deny the offered positions at APHIS IS.  May 9, 2003 letter from Ayoka Campbell to Kim Mann (Exhibit 14).  In this letter, Ms. Campbell acknowledged Mr. Felder's demands in his April 22, 2003, email in which he requested an FP-1 grade level upon entry.  Id.  Ms. Campbell wrote that "USDA's final statement" is that Mr. Felder would be instated at the FP-2 grade level, and would not be given a promotion to the FP-1 grade level.  Id.   Therefore, by May 9, 2003, Mr. Felder certainly was aware of the final decision regarding his FP level.  Any prudent person would have contacted an EEO counselor at the latest within 45 days of receiving this letter.  However, he waited until November 4, 2003, almost six months later to contact an EEO counselor.

On May 19, 2003, Mr. Mann wrote a response to "Agency's ultimatum" and stated that his clients both Mr. Felder and Mr. Simmons expressed their acceptance of the offers of

-17-

employment.   May 19, 2003 letter from Kim Mann to Ayoka Campbell (Exhibit 19).  Finally, in

a June 5, 2003 e-mail to Ms. Braswell, Kim Mann stated, "After some back and forth, Messrs.

Felder and Simmons did accept positions in IS unequivocally.  They are not particularly satisfied

with their FP- and grade levels and, in Mr. Simmons's case, the promotion potential of the

position, but decided to accept the offers.  Mr. Felder will continue to seek a meeting with the

head of IS to discuss his future in IS."  June 4, 2003 e-mail from Kim Mann to Marina Braswell

(Exhibit 20).  There can be no doubt that at this point, **a full five months** before contacting an

EEO counselor, Mr. Felder knew the specifics of the deal both he and Mr. Simmons were

getting.

> **B.     Mr. Felder and Mr. Simmons Are Not Similarly Situated, Thereby
> Explaining The Differences in Treatment Upon Entry Into the Foreign
> Service.**

Even if this Court determines that the requirement of timely EEO contact has been

satisfied, the claim of disparate treatment discrimination may be nonetheless readily dismissed as

a matter of law.   Plaintiff's entire Complaint is based on a demonstrably false premise; namely,

that Mr. Felder and Mr. Simmons are "similarly situated" employees, such that if placing Mr.

Simmons in his 2002 foreign service position required moving him up one FP level, then Mr.

Felder should have been moved up one FP level as well.

To understand how the agency determined the FP levels for the two co-plaintiffs from the

1999 Case, one must begin with Judge Kessler's equitable Order.  The Order required

instatement to an IS opening as soon as one  became available.  See February 4, 2002 Order

(Exhibit 1).  Both Mr. Felder and Mr. Simmons had applied for positions in 1997.   Thus, the

agency had to determine what level positions the two would likely be occupying in 2002 had they

been selected back in 1997.  See Wyss Aff. at 3 (Exhibit 8) (explaining that class levels were

determined by extrapolating what would have happened if the two had entered onto duty in

1997); Barbour, 48 F.3d at 1278.

Though Mr. Felder and Mr. Simmons were co-plaintiffs in the 1999 case, they were at

different GS levels at the time they applied for the positions that were the subject of that lawsuit,

and thus were on the selection rosters at different levels.  See Affidavit of Freida Skaggs

("Skaggs Aff.") at 3-4 (Exhibit 6).  At the time Mr. Simmons applied for the 1997 position was

the subject of the 1999 lawsuit, he was on the FS-436-4 (GS-12) roster.  See Skaggs Aff. at 4

(Exhibit 6).  In order to provide "make whole" relief and place Mr. Simmons where he would

have been but for the discriminatory act, the agency determined that it had to find someone who

was selected at approximately the same time close to Mr. Simmons's GS level, and then parallel

that individual's progression through the Foreign Service with Mr. Simmons'.  See id.; see also

Wyss Aff. at 3 (Exhibit 8) ("the class level, salary and conditions [the plaintiffs] received in 2003

and 2004 were determined by extrapolating what would have happened if they entered the

APHIS-IS FS in 1997").  Since the comparitor received a promotion through the Foreign Service

Board Process in the ensuing 5 year period, the agency concluded that Mr. Simmons had to be

brought in at a higher level as well.  See id.  It is for this reason that Mr. Simmons was brought in

as an FP-3 rather than an FP-4 and received a "paper promotion" prior to his entry onto duty.

See Comp. at ¶ 13; October 11, 2007 Deposition of Frieda Skaggs at pp. 40-41 (Exhibit 5).

Mr. Felder, in contrast, was on the FS-436-3 (GS-13) level roster when he applied to the

Foreign Service in 1997.  See Skaggs Aff. at 4 (Exhibit 6).  Since 1994, APHIS had operated

under an internal policy of bringing individuals into the Foreign Service career system at a level

no higher than the FP-3 (GS-13) level.  See Skaggs Aff. at 2 (Exhibit 6) ; see also Wyss Aff. at 2

(Exhibit 8) (same; further explaining that some employees have even taken downgrades in order

to enter the Foreign Service).  Thus, the agency would have been well within its right to bring

Mr. Felder in as an FP-3.  Despite the policy, the determination was made to bring Mr. Felder

into the system at the FP-2 level, one level higher than the typical entry level.  See Skaggs Aff, at

2-3 (Ex. 6); see also Campbell Lett. at 2 (Ex. 14).  In other words, far from being treated

adversely on account of his successful lawsuit, Mr. Felder actually was placed in a better position

than a typical entrant into the Foreign Service career system, as he was permitted to enter onto

duty as an FP-2 rather than an FP-3.  Wyss deposition at p. 34 (Exhibit 13) ("I would say he was

kind of given the benefit of the doubt and went retroactive from the day he entered.")

Promotions from the FP-2 level to the FP-1 are much more scarce than promotions at

lower FP levels, and the Department of Agriculture determined that a person entering onto duty

in the Foreign Service in 1997 at the FP-2 level with just five years foreign service experience

would not likely have obtained an FP-1 position by 2002.  See Affidavit of Nicholas Gutierrez

("Gutierrez Aff.") at 4 (Exhibit 15) ; Skaggs Aff. at 3-8 (Exhibit 6) ; Wyss Aff. at 3 (Exhibit 8) ;

Campbell Lett at 2 (Exhibit 14).

In sum, both Mr. Felder and Mr. Simmons were treated the same. With respect to both

prevailing plaintiffs, the agency sought to determine what level position they would likely be

occupying assuming that they had been selected for the 1997 Foreign Service positions that were

the subject of the 1999 Case.  The reason that Mr. Simmons received a "paper promotion" while

Mr. Felder did not is attributable to the fact that Mr. Simmons would have entered onto duty in

1997 at a lower FP level, and would have likely received a promotion by 2002.  Since Mr. Felder

-20-

was entering onto duty at the FP-2 level (though the typical entry level is an FP-3), he likely would not have received a promotion to an FP-1 by 2002. The "contrast" between the two that gives rise to plaintiff's challenge (see Comp. at ¶ 14) is attributable to the level at which they would have entered the foreign service, and not for any reason prohibited under Title VII. Indeed, since Mr. Felder and Mr. Simmons are both African American and were both plaintiffs in the same lawsuit, it strains all credulity to suggest that the difference in treatment gives rise to an inference of discrimination or retaliation. See Chappell-Johnson v. Powell, 440 F.3d 484, 488 (D.C. Cir. 2006) (requiring a plaintiff to show that an adverse act gives rise to an inference of discrimination to make a prima facie case); Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002) (same) (quoting Brown v. Brody, 199 F.3d 446, 452 (D.C.Cir.1999)); see also Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir.1999) (establishing prima facie case of discrimination by showing that plaintiff was treated differently from similarly situated employees outside the protected class).

During the administrative proceedings, Mr. Felder contended that there were internal employees who were promoted from the FP-2 to the FP-1 ranks in each year from 1997 through 2003. See Felder Aff. at 2 (Exhibit 2). However, in order to support a contention that these other employees are "similarly situated" for purposes of a disparate treatment analysis, Mr. Felder "is required to demonstrate that all of the relevant aspects of [his] employment situation were 'nearly identical to those of the comparitors.'" Neuren v Aducci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir.1994)); see also Holbrook, 196 F.3d at 261; Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1554 (D.C. Cir. 1997); Dickerson v. Secteck, Inc., 238 F. Supp.2d 66, 77

-21-

(D.D.C.2002).

Here, it is not the case that all of the relevant aspects of Felder's employment situation were nearly identical to those persons who did receive promotions from the FP-2 to FP-1 level. First, all of the individuals identified by Mr. Felder had been in the foreign service longer than the five years of service that Mr. Felder would be credited with (presuming service by Felder from 1997 to 2002). See Wyss Aff. at 3-5 (Exhibit 8) (going through each of the alleged comparitors and providing information as to their length of service). Second, when making promotion determinations, the employees reviewed are grouped by occupational series and compete against persons in their series for promotions. See Skaggs Aff. at 5 (Exhibit 6). Mr. Felder's attempt to look to employees in other occupational series is therefore irrelevant; what is relevant is the experience of people in his series.

In addition, as Mr. Wyss explained in his declaration, "it is normally much easier to come in as an FP-4 and get promoted to an FP-3 than it would be to come in at an FP-3 and get promoted to an FP-2 and then to an FP-1." Wyss Aff. at 3 (Exhibit 8). This is borne out by a consideration of the number of promotions on a year-to-year basis. In 1997 there were three promotions from the FP-2 to FP-1 level out of a total of 23 employees; one out of 17 in 1998; three out of 19 in 1999; three out of 18 in 2002 and three out of 22 in 2003. See Skaggs Aff. at 5-8 (Exhibit 6). This low number of promotions, combined with the fact that all of those promoted to the FP-1 level had more than five years foreign service experience demonstrates that the agency properly placed Mr. Felder at the FP level where he would have been had he been selected into the Foreign Service in 1997.

## VI.    CONCLUSION

WHEREFORE, defendant requests that this matter be dismissed, with prejudice.  A proposed order is included.

Respectfully submitted,

____/s /_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


___/s/_____
ALEXANDER D. SHOAIBI,
Assistant United States Attorney
501 Third Street, N.W., Rm E-4218
Washington, D.C.  20530
(202) 514-7236