**Exhibit A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARVIN FELDER and :
:
ALESTER VAN SIMMONS, :
:
    Plaintiffs, :
: Civil Action No. 99-1860 (GK)
    v. :
:
DANIEL R. GLICKMAN, :
:
    Defendant. :
:

**FILED**

FEB 0 4 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

O R D E R

    This matter is before the Court on Defendant's Renewed Motion For Judgment As A Matter Of Law, Or, In The Alternative, For A New Trial, Or For Remittitur Of The Verdict [#69], Plaintiffs' Motion for Equitable Relief [#71], and Plaintiffs' Motion for Attorneys' Fees and Expenses [#70]. Upon consideration of all pleadings, the lengthy trial record, and the applicable law, for the reasons stated in the accompanying Memorandum Opinion, it is this 31st day of January 2002 hereby

    **ORDERED**, that Defendant's Renewed Motion For Judgment As A Matter Of Law, Or, In The Alternative, For A New Trial, or For Remittitur Of The Verdict is **denied as to the Renewed Motion For Judgment As A Matter Of Law**, **denied as to the Motion For A New**

Trial, and **granted as to the Motion For Remittitur Of The Verdict**; and it is further

**ORDERED** that Plaintiffs' Motion for Equitable Relief is **granted in part and denied in part** in that Plaintiffs are awarded instatement to the first opening or vacancy which becomes available in IS, back pay to the dates on which the first and second vacancies in IS were filled after creation of the roster on which each Plaintiff was placed (without regard to whether selections were made from those rosters and without regard to whether selections were made from within or without IS), and front pay; and that Plaintiffs are denied housing allowances, subsistence allowances, lost home leave, lost overtime, lost sick leave, and entry of a broad injunction affecting future hiring and selection practices to fill vacancies in IS; and it is further

**ORDERED**, that Plaintiffs' Motion for Attorneys' Fees and Expenses is **granted**, in that Plaintiffs are awarded $179,478.75 in attorneys' fees and $3,434.08 in expenses.

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

**Copies to:**

Kim D. Mann
SHAWN MANN, L.L.P.
1850 M Street, NW; Suite 280
Washington, DC 20036

Marina Utgoff Braswell
U.S. ATTORNEY'S OFFICE
Judiciary Center Building
555 Fourth Street, NW
Washington, DC 20001

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARVIN FELDER and

ALESTER VAN SIMMONS,

    Plaintiffs,

    v.

DANIEL R. GLICKMAN,

    Defendant.

Civil Action No. 99-1860 (GK)

**FILED**

FEB 0 4 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### MEMORANDUM OPINION ON ALL PENDING POST-TRIAL MOTIONS

On March 29, 2001, after a seven-day trial, a jury returned a verdict in this race discrimination case for both Plaintiffs, who are African-American and were employed in the Animal and Plant Health Inspection Service ("APHIS") in the Department of Agriculture ("USDA"). On Plaintiff Felder's claim that he was denied positions in the International Services component of Aphis ("IS") on the basis of race, the jury awarded $450,000. On Plaintiff Simmons' claim that he was denied positions in IS on the basis of race, the jury awarded $200,000; on his claim that he was denied certain foreign temporary duty assignments ("TDYs") on the basis of race, the jury awarded $50,000; and on his claim that he was retaliated against because of his EEO complaints when he was transferred from Atlanta, Georgia, airport to Brunswick, Georgia, in December 1998, and later transferred to Conyers, Georgia, in

September 1999, the jury awarded $250,000; in total, Plaintiff Simmons received a jury award of $500,000.

Several motions are now pending, all of which will be disposed of in this Opinion. The Government has filed a Renewed Motion For Judgment As A Matter Of Law, Or, In The Alternative, For A New Trial, Or For Remittitur Of The Verdict. Plaintiffs have filed a Motion for Equitable Relief and a Motion for Attorneys' Fees and Expenses (which is now virtually uncontested). Upon consideration of all pleadings, the lengthy trial record, and the applicable law, the Court concludes that Defendant's Renewed Motion For Judgment As A Matter Of Law And For New Trial will be **denied**, but that Defendant's Motion For Remittitur Of The Verdict will be **granted** as explained herein; and that Plaintiffs' Motion for Equitable Relief will be **granted in part** and **denied in part**, and that Plaintiffs' Motion for Attorney's Fees and Expenses will be **granted** with some minor modifications, as explained herein.

I. **DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL OR FOR REMITTITUR OF THE VERDICT**

  A. **Renewed Motion for Judgment as a Matter of Law**

At the close of Plaintiffs' case, Defendant moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. The motion was denied. Defendant did not renew that motion at any time prior to submission of the case to the jury.

-2-

Defendant has now filed a Renewed Motion for Judgment as a Matter of Law under Rule 50(b) of the Federal Rules.

On June 26, 2001, our Court of Appeals issued <u>Fredrick v. District of Columbia</u>, 254 F.3d 156 (D.C. Cir. 2001) in which it examined at some length the case law and policy pertinent to construction of Rule 50.[1]  That case is dispositive of the Government's pending Rule 50(b) motion.

First, the Court of Appeals noted that:

> [t]he rule, followed in the other courts of appeals, is that "a party who moves for judgment after an opponent's opening statement or at the close of the opponent's evidence must ordinarily reassert the motion at the close of all evidence or risk waiving the right to renew the motion under Rule 50(b)...and the right to appellate review of the sufficiency of an opponent's evidence...". <u>Id.</u> at 160 (internal citations to hornbook and cases from ten different circuits omitted).

Second, although recognizing that it had never "squarely" adopted this general rule, the Court of Appeals emphasized that "we have held that 'a prerequisite to any motion for judgment n.o.v. is a motion for directed verdict at the close of all the evidence,' and that a defendant cannot raise insufficiency of the evidence on appeal unless the defendant filed a directed verdict motion seeking

---

[1] The Court is well aware that there are two significant procedural differences between <u>Fredrick</u> and this case: in <u>Fredrick</u>, the trial judge took the defendant's first motion for judgment under advisement and never expressly ruled on it; and the Defendant failed to file its renewed judgment as a matter of law after the verdict within ten days of judgment as required by Fed.R.Civ.P. 50(b). Neither of those differences was relied upon by the Court of Appeals in reaching its decision.

judgment on that basis. U.S. Indus., Inc. v. Blake Constr. Co., 671 F.2d 539, 548 (D.C. Cir. 1982)". Id. at 161. The Court further reasoned that "[i]f we applied that holding to the [Defendant], it would lose because it failed to move for judgment as a matter of law at the close of the evidence." Id.

Third, the Court of Appeals noted the prevailing rule that "even if a defendant files a motion for judgment at the close of the plaintiff's case, the defendant must move for judgment as a matter of law at the close of all evidence in order to preserve lack of sufficient evidence as a ground for appeal." Id. In the absence of filing such a motion at the close of all evidence, appellate review is limited "to considering whether the verdict is so unsupported by evidence that allowing it to stand would constitute a manifest miscarriage of justice." Id. at 162.

In sum, the clear thrust of the Court of Appeals' discussion in the Fredrick opinion is that the Government, by failing to file a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a) at the close of all the evidence, has waived its right under Fed.R.Civ.P. 50(b) to contest the sufficiency of the evidence after judgment has been entered.

Defendant offers three responses: First, it tries to distinguish this case from Fredrick for the reasons spelled out in note 1, supra. Second, it argues that since the Court of Appeals acknowledged that it had never "squarely" adopted this rule before,

it would be unfair to hold Defendant to that standard. However, the Court of Appeals made abundantly clear that the principle it was now "squarely" adopting, was the prevailing rule in ten other courts of appeals throughout the country. Nor was there any case law in our Circuit suggesting that it would rule differently if squarely faced with the issue, as in Fredrick. Finally, our Court noted that not only has the basic rule become common practice in both civil and criminal cases, but that "[t]he Supreme Court treated it as a foregone conclusion as much as a century ago." Id. at 161. (internal citations omitted). In light of this history, the Government can not claim unfairness at being held to the Fredrick standard.

As to the applicability of the "manifest miscarriage of justice" standard, there is simply no question that, for the reasons stated by Plaintiffs, these verdicts pass that test. Regarding the Plaintiffs' failure to be promoted into IS positions, the jury could well have concluded that the combination of Defendant's insistence on hiring first from within IS, where few African-Americans were employed, the refusal to select Plaintiffs for an IS position despite their placement on the rosters of "best-qualified" candidates for the GS-12 and GS-13 vacancies which were openly advertised, and the creation of a brand-new roster before the ones on which Plaintiffs had been placed expired, all added up

to intentional discrimination on the basis of race.[2]

Regarding Plaintiff Simmons' claims of denial of TDYs, the jury could easily have disbelieved the testimony of his supervisor Thomas Rezba as to the reasons he gave in justification of such denials. Regarding Plaintiff Simmons' claim of retaliatory transfers to Brunswick and Conyers, Georgia, there was sufficient ambiguous evidence from the Defendant as to the seriousness of the threats and sufficient delay in responding to those threats that it would not be a miscarriage of justice for the jury to conclude that the reasons given for the transfers were only a pretext for the agency's real motivation of race discrimination.

### B. Motion for New Trial

#### 1. Evidence Regarding IS Workforce

The Government asks for a new trial because Plaintiffs should not have been allowed to introduce evidence about the composition of the IS workforce, particularly the fact that so few African-Americans (five) worked in the unit at the time of Plaintiffs' applications. The simple answer is that even if the evidence should not have been admitted, Defendant suffered no prejudice. Defendant was given ample opportunity to describe the racial makeup

---

[2] While the Government may have had a far stronger argument to make on this point under the traditional sufficiency of the evidence standard, namely, whether "there was sufficient evidence upon which a jury could properly base a verdict for the [plaintiff]," McFarlane v. Caterpillar, Inc., 974 F.2d 176, 179 (D.C. Cir. 1992), that is simply not the standard to be used under Fredrick.

of each IS unit and to explain how, and why, so few African-Americans applied to IS.

### 2. Compensatory Damages

Plaintiffs readily agree that each of their jury awards must be reduced to $300,000 under the governing statute. 42 U.S.C. §1981a(b)(3). The Government argues that the jury awards totalling $950,000 were so grossly excessive that they must have been the result of passion, prejudice, or other improper factors and that, therefore, a new trial must be ordered; alternatively, the Government argues that a remittitur should be granted.

In weighing this request, the court must consider: (1) "whether the verdict is beyond all reason, or...is so great as to shock the conscience" or (2) "whether the verdict 'is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.'" Webb v. Hyman, 861 F. Supp. 1094, 1113 (D.D.C. 1994) (quoting Jeffries v. Potomac Dev. Corp., 822 F.2d 87, 96 (D.C. Cir. 1987); Martini v. Federal Nat'l Mortg. Ass'n, 977 F. Supp. 464 (D.D.C. 1997), vacated on other grounds, 178 F. 3d 1336 (D.C. Cir. 1999).

Applying these standards, the Court agrees with the Government that the jury's verdict was far in excess of any fair and objective appraisal of proven compensatory damages. While there is no question that both Plaintiffs experienced emotional distress, anger, humiliation, physical symptoms of their inner turmoil, and

the intangible and unquantifiable wound to the spirit that all victims of discrimination suffer, an amount of $450,000 to Plaintiff Felder for one instance of nonselection to IS, and a total of $500,000 to Plaintiff Simmons for the nonselection, denial of TDYs, and retaliatory transfers, is simply not commensurate with the wrongs inflicted or the differences in the wrongs suffered by the two Plaintiffs.

In attempting to justify and to challenge the amount of the verdicts, both parties have cited numerous cases from this and other jurisdictions and have attempted to distinguish those cited by their opponents. The Court does not find this exercise terribly enlightening or constructive. First, and most obviously, the evidence in every case is different, despite the fact that cases may be generically labeled as "nonselection" or "retaliation" or "failure to promote". Second, juries vary greatly, by geographic area and cost of living in that area, by year of trial, and by their own make-up and group dynamics. Finally, the fact that a jury in Idaho may award an insignificant sum of money in a sexual harassment case (which of course is not this case) is hardly persuasive in evaluating whether a given verdict in a District of Columbia sexual harassment case shocks the conscience.

Here, the jury's award to Plaintiff Felder of $450,000 for one instance of nonselection must be reduced under the statutory cap, to $300,000. It is reasonable to conclude, as the Defendant

argues, that Congress intended the top of the $300,000 cap to apply to the most egregious instances of racial discrimination. This is not one of those cases. Taking into consideration all factors, and the lengthy trial record, the Court concludes that Plaintiff Felder's award should be remitted to $125,000.

The jury awarded a total of $500,000 to Plaintiff Simmons. Despite the fact that that award encompassed many more instances of discrimination--namely one instance of nonselection, a number of TDY denials, and two instances of retaliatory transfers--the jury chose to differentiate relatively little between the total awards given the two Plaintiffs.[3] In an effort to incorporate the jury's basic case evaluation, as evidenced by the relative amounts of its two awards, the Court concludes that Plaintiff Simmons' award should be remitted to $175,000.

### C. Motion For Equitable Relief

Plaintiffs have moved for various forms of equitable relief, and the Court will address each request <u>seriatim</u>.

1. Plaintiffs request instatement to IS as soon an opening or vacancy becomes available. Defendant concedes that placement in a position is the preferred remedy in Title VII cases. <u>Webb v. District of Columbia</u>, 146 F.3d 964, 976 (D.C. Cir. 1996). In this

---

[3] This may be explained on the basis of testimony that Plaintiff Felder was the person who first initiated the EEO activity and in general played a leadership role.

case, that request is both reasonable and appropriate. It should be noted that Plaintiffs are not requesting, as Defendant suggests, that they be transferred into positions which are already filled by IS employees or that innocent third parties should be ousted from their positions. However, Plaintiffs are requesting placement into the first openings or vacancies that become available in South America, Latin America, Central America, or the Caribbean. There is no justification for this limitation, since the original vacancy announcements never specified what particular areas applicants would be considered for.

2. Plaintiffs also request back pay and front pay to make them whole for Defendant's failure to select them for positions in IS. Plaintiffs Felder and Simmons are entitled to both, although their respective back pay is to be calculated from the dates on which the first and the second vacancies in IS were filled after creation of the rosters on which each Plaintiff was placed (without regard to whether selections were made from those rosters and without regard to whether selections were made from within or without IS). See Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975); Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 470-471 (D.C. Cir. 1976).

3. Plaintiffs also request housing allowances, subsistence allowances, lost home leave, lost overtime, and lost sick leave. The Court completely agrees with the Defendant that Plaintiffs are

not entitled to allowances intended to defray costs that would not have been incurred. The purpose of the housing allowance, subsistence allowance, and lost home leave, is to compensate employees for the hardships and additional costs of living overseas. Plaintiffs did not receive the overseas assignments they sought and therefore are clearly not entitled to compensatory housing allowances, subsistence allowances, and lost home leave.

Plaintiff Simmons also seeks $822 for overtime lost because of his retaliatory reassignment to Conyers, Georgia. There is not sufficient evidence in the record to establish that Plaintiff Simmons actually lost three weekends of overtime work that he otherwise would have worked in Atlanta, Georgia, and this request will be denied.

Plaintiff Simmons also seeks restoration of approximately 750 hours of sick leave he calculates was used because of work-related stress and emotional and physical problems. There was no evidence to specifically support this claim and the calculation is speculative. Consequently, this request will be denied.

4. Plaintiffs also ask that Defendant be permanently enjoined from discriminating against African-Americans when engaging in future hiring and selection practices to fill vacancies in IS. There is no basis for entering such a broad injunction as to all African-Americans, and no evidence that these two Plaintiffs need broad injunctive relief to vindicate their individual rights. Cf.

Hayes v. Shalala, 933 F. Supp. 21, 27 (D.D.C. 1996).

### D. Motion For Attorneys' Fees And Expenses

Plaintiffs have moved for attorney's fees and expenses, and there seems to be little disagreement between the parties. Defendant's original concern that any award prior to disposition of the post-trial motions would be premature is now moot.

Defendant does not object to the amount of attorneys' fees sought. Plaintiffs have agreed that Defendant is correct about the minor typographical/mathematical error that was contained in Plaintiffs' submission.

Plaintiffs' request for the travel expenses they incurred to attend the trial, which was originally objected to by Defendant, has now also become moot since those expenses have been paid. Defendant has no objection to the remaining costs of $3,434.08.

An Order will accompany this Memorandum Opinion.

Jan. 31, 2001

Gladys Kessler
United States District Judge

**Copies to:**

Kim D. Mann
SHAWN MANN, L.L.P.
1850 M Street, NW; Suite 280
Washington, DC 20036

Marina Utgoff Braswell
U.S. ATTORNEY'S OFFICE
Judiciary Center Building
555 Fourth Street, NW
Washington, DC 20001