# AFFIDAVIT OF MARVIN FELDER
# IN REBUTTAL TO AGENCY STATEMENTS

**COUNTRY OF SOUTH KOREA**
**CITY OF SEOUL**

I, <u>Marvin Felder</u> (African American, black, with EEO activity), Area Director, Agriculture Attaché, International Services (IS), Animal and Plant Health Inspection Service (APHIS), United Stated Department of Agriculture, make the following statement freely and voluntarily to Jeny Walker-Hughes, who has identified herself to me as a Contract Investigator for the USDA, investigating a complaint of discrimination filed by Marvin Felder, knowing this statement may be used in evidence. I understand this statement is not confidential and that it may be shown to any interested party (those with a right to know). I hereby solemnly swear or affirm:

**1.** The reply statements of IS representatives John Wyss and Freida Skaggs disclose for the first time the full scope of the discriminatory practice the Agency has used to deny me the FP-1 position to which I believe I am entitled had the Agency not discriminated against me when I applied for the IS position back in February 1997. The Agency concedes it had to treat my instatement in IS as retroactive to February 14, 1997, seven years earlier than my actual employment date, January 2004. Mr. Wyss asserts the only way IS would have allowed me to enter IS as an FP-1 in January 2004 was if IS had promoted a narrowly defined "comparative employee" in IS to the FP-1 position between 1997 and 2004. However, by "comparative employee," Mr. Wyss explains that he means an IS employee meeting all of the following criteria: entered IS in 1997, entered IS as an FP-3, and had been assigned to the GS-436 series. The implicit criterion Mr. Wyss omits from his list is that the employee must also be a white Caucasian.

**2.** Not surprisingly, there are no "comparative employees" in IS using the pretextual criteria Mr. Wyss has developed for purposes of responding to my original affidavit. There are none precisely because of the discrimination the jury and the court found in my case to have permeated IS during the period from at least 1997 until the date of my trial: IS hired no African Americans to fill management-level vacancies; and, to avoid hiring them, it hired no external employees (external to IS) except at the lowest entry level. IS, instead, filled all of its vacant management positions in IS from within, employing an insular method that served to perpetuate the discrimination against African Americans. IS compounds this discrimination by relying upon the discriminatory effect of its own court-condemned hiring practices as the excuse for excluding me from the category of employees eligible for promotions to the FP-1 level at the time I actually joined IS in January 2004.

3. Mr. Wyss also overlooks the fact that the alleged lack of a "comparative employee" did not stop the Agency from giving me a "paper" promotion. It promoted me from an FP-3, the level or "grade" I would have entered IS in February 1997, to the FP-2 position I was in fact given when I entered IS in January 2004. Mr. Wyss offers no rationale for this inconsistency.

4. Mr. Wyss also attempts to distinguish the action that IS took in promoting Dr. Tanaka by pointing out that Dr. Tanaka had to take a downgrade in order to come into IS as an FP-3. However, I would have had to do the same thing. My salary as a GS-14 in APHIS/PPQ in February 1997 exceeded the highest salaried step, Step 14, in the FP-3 category by a substantial amount. Technically, therefore, I would have taken a downgrade to a GS-13 (FP-3) in order to enter IS in February 1997 at the level for which I had applied, FP-3. Otherwise, in order to match my PPQ GS-14 salary, IS would have had to have given me an FP-2 position.

5. The "comparative employee" criteria Mr. Wyss and Ms. Skaggs have fabricated rests in part upon their refusal to look beyond employees in the GS-436 series for comparatives -- according to them, IS employees only compete with others within their own series. They are wrong. On August 15, 2003, IS Deputy Administrator Iwamoto issued a memorandum to all IS employees confirming that the GS-401, GS-436, and GS-414 series in IS are considered interchangeable series for purposes of promotions. Moreover, Mr. Wyss admits in his affidavit that many of the employees I claim are comparable to myself also moved around freely from one series to another within IS during their IS careers. For example, Mr. Wyss describes Dr. Tanaka as entering IS in the GS-701 series and is now in the GS-401 series. He describes Ms. Quintero as starting out in the GS-436 series and now is in the GS-401 series.

6. Mr. Wyss not only claims I would have had to compete against others in my same series, the GS-436 series, for all promotions, but he then contends the other employees who I identified as comparable to myself had far more experience in IS than I would have had had I entered in February 1997. This is inaccurate or at least misleading. For 26 years, from 1978 until 2004, I was a GS-436 employee at the same agency, Animal and Plant Health Inspection Service (APHIS), in which IS is also a unit. (I was in the Plant Protection and Quarantine (PPQ) unit.) I held management level positions in the GS-436 series in APHIS/PPQ from approximately 1982 until the time I left to join IS. Those management positions in APHIS/PPQ were very much the same in terms of responsibility as those held by GS-436 series APHIS/IS employees at the FP-3 through FP-1 levels.

7. With respect to the Agency's justification for treating Mr. Alester Van Simmons differently than the Agency treated me, two points need to be made. First, Mr. Ken Nagata was not a "comparative employee" to Mr. Simmons. Mr. Nagata did not enter IS as an FP-4, the level Mr.



-2-

Simmons was deemed to have entered IS in February 1997. Instead, Mr. Nagata entered IS in 1997 as an FP-5 and was promoted twice since 1997, first to an FP-4 in 2004 and subsequently to an FP-3 level, the same level Mr. Simmons was accepted into IS in December 2003. Second, I have never contended that Mr. Simmons currently receives a base salary plus locality pay as an IS employee. I contend only that IS, in determining the salary and thus the FP and step level Mr. Simmons was to receive upon entering IS in December 2003, correctly took into account his total salary at the time he left APHIS/PPQ. It did not look solely at his base salary, approximately $58,000 at the time, but it looked at his base salary plus the locality pay he was earning in PPQ at the time he left, in the aggregate approximately $11,400 more than his base salary. The base salary Mr. Simmons received upon entering IS was thus the functional equivalent of a combination of his PPQ base salary plus his PPQ locality pay. In contrast, the Agency, in determining my IS base salary, refused to take into account and include in the calculation the locality pay I was receiving in January 2004 as an APHIS/PPQ employee just prior to my conversion. It elected to recognize only the base salary I was receiving as an APHIS/PPQ employee, assigning me as my base IS salary that same unduly low base salary I had been earning as an APHIS/PPQ employee.

I have read the above statement consisting of _3_ pages, and it is true and correct to the best of my knowledge and recollection. I have been given an opportunity to draft the statement and make any changes, corrections, additions, or deletions. I have initialed each page and signed the statement below.

I declare, certify, verify or state under penalty of perjury that the foregoing is true and correct. Executed on _____, 2004.

_____
Signature of Affiant

SUBSCRIBED AND SWORN BEFORE ME AT:
(Country of South Korea, City of Seoul)
ON THIS _21_th DAY OF _July_ 2004.

_____
Signature of Witness

STEVEN D ALLEN
SSG US ARMY
SR PARALEGAL NCO

WITH THE UNITED STATES ARMY AT YONGSAN GARRISON, SEOUL, KOREA
THIS _____ DAY OF _____ 20___

21 JUL 2004

-3-