# WITNESS AFFIDAVIT

I, Freida Skaggs (African American female have not filed an EEO complaint), am an employee of the U.S. Department of Agriculture, APHIS, International Service, located in Riverdale, Maryland, in the capacity of Director, Personnel & Travel, International Services, GS-201-14, from April 1994 until present. My telephone number during working hours is 301-734-7597.

I HAVE BEEN ADVISED OF THE FOLLOWING:

I am required by Federal regulations and Department of Labor policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the Department of Agriculture. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations. This means that any employees whom I accuse of discrimination or other acts of impropriety may be shown relevant portions of my affidavit and be provided an opportunity to respond for the record. In addition, the Complainant and the appropriate Departmental officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

I am entitled to representation by a person of my choice during my participation in the EEO process, so long as my choice does not result in a conflict of interest. I have not chosen a personal representative at this time.

EEO regulations specifically protect participants in the EEO complaint process from any acts of reprisal, discrimination, coercion, harassment, restraint, or interference as a result of their participation in the complaint process.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly xx swear or ___ affirm that the statement which follows is true and complete to the best of my knowledge and belief, and fully addresses the issues and allegations raised with me by the investigator.

I understand Mr. Felder has filed a formal EEO complaint which was acknowledged but not formally accepted (no date). The issues are:

> Whether the agency subjected the Complainant to discrimination based on race (African American), color (Black) and reprisal (unspecified), when it failed to:
> 1. Instate him at the FP-1 level before his transfer on January 5, 2004; and,
> 2. Grant him step increases retroactive with the instatement.

Specifically, Mr. Felder claims that he should have been instated, effective February 14, 1997, to salary grade FP-1/02 rather than FP-2/09. He also contends he was not given salary step increases he would have received since that date.

Please briefly list the responsibilities of your position.

**I am the Director of the Personnel and Travel section of International Services and in this capacity manage all travel and personnel functions of the program.**

Were you involved in decisions regarding Complainant's salary? In what way? Who was responsible for making the final decision regarding his salary?

**I was not involved in the decision regarding the complainant's salary, but provided data to the Office of the Inspector General that supported their decision that complainant was not entitled to come into the Foreign Service at a level higher than the FP-2. The final decision regarding the complainant's salary level was made by the Office of General Counsel.**

What policy did IS follow with regards to salary for candidates entering IS in 1997?

**APHIS operates under guidance provided to all Foreign Affairs Agencies by the Department of State in the Foreign Affairs Manual. Since 1994, operating under this parameter, APHIS operated under an internal policy of bringing individuals into the Foreign Service career system at a level no higher than the FP-3 (GS-13) level. However, based on the decision issued by the Office of the General Counsel, complainant was brought into the system at the FP-2 level (GS-14), one level higher,**

as a career foreign service officer.

Complainant contends the State Department Foreign Affairs policy should have been followed. Is this your understanding?

**As stated above, APHIS operates under guidance provided to all Foreign Affairs Agencies by the Department of State in the Foreign Affairs Manual.**

Complainant contends that a comparative, Alester Simmons, received the equivalent of his base salary and locality pay upon entry into IS. Is this correct? Can you provide documentation (SF-52) to show his salary conversion from the GS to FP pay plan? Was this salary conversion calculated per policy?

**We were requested by the Office of General Counsel to determine if any individual had been converted to the FS system during the designated time period. During this period, June 9, 1997-December 9, 1998, Mr. Felder and Mr. Simmons were both on the rosters at different grade levels. Mr. Felder was on the FP-436-3 (GS-13) level roster with a score of 61; Mr Simmons was on the FS-436-4 (GS-12) roster with a score of 73. These scores were derived by a panel of 436 occupational group individuals performing like a Merit Promotion panel in 1997. The difference was that their objective was to establish a roster of eligible candidates for the foreign service. You only need to make a score of 50 or better to be placed on the roster.**

During that time period another individual, Ken Nagata, was selected from a different roster at the FP-5 level (GS-11). Since Mr. Nagata was selected and close in grade level to Mr. Simmons, we were instructed by the Office of General Counsel to parallel Mr. Simmons with Mr. Nagata. Mr. Nagata received a promotion to the FP-4 level (GS-12) through the Foreign Service board process in November 2001, and since Mr. Simmons was being paralled with Mr. Nagata, he was brought in at the higher level of FP-436-3 (GS-13). I will provide the SF52 for Mr. Nagata.

Individuals duty stationed abroad are not entitled to locality pay. Mr. Simmons was converted into the Foreign Service at the base salary level without locality pay per policy.

Complainant claims that because of discrimination, at no time during the period February 14, 1997 (instatement) until December 3, 2003, was he allowed to meet with the Promotion Review Board in order to submit his accomplishments and receive consideration for promotion. Please explain the policy and practice for promotion from FP-2 to FP-1. Were all employees promoted at that level promoted as a result of submitting accomplishments and meeting with the Promotion Review Board?

All Foreign Service Officer's performance folders are reviewed on an annual basis by an intermediate Foreign Service selection board for promotions and all other types of incentives. The performance folders contain performance evaluations, and other performance related material. They do not physically meet with the board.

The regulation that governs this process is contained in the Foreign Service Precepts taken from the Department of State Foreign Affairs Manual.

International Services received acceptance of the offers of employment in International Services from Messrs. Felder and Simmons from their lawyers through the Office of General Counsel in a letter dated May 19, 2003.

Complainant claims IS has stated there were no comparatives, i.e., no employees who received a promotion from FP-2 to FP-1 in 2001, however, he claims four employees were promoted from FP-2 to FP-1 in 2001: J. Mackley, D. Macki, E. Quinterio and R. Tanaka. Is this correct? Are these employees similarly situated to Complainant?

J. Mackley is White, white, with no EEO activity, D. Macki is White, white, with no EEO activity, E. Quinterio is White, white, with no EEO activity, and R. Tanaka is White, white, with no EEO activity.
Yes, it matters that these comparatives were in a different series than the Complainant. Because when the board meets, the employees reviewed are grouped and compete according to their occupational series. All promotions are considered within series.

I am providing data provided to the Office of General Counsel that led to their decision that Mr. Felder was not entitled to a promotion from FP-2 to FP-1. As you will see, there were 4 promotions from a total of 23 employees. Employees are

reviewed by the selection board based on their series and class and force ranked for promotion eligibility.

Complainant claims in 1997 J. Nichols, C. Castleton and P. Fernandesz were promoted from FP-2 to FP-1. Is this correct? Please explain each promotion, whether the promotion was a result of submitting accomplishments and meeting with the Promotion Review Board, the race, color and EEO status of each. Were these employees in the same series/job classification as Complainant?

**As previously stated all promotions and incentives are a result of a review by the annual selection board. (1) J. Nichols, White, white, with no EEO activity, 341 series; (2) C. Castleton, White, white, no EEO activity, 401 series; (3) P Fernandez, Hispanic, white, no EEO activity, 401 series. There were three promotions out of a total of 23 employees.**

Complainant claims in 1998 N. Gutierrez was promoted from PF-2 to FP-1. Is this correct? Please explain the promotion, whether the promotion was a result of submitting accomplishments and meeting with the Promotion Review Board, the race, color and EEO status of Mr. Gutierrez. Was this employee in the same series/job classification as Complainant?

**All promotions and incentives are a result of a review by the annual selection board. Mr. Gutierrez is Hispanic, white, with no EEO activity, and is in the 401 series. One promotion was granted this year out of a total of 17 employees.**

Complainant claims in 1999, D. Bailey, S. Smith and G. Tween were promoted from FP-2 to FP-1. Is this correct? Please explain each promotion, whether the promotion was a result of submitting accomplishments and meeting with the Promotion Review Board, the race, color and EEO status of each. Were these employees in the same series/job classification as Complainant?

**All promotions and incentives are a result of a review by the annual selection board. D. Bailey is White, white, and has filed an EEO complaint, 414 series; S. Smith is White, white, with no EEO activity, 701 series; G. Tween is White, white, with no EEO activity, 436 series. Three promotions out of a total of 19 employees.**

Complainant claims in 2002, S. French, E. Hoffman and K. Sliter were promoted from FP-2 to FP-1. Is this correct? Please explain each promotion, whether the promotion was a result of submitting accomplishments and meeting with the Promotion Review Board, the race, color and EEO status of each. Were these employees in the same series/job classification as Complainant?

**All promotions and incentives are a result of a review by the annual selection board. C. French is African American, black, with no EEO activity; 701 series; K. Sliter is White, white, with no EEO activity, 701 series. E. Hoffman is White, white, with no EEO activity, 401 series. Three promotions out of a total of 18 employees.**

Complainant claims in 2003, G. Greene, D. Hannapel and H. Hofmann were promoted from FP-2 to FP-1. Is this correct? Please explain each promotion, whether the promotion was a result of submitting accomplishments and meeting with the Promotion

Review Board, the race, color and EEO status of each. Were these employees in the same series/job classification as Complainant?

**All promotions and incentives are a result of a review by the annual selection board. G. Greene is African American, black, with no EEO activity, 436 series; D. Hannapel is White, white, with no EEO activity, 436 series; H. Hoffmann is White, white, with no EEO activity 414 series. Three promotions out of a total of 22 employees.**

I have reviewed this statement, which consists of 8 pages, and hereby solemnly _x_ swear ___ affirm that this is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_____    7/9/04
Signature of Deponent                Date

Signed before me at (Street and City) 4700 River Rd - Riverdale, MD
on this 9 day of July, 2004.

_____
Signature of Witness