**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **BARBARA K. FELDER, as Personal Representative of the Estate of Marvin Felder, Deceased**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**MIKE JOHANNS, Secretary, U.S. Department of Agriculture**<br><br>    **Defendant.** | **Civil Action No. 06-0910 (CKK)** |

## PLAINTIFF'S RULE 7(h) STATEMENT OF MATERIAL FACTS IN DISPUTE

Plaintiff Barbara K. Felder, in her capacity as personal representative of the estate of Marvin Felder ("Plaintiff"), hereby files the following statement, pursuant to Local Rule 7(h), of material facts as to which Plaintiff contends there exist a genuine issue necessary to be litigated, with references to parts of the record relied upon to support these statements. *See* LCvR 7(h). This statement first addresses *seriatim* each of Defendant's 25 numbered statements of material facts as to which Defendant contends there is no genuine issue and then follows with Plaintiff's own statement of material facts as to which there is no genuine dispute bearing upon Defendant's summary judgment motion.

### I.    Defendant's Statements

   **1.**    Admitted.

   **2.**    Admitted.

   **3.**    Admitted.

**4.**    Admitted.

**5.**    Admitted.

**6.**    Admitted.

**7.**    Admitted that such a letter was written to Ms. Braswell and that the quotations selected from the letter are accurate.  The letter speaks for itself with respect to the other matters covered in it.

**8.**    Plaintiff has no knowledge as to whether such an email, dated October 31, 2002, was sent from Agency counsel to Ms. Skaggs and, if it was, whether it was a response to the October 9, 2002 letter from counsel for Plaintiff; therefore, Plaintiff denies that Statement No. 8 represents an accurate statement of fact.  In addition, the email constitutes an attorney-client communication the disclosure of which Defendant has consistently objected to during the course of discovery on the grounds of this privilege.  *See*, *e.g.*, objections made to Plaintiff exploring with Dr. Wyss during his deposition the nature and scope of the instructions Dr. Wyss received from this same Agency counsel.  Ex. P at 17.[1]  Furthermore, Plaintiff denies the last sentence in Statement No. 8 accurately summarizes the content of that email.  The email speaks for itself.

**9.**    Denied.  Ms. Skaggs was directed to locate IS employees who entered IS between June 1997 and December 1998 irrespective of their FP level or occupational series.  Def. Mem. Ex. 6 at 3-4.  She located only one such employee, Mr. Ken Nagata.  She was instructed to treat Mr. Nagata as "parallel to Mr. Simmons" because he was "close in grade level to Mr. Simmons."  *Id.*  She determined that by 2002, Mr. Nagata, who had entered IS as an FP-5, had been promoted to an FP-4.  Because of this

---

[1] References to lettered exhibits are to attachments to Plaintiff's concurrently filed Opposition Memorandum.  References to numbered exhibits are to attachments to Defendant's Supporting Memorandum ("Def. Mem."), supporting its Renewed Motion To Dismiss or for Summary Judgment.

paralleling with Mr. Nagata, IS gave Mr. Simmons a retroactive "paper promotion" from an FP-4 to an FP-3. *Id.* at 4; Ex. L at 40-41.

**10.** Denied. Agency records indicate that IS had 10 similarly situated employees, comparable to Mr. Felder: IS had promoted them from FP-2 to FP-1 during the period 1997 through 2002; and they all were in the same or interchangeable occupational series as Plaintiff (GS-436, -401, or -414). Ex. Q; Ex. K at 2; Ex. L at 60-61; Ex. N at 23-24. However, none had entered IS between June 1997 and December 1998. Ex. Q.

**11.** Admitted that Dr. Wyss wrote Mr. Felder such a letter, dated December 19, 2002, and that a true and correct copy of it (except for the underscoring) is attached to Defendant's Memorandum as Exhibit 9. Plaintiff denies that Statement No. 11 accurately summarizes that letter. For example, it states merely that the position, APHIS Area Director, "is classified as an Agriculturalist, FP-401-2 (GS-14 equivalent)." Not mentioned in the Statement No. 11 summary is the fact that Dr. Wyss's letter expressly seeks Mr. Felder's written acceptance of the Area Director position in Seoul. Def. Mem. Ex. 9.

**12.** Admitted that Dr. Wyss sent a letter dated January 15, 2003 to Mr. Felder, repeating the statement that the letter "constitutes your assignment" to APHIS/IS, and that a true and correct copy of that letter is attached to Defendant's Memorandum as Exhibit 10. Plaintiff denies that it states that Mr. Felder was selected "to fill the position of APHIS Area Director, Seoul, Korea at an FP-2, step 9 grade level." With respect to the FP level, it states only that, "The position is classified as an Agriculturalist, FP-401-2 (GS-14 equivalent)," identical to the statement appearing in Dr. Wyss's letter of December 19, 2002 letter to Mr. Felder. Def. Mem. Exs. 9 and 10. The January 15, 2003 letter does include a statement of the base salary at the time of

conversion from APHIS/PPQ to FP-2, step 9. *Id.* Otherwise, that letter speaks for itself.

**13.** Denied. Judge Kessler's order of instatement, dated February 4, 2002, did not require the Agency to assign Mr. Felder to any particular position, just to the first position that became available. Def. Mem. Ex. 1. The letters from Dr. Wyss "assigning" Mr. Felder to the Area Director position in Korea, allegedly classified as an FP-2 position, constituted merely offers of assignments, each subject to acceptance by Mr. Felder. *See* Def. Mem. Exs. 9 and 10. Following extensive negotiations between the parties, including over the appropriate FP-class for Mr. Felder and his entitlement to an FP-1 upon entry (Exs. B-G, Exs. J, R; Def. Mem. Exs. 3, 9-11, 14, 17-19), Mr. Felder finally accepted the Agency's offer at the FP-2 level following a meeting with the Deputy Administrator of IS and others on October 30, 2003. Dr. Wyss acknowledges Mr. Felder's acceptance, confirming it in a letter to Mr. Felder dated December 5, 2003. Ex. G. IS does not convert Mr. Felder from an APHIS/PPQ employee to an APHIS/IS employee at the FP-2 level until December 28, 2003. *Id.*

**14.** Admitted that such a letter, dated January 31, 2003, was written and that a true and correct copy of it (except for the underscoring) is attached to Defendant's Memorandum as Exhibit 11. However, as the letter itself discloses, the person with whom the checklist of items requiring resolution was to be resolved was the U.S. Attorney serving as trial counsel to Defendant in the 1999 Case, and the checklist involved many items aside from concluding the process of transferring Mr. Felder to IS. Def. Mem. Ex. 11. Those identified items also addressed matters necessary to wrap up lingering trial issues and expressly characterized Dr. Wyss's prior "assignments" of Mr. Simmons and Mr. Felder as merely offers, soliciting amended offers on their behalf from Dr. Wyss. *Id.*

**15.**  Admitted that such a letter, dated February 27, 2003, was written and that a true and correct copy of it is attached to Defendant's Memorandum as Exhibit 12, but denies that Mr. Simmons was converted "through the assignment."  He was converted as a direct result of an official Agency personnel action.  *See* Ex. G.  *See also* discussion of Mr. Felder's personnel action in Plaintiff's Opposition Memorandum at 16-17.

**16.**  Denied.  Judge Kessler's order of February 4, 2002 requires only that IS instate Mr. Felder "to the first opening or vacancy which becomes available in IS, retroactive to the date on which the first and second vacancies in IS were filled after the creation of the roster on which Mr. Felder was placed".  Def. Mem. Ex. 1.  That order states nothing about the FP level they must occupy once they are converted from APHIS/PPQ employees to APHIS/IS employees.  *Id.*  Plaintiff admits, however, that Mr. Felder and Mr. Simmons were at different GS-levels when they applied for openings in IS and that they were placed on different selection rosters as a result.

**17.**  The first sentence is admitted.  The second sentence is denied.  Ms. Skaggs and Dr. Wyss did not decide whether to promote Mr. Felder to an FP-1 upon his conversion from PPQ to IS; that decisionmaker was Agency Counsel Campbell, Def. Mem. Ex. 6 at 2, Ex. 8 at 2, and she has presented no affidavit of record and declined to testify in depositions because of the attorney-client privilege.  *See* Ex. U.  Questions directed to Dr. Wyss about Agency Counsel Campbell's decisionmaking process and instructions went unanswered once Defendant asserted the attorney-client privilege.  *See* Ex. P at 17.  Ms. Skaggs, at instructions from the Agency Office of General Counsel, determined that an individual had entered the service of IS during the designated timeframe who had received a promotion from an FP-5 to an FP-4 and that identified individual was close enough to and parallel with Mr. Simmons to justify IS promoting Mr. Simmons.  Def. Mem. Ex. 6 at 3-4; Ex. L at 40-41.

**18.**  The first sentence is admitted.  The second sentence is denied.  The actual internal policy of IS during the relevant timeframe was to bring no individual into the Foreign Service at IS at any management level; vacancies in those positions were to be filled through internal promotion only.  Ex. L at 12-13; Ex. K ¶ 2.  The third sentence is also denied.  Mr. Felder was given an FP-2 level assignment because IS refused to provide him a paper promotion to an FP-1 and because his then salary level (by 2003) at APHIS/PPQ required that he enter IS at no lower than the FP-2 level.  Def. Mem. Ex. 2 at 2; Ex. K ¶ 4.

**19.**  Denied.  No employee would have entered IS (Foreign Service) in 1997 at the FP-2 level.  Ex. L at 12-13; Ex. K at 1.  What the Agency actually determined regarding the likelihood of obtaining an FP-1 position is not known because that decisionmaker, Agency Counsel Campbell, has not submitted an affidavit for the record and was not produced for depositions in reliance upon the attorney-client privilege and because all questions of witnesses who may have known about the Agency's determination were objected to and not answered likewise in reliance upon attorney-client privilege.  *See* Ex. P at 17; Ex. U.  Plaintiff admits that those IS employees promoted from FP-2 to FP-1 between 1997 and 2002 had greater than five years of service in IS.  However, IS gave Mr. Felder no credit in IS's comparator analysis for his 22 years of experience as a manager in PPQ, a sister unit of IS in the same Agency, including credit for his significant foreign service trade experience while stationed abroad.  Ex. K ¶ 6; Ex. S ¶ 8.  Plaintiff denies that IS employees competed for promotions against other IS employees only in their same occupational series.  As pertinent, IS considered the occupational series GS-436, GS-401, and GS-414 to be interchangeable series for promotion purposes; *i.e.*, an employee in one series could compete on equal footing for a promotion in any of the three series.  Ex. K ¶ 5; Ex. L at 60-61; Ex. N at 23-24; Ex. O; Ex. S ¶¶ 4-7.

**20.**  Admitted that the numbers set forth in the second sentence are correct, but denies the characterization of the first sentence, characterizing these numbers as representing "very few employees."  The names of the IS employees listed annually as FP-2s in IS's records reveal that the same employees who were not promoted in one year would appear again the next year in IS's records as FP-2s.  Ex. Q.  Accordingly, the total pool of FP-2 employees during the six-year period in question is roughly the same 15 to 20 unpromoted employees.  By 2003, IS has promoted a majority of them to an FP-1 level.  *Id.*

**21.**  Admitted that Exhibit 17 attached to Defendant's Memorandum is a true and correct copy of a letter, except for the underscoring, written to Agency Counsel Campbell on the date indicated.  The letter speaks for itself as to what it states, but read in context it appears the comment regarding the within-grade step challenges on a regulatory basis the step the Agency intended to assign Mr. Felder, but does not address Mr. Felder's still-pending request for a paper promotion.  Def. Mem. Ex. 17.  That latter demand of Mr. Felder's is addressed in the last paragraph of the April 14 letter, not mentioned in Statement No. 21, with the request of Mr. Felder to meet in person with Deputy Administrator Iwamoto and Administrator Bobby Acord.  Def. Mem. Ex. 17.

**22.**  Admitted that Exhibit 18 to Defendant's Memorandum constitutes a true and correct copy, except for the underscoring, of the email Mr. Felder sent Agency Counsel Campbell on April 22, 2003.  The email speaks for itself as to what it actually states.  The second demand is, "FP-1 upon entry."  The first demand is, "Meeting with Acord and Iwamoto before final signature."  *Id.*

**23.**  Admitted that Exhibit 14 attached to Defendant's Memorandum is a true and correct copy, except for the underscoring and circling of words, of the letter Agency Counsel Campbell wrote counsel for Mr. Felder on May 9, 2003.  The second

paragraph on page 2 of that letter, under the heading "**Promotion to FP-1**," sets forth, through Agency Counsel Campbell's representation, IS's first written explanation as to why it refused to promote Mr. Felder to the FP-1 level.  Def. Mem. Ex. 14.

24.  Admitted that Exhibit 19 attached to Defendant's Memorandum is a true and correct copy, except for the  underscoring, of the letter from Mr. Felder's counsel to Agency Counsel Campbell dated May 19, 2003.  The letter speaks for itself as to what it states.  It reasserts the right of co-plaintiffs Felder and Simmons to continue to pursue the face-to-face meeting with Administrator Acord and Deputy Administrator Iwamoto to discuss the previously mentioned transitional issues.  Def. Mem. Ex. 19.

25.  Admitted that Exhibit 20 attached to Defendant's Memorandum is a true and correct copy of a series of emails between counsel for Mr. Felder and Mr. Simmons and trial counsel representing IS in the 1999 Case.  The context of those emails reveals that trial counsel were "wrapping up this case," referring to the lingering issues associated with the trial and the payments due co-plaintiffs and their counsel arising out of that concluded litigation.  The emails are not an exchange between Plaintiff's counsel and Agency Counsel Campbell, who had been negotiating on behalf of IS with co-plaintiffs Felder and Simons and their counsel, the undersigned, over the issues affecting the instatement and conversion from APHIS/PPQ employees to APHIS/IS employees.  *Id.*

## II.  Plaintiff's Statements

26.  In her Memorandum Opinion, issued February 4, in response to post-trial motions of the parties, Judge Kessler rationalized the finding of the jury that, despite fewer incidents of discriminatory treatment (than co-plaintiff Simmons experienced), the jury awarded Mr. Felder and Mr. Simmons comparable damage awards on the basis that Mr. Felder was responsible for initiating the EEO case and played the

leadership role in pressing the litigation against IS.  Ex. A at 9, n.3.  Mr. Simmons confirms Judge Kessler's characterization of Mr. Felder's leadership role.  Ex. S ¶ 3.

**27.**  Agency Counsel Iyoka Campbell directed Ms. Skaggs and Dr. Wyss to prepare a set of charts or tables identifying all IS employee each year, from 1997 through 2003, who were at the FP-2 level during that year, showing as to each who was promoted to FP-1 that year and who remained as an FP-2.  Ex. L at 20-22, 45, 48-59; Ex. P at 16-20; Ex. Q.  Those charts or tables, attached as Ex. Q to Plaintiff's Opposition Memorandum, identify 10 white IS employees in the GS-436, GS-401, or GS-414 series who IS promoted from FP-2 to FP-1 between 1997 and 2002.  Ex. Q; Ex. T at 5-8.

**28.**  For promotion purposes, IS treated the occupational series of GS-436, -401, and -414 as interchangeable.  That is, under IS policy, an FP-2 in the GS-401 series may be promoted to fill an opening for a GS-401, GS-436, or GS-414.  Ex. O, Ex. K ¶ 5, Ex. L at 60-61, Ex. N at 23-24, Ex. S ¶ 4-7.

**29.**  Dr. Wyss wrote Mr. Felder in September 26, 2002, extending IS's initial assignment offer "to fill the position of APHIS Area Director, Seoul, Korea.  The position is classified as an Agriculturist, FP-401-2 (GS-14 equivalent)."  Ex. B.  The letter solicits Mr. Felder's acceptance of the offered assignment.  *Id.*

**30.**  IS knew, in advance of its search of its records for a comparator for Mr. Felder, that it could not and would not find one because of IS's hiring policy, not hiring management level personnel from outside the Agency, and because of the parameters its Agency Counsel Campbell had set for comparators, entering IS as an FP-2 between June 1997 and December 1998.  Ex. K ¶ 1; Ex. L at 12-13, 41-43.

**31.**  In electing to use a comparator methodology to shape the decision not to promote Mr. Felder to the FP-1 level, IS ignored the Department of State Foreign

Affairs manual on hiring and promotions applicable to IS.  Def. Mem. Ex. 6 at 2, Ex. 8 at 3; Ex. L at 32-33, 55; Ex. P at 50-51.

**32.**   The comparator criteria IS used to direct its decision on whether to promote Mr. Felder to FP-1 did not take into account the length of time other FP-2s in IS had waited for their promotions to FP-1.  Ex. L at 50-51, Ex. P at 42-43.  IS admits this length of time is a relevant factor in determining promotion potential and should have been relevant in determining whether Mr. Felder had any comparators.  Ex. P at 43-44.

**33.**   The position in IS designated as "APHIS Area Director" may be filled by an IS employee who is either an FP-1, FP-2, or FP-3.  Ex. S ¶¶ 4-7 and Attachment.

**34.**   On October 9, 2002, Mr. Felder responded by letter to Dr. Wyss's September 26, 2002 initial assignment offer.  Ex. C.  He conditionally accepted the Area Director position, "pending all issues being resolved."  *Id.*  He reiterated this conditional acceptance on January 17, 2003.  Ex. R.

**35.**   On May 9, 2003, Agency Counsel Campbell wrote counsel for co-plaintiffs requesting they unequivocally "accept or deny the offered positions . . . in writing."  Ex. D.  The letter also refers again to the so-called "assignment" as an "offered . . . FP-2 position."  *Id.*  It confirms that "other issues as appropriate" may be discussed at the future agreed-to orientation meeting with IS officials.  *Id.*

**36.**   By email dated September 25, 2003, Mr. Felder requested Deputy Administrator Iwamoto (and Administrator Acord) to meet with Mr. Felder "to resolve the following issues."  Ex. E.  One of the enumerated issues was the "differences in handling the particulars of my case in comparison with the handling of Mr. Simmons case (promotion)."  *Id.*

**37.**   IS Program Assistant Newton emailed Mr. Felder and other participants on September 29, 2003, regarding the itinerary for orientation week.  Ex. F.  One of the

described itinerary events was Mr. Felder's meeting on October 30, 2003 with Messrs. Iwamoto and Gutierrez.  *Id.*

**38.**  Following the October 30, 2003 meeting between Mr. Felder and IS management officials, including Administrator Acord and Deputy Administrator Iwamoto, Mr. Gutierrez emailed Mr. Felder on November 18, 2003, reiterating what Dr. Wyss and Mr. Gutierrez had understood to be Mr. Felder's position, as he explained it at the October 30, 2003 meeting, regarding his unwillingness to accept the Area Director assignment without a promotion to an FP-1.  Ex. J.  The letter solicited Mr. Felder's prompt "respon[se] regarding the Korea position."  *Id.*

**39.**  Dr. Wyss wrote Mr. Felder on December 5, 2003, acknowledging Mr. Felder's acceptance of the offer of the position of Area Director in Seoul, Korea at the FP-2 level.  Ex. G.  That letter states that the date of Mr. Felder's official personnel action converting him from an APHIS/PPQ employee to an APHIS/IS employee would be December 28, 2003.  *Id.*

**40.**  On December 15, 2003, Mr. Felder executed his administrative EEO complaint attaching his summary of the October 30, 2003 meeting with Deputy Administrator Iwamoto.  Ex. H.  He executed an amended EEO complaint the next day, December 16, 2003, transmitted to Defendant by cover letter dated December 19, 2003, stamped as received on January 2, 2004.  Ex. I.

**41.**  At the date of his conversion from PPQ to IS, Mr. Felder had concluded 22 years of employment in PPQ in management-level positions.  Ex. K ¶ 6.  IS, in its search for a comparator to Mr. Felder, gave Mr. Felder no credit for any of these 22 years of experience in PPQ.  Ex. P at 46-47.  Mr. Felder's years of management responsibilities in PPQ included experience in foreign trade, including time spent in foreign countries performing services comparable to what IS's upper management level employees also performed.  Ex. K ¶ 7; Simmons Decl. ¶ 8, Ex. S.

Respectfully submitted,

_____/s/_____

Due and Filed:                    KIM D. MANN, D.C. Bar # 81471
April 30, 2008                    Scopelitis, Garvin, Light, Hanson & Feary
                                  1850 M Street, N.W., Suite 280
                                  Washington, DC 20036-5804
                                  (202) 783-9222
                                  (202) 783-9230 (fax)

                                  **Attorney for Plaintiff
                                  Barbara K. Felder**