**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BARBARA K. FELDER,** )<br>)<br>    **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**MIKE JOHANNS,** )<br>**Secretary, Department of Agriculture,** )<br>)<br>    **Defendant.** ) | **Civil Action No. 06-0910 (CKK)** |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S RENEWED MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

    **I.**    **The Discriminatory Event is the Decision on How to Implement the February**
                **2002 Order**

    Plaintiff's EEO Counselor contact was untimely.  The decision at issue in this matter is how

the Defendant implemented the 2002 Court Order.  This is not a case of a standard selection and

placement, but rather one about the negotiation between the parties regarding how two

individuals would receive retroactive placements into the Foreign Service.  The Agency's

decision was clear and never changed with respect to Mr. Felder's placement at an FP-2 level.

This is a matter of corrective action taken by an Agency pursuant to a Court Order.  Plaintiff had

two avenues under which to assert his rights, by either alleging non-compliance with a Court

Order or with the EEOC.  Plaintiff was aware that the Agency would not provide the relief he

sought (FP-1) and he was required to act.  See, e.g, Dolmage v. Postmaster General, EEOC DOC

05910897, 1992 WL 1374369 (1992)(finding untimely counselor contact where Agency notified

a Complainant that it would not provide the relief he sought pursuant to the implementation of a

final agency decision requiring corrective action).  Plaintiff's complaint is that in the

implementation of that Order, a co-Plaintiff was treated differently than Mr. Felder.  Under the circumstances, the delay in seeking counselor contact was not a reasonable time in which to seek EEO counseling regarding the Agency's refusal to grant Mr. Felder the relief he desired.

Plaintiff cannot escape the fact that, at the very latest, on June 4, 2003, he, through his counsel, "unequivocally" accepted an FP-2 position from Defendant.  Importantly, he did not learn of an assignment, he negotiated it.  The language of plaintiff's counsel in his June 4, 2003 e-mail to Defendant's counsel Marina Braswell cannot be more clear and unequivocal.  Granted, Mr. Felder was in an unusual situation, far different from that typically encountered by a "wronged" employee.  He did not suffer an adverse action, but, rather, agreed to one with which he apparently was not completely satisfied.

In the interest of simplicity and finality, this reply will focus on the June 4, 2003 e-mail from plaintiff's counsel to AUSA Braswell (Defendant's Memo., Exh. #20).  Mr. Mann states, on behalf of his clients:

> After some back and forth, Messrs. Felder and Simmons did accept positions in IS uniequivocally.  They are not particularly satisfied with their FP- and grade levels and, in Mr. Simmons's case, the promotion potential of the position, but decided to accept the offers.  Mr. Felder will continue to seek a meeting with the head of IS to discuss his future with IS.

How can there be any question that Mr. Felder was aware on June 4, 2003 that he would be going into IS at the FP-2 level?  Plaintiff negotiated extensively with Defendant and "after some back and forth" struck a deal that he decided he did not like over six months later.  The tag-on sentence about seeking a meeting "to discuss his future with IS" does not change his "unequivocal" acceptance of the offered FP-2 position, regardless of the fact that Felder was "not particularly satisfied" with his FP level.

2

Plaintiff attempts to distinguish his predicament from that of the federal employee in McCants v. Glickman, 180 F. Supp.2d 35 (D.D.C. 2001), because the challenged action in McCants was a non-selection as opposed to the "specific, discrete, dispositive, adverse personnel action" attacked by Plaintiff, Felder's official conversion into IS. Plaintiff's Opposition at p.18, footnote 8. But Plaintiff here disguises the real nature of Mr. Felder's grievance. Despite months of negotiation between Mr. Felder and Defendant, during which Felder, through counsel, zealously tried to convince Defendant to pay him at the FP-1 level, Defendant ultimately did not agree to give him what he wanted. Felder did not get the FP-1 for which his attorney aggressively lobbied; instead he **unequivocally** agreed to the FP-2. Not only was he not selected for the FP-1 level, the FP-2 was the result of arms-length negotiation.

As argued in Defendant's renewed motion for summary judgment, Felder was aware by January 15, 2003 that the agency had not agreed to the FP-1 level he desired. And approximately six months later, he officially conceded that fact when he, through his counsel, accepted the offered position in IS unequivocally. Regardless of any contractual issues he might have faced, there is no question that if he believed the agency's failure to agree to an FP-1 position was discriminatory, he had 45 days from June 4, 2004, at the latest, to contact an EEO counselor. He failed to do so and, therefore, this case should be dismissed.

**II.      Defendant's Legitimate Non-Discriminatory Reasons Are Consistent, Fair, and Logical**

Defendant, in good faith, implemented Judge Kessler's February 4, 2002, Order ("the Order") in the matter of <u>Felder v. Glickman</u> ("1999 Case") which ordered the following:

…Plaintiff's Motion for Equitable relief is granted in part and denied in part in that Plaintiffs are **awarded instatement to the first opening or vacancy which becomes available in IS, back pay to the dates on which the first and second vacancies in IS were filled after the creation of the roster on which each Plaintiff was placed** (without regard to whether selections were made from those rosters and without regard to whether selections were made from within or without IS), and that Plaintiffs are denied housing allowances, subsistence allowances, lost home leave, lost overtime, lost sick leave, and entry of a broad injunction affecting future hiring and selection practices to fill vacancies in IS ."

(emphasis added) <u>See</u> Exh. 1 to Defendant's Memorandum in Support of Renewed Motion to Dismiss ("Defendant's Memo.").

In determining the relief to be provided for the 1999 Case,  Defendant determined the most probable course of Plaintiff's career in IS from 1997 through his instatement.  Specifically, Defendant attempted to determine "what was the correct position for him," upon instatement into IS. Wyss Deposition  p. 15, l. 8-9 (Reply Exh. #1).

It was the understanding of IS management that "there was a court ordered decision that Mr. Felder would be accepted into the Foreign Service and we need to look for the most equitable role level (sic) for his entry" upon instatement.  Wyss Deposition at p. 35 (Reply Exh. #1).  Plaintiff's assertion that the Court's Orders "are silent on the issue of promotions for Messrs. Felder and Simmons," is self-serving and narrow-sighted.  Defendant had a legitimate, non-discriminatory reason for allowing Mr. Felder to be instated at the FP-2 grade level and for

4

not retroactively promoting Mr. Felder to an FP-1 grade level. Defendant analyzed the

promotion history of the agency and did not find a retroactive FP-1 grade level promotion from

1997 to instatement to be warranted.

    **a. The Agency Has Consistently Set Forth the Fair and Legitimate Method Used to Determine Plaintiff's FP Level Upon Instatement**

    Defendant's reasoning in determining Mr. Felder's FP level upon instatement has been

set forth in detail by Ms. Campbell, Frieda Skaggs and John Wyss.[1] From Ms. Campbell's

explanation to Plaintiff's attorney on May 9, 2003, through the recent depositions in this case, the

Defendant's reasons for its decision have remained consistent.

    It is undisputed that Agency policy dictated that Mr. Felder, without the Court Order,

would have entered the IS as an FP-3. Wyss Deposition, p. 50-51 (Reply Exh. #1); Skaggs

Affidavit, p. 2 (Defendant's Memo., Exh. 6) ("Since 1994, operating under this parameter,

APHIS operated under an internal policy of bringing individuals into the Foreign Service career

system at a level no higher than the FP-3 (GS-13) level). Specifically, Dr. Wyss testified:

> Q: But it did say that, from what you're saying, that if Mr. Felder had come in in
> 1997 what would have happened? What should have happened?
> A: He would have been selected, entered into the service in 1997 he would have
> come in as an FP3. If he had already been a GS-13 at that time, he would have
> come in at a current level and at maximum of FP3.

Wyss Deposition , p. 51 (Reply Exh. #1). Ms. Campbell notified Plaintiff's attorney of the

following in May of 2003 regarding his request for an FP-1 position:

> The Agency has agreed to place Mr. Felder into an FP2 position equivalent to his
> current salary. **The record is clear that most individuals working in IS in 1997**

---

[1] Ralph H. Iwamoto was deposed in this matter, but confirms that he was not involved in "making the decision in assigning Mr. Felder at any grade level in IS.....I left it to my administrative staff...Dr. Wyss, Frieda Skaggs, and Beverly Barber." Iwamoto Deposition, p. 16 (Reply Exh. #2).

> **at the FP3 level remain at the FP2 level today. Therefore, the Agency has offered Mr. Felder a FP2 position.** Mr. Felder will be eligible for promotion to the FP1 level and will be subject to IS promotion rules and regulations…..

Plaintiff's Opposition, Exh. D (emphasis added).

Based on the history of other employees, Defendant "assumed that [Plaintiff] could have been promoted to an FP2" between 1997 and the instatement. Wyss Deposition, p. 33 (Defendant's Memo., Exh. 13). Because of the Court Order, Defendant determined that it would give Plaintiff an FP2 effective 1997, rather than determine a separate promotion date to the FP2. Wyss Deposition, p. 33-34 (Defendant's Memo., Exh. 13). Simply, "he was kind of given the benefit of the doubt and [that] went retroactively from the day he entered" by Agency. Wyss Deposition, p. 34 (stating further, "he was given the benefit of the doubt because of the court ordered decision.") (Defendant's Memo., Exh. 13). In effect, that decision made the date Plaintiff entered foreign services also the date of his promotion from FP3 to FP2.

The Agency did not locate another employee in Plaintiff's series who entered IS in 1997. Wyss Deposition, p. 28 (Defendant's Memo., Exh. 7). Plaintiff during depositions consistently attempted to assert the baseless theory that Mr. Felder was placed in a FP2 position because the Agency "could not find a comparator or a comparative who was an FP1." This misconceived theory was flatly denied. Specifically, Dr. Wyss testified:

> Q: You made the decision not to place Mr. Felder in an FP1 position but in an FP2 position because you could not find a comparator or a comparative who was an FP1; is that correct
> [OBJECTION]
> A: **I said no to that question.** As I mentioned before, we tried to determine that appropriate position for Mr. Felder. We did not make a decision not to put him an FP1 position.
> Q: What tools did you use to make that decision?

[OBJECTION]
A:  What we tried to do was, you know, using foreign service policy, using
the court order, using information we could develop from other
employees, tried to come up with the best equitable level for Mr. Felder in
the foreign service."

Wyss Deposition, p. 31-32 (emphasis added) (Defendant's Memo., Exh. #13) .  Plaintiff's

counsel's repeated use of a term of art, namely "comparator" throughout discovery to fact

witnesses who are not attorneys, does not create a "comparator" as a matter of law.  Using

information on all IS FP2 to FP1 promotions over the relevant period of time, Defendant

determined that by the time of his instatement Plaintiff would not have received an FP1.

**b.  The Determination that Mr. Felder Should Be Instated Into the Foreign Service
At a FP-2 Was Independent of the Series or Location of the Available Vacancy**

Therefore, in order to determine the probable course of Plaintiff's career from 1997

through the date of his court ordered instatement, Defendant's Deputy Director of IS

Management Policy and Services, Frieda Skaggs and former IS Associate Administrator, Dr.

John Wyss compiled a chart, which provided information about the career progression of all IS

employees' Foreign Service Promotions from FP-2 to FP-1 by year.  Plaintiff's theory that he

was instated as an FP2 and not an FP1 because of the location of the available position or his

placement in a 401 series position is not based in fact.

The Agency reviewed worldwide IS promotions from 1997, 1998, 1999, 2000, 2001, and,

2002.  The charts contained information on FP2 to FP 1 promotions for IS in the 341, 401, 414,

436, 701, and 801 series.  See Skaggs Aff. At 5-8 (Defendant's Memo., Exh. #6; Plaintiff's Exh.

Q).  The low number of promotions, combined with the fact that all of those promoted to the FP-

1 level had more than five years Foreign Service experience, demonstrates that the agency

7

properly placed Mr. Felder at the time of instatement in the FP level where he would have been

had he been selected into the Foreign Service in 1997.  Plaintiff was a 436 series in PPQ and was

placed in a 401 series in IS.  IS employees are "reviewed within their perspective occupational

series by the Intermediate Foreign Service Board."  April 15, 2003 Memo from Ralph Iwamoto

(Plaintiff's Exh. O). ("When a promotion opportunity is not available for individuals who occupy

a certain series specific position, the lack of promotion opportunity relates to the grade level of

the position and not the series.")  Plaintiff's Exh O.

      Plaintiff characterizes each of the individuals who were promoted from 1997 through

2002 as "white," ignoring the fact that several individuals promoted between 1997 and 2003 are

Hispanic (1997 P. Fernandez, 1998 N. Gutierrez), Asian (2001 R. Tanaka), and African

American (2002 C. French, 2003 G. Greene). Wyss Affidavit, pp. 3-5 (Defendant's Memo.,

Exh.#8).  Plaintiff's statement that the "Agency promoted 10 white employees and 0 black

employees to the FP-1 position during the six-year time period as issue here," is false.  Plaintiff's

Opposition, p. 28.

      The charts set forth the year the IS employees obtained their FP1 and the date on which

they entered Foreign Service.  Plaintiff's Exh. Q.  For example, the three individuals who

obtained FP1 status in 1997 entered Foreign Service in 1983, 1989, and 1993.  Of the three

individuals promoted in 1999, one entered Foreign Service in 1986, and two in 1983.  Using the

data from FP 2 to FP 1 promotions over multiple years, Defendant determined that Plaintiff

would not have been promoted to an FP1 between 1997 and the Court Ordered date of

instatement.

      Plaintiff asserts that his prior experience in the Plant Protection and Quarantine (PPQ)

section should have been separately used to determine the date of his promotion to FP1 within the Foreign Service.  Most, if not all, APHIS Foreign Service employees have either previous Veterinary service or PPQ service.  Wyss Deposition, p. 47 (Reply Exh. #1).  This prior experience is reflected in the grade level of the employee when they enter Foreign Service with APHIS.  Id..  Plaintiff's argument incorrectly assumes, without factual basis, that others entering the IS would have had no similar relevant prior experience.  The prior service for Plaintiff and all other employees is reflected in their qualification to enter Foreign Service and their grade level upon entry.  Wyss Deposition, pp. 46-47 (Reply Exh. #1).  The Foreign Service Selection Board provides the recommendations for all promotions in the IS.  The Precepts for the APHIS Intermediate Foreign Service Selection Board dictate the performance criteria for promotion into the SFS-FP-1. Id.

From the compiled chart data, it was determined that if Plaintiff had entered Foreign Service in 1997, he would not have been promoted to an FP-1 by the time of his expected instatement in 2002.[2]  Wyss Deposition, p. 40 (Reply Exh. 1).  Plaintiff's attempts to characterize Ms. Campbell's request that the Agency "track Felder & Simmons as to where they were in 1997 and would possibly be today if in IS" as a "different" or "evolving" legitimate non-discriminatory reason than Dr. Wyss's November 2007 testimony that the Agency "tried to come up with the best equitable level for Mr. Felder in the Foreign Service" is spurious.  The Agency witnesses

---

[2]  The Agency's Supplemental Responses to Plaintiff's Discovery Requests stated: "The Agency had a legitimate non-discriminatory reason for not retroactively promoting Mr. Felder to an FP-1 grade level. The Agency did an analysis of employees and did not find an appropriate comparator to justify this type of promotion."  Plaintiff apparently believes this statement implies that because no one comparator of the same grade and entry level was located, Plaintiff was not promoted.  The analysis of all IS employees as set forth in the documentation, charts and testimony, did not justify a promotion.  The Agency reviewed all IS FP-2 to FP-1 promotions and did not limit the analysis to individuals in the 436 series or individuals entering in 1997.

have been consistent when explaining the process used and the decision made.

   III.   **An Agency Seeking the Advice of Counsel During the Implementation of a Court Order Does Not Create An Issue of Material Fact**

       Plaintiff attempts to create an issue of material fact by examining the advice given to Dr. John Wyss, Assistant Deputy Administrator for Administrative Services, and to Ms. Frieda Skaggs, Director, Personnel and Travel, International Services, by Ayoka Campbell of the Department's office of the General Counsel during the implementation of the Court Order. Plaintiff speculates that "Plaintiff and this Court will never know how decisions" were made because Plaintiff's counsel did not depose Attorney Campbell. Plaintiff provocatively states that the Agency "continues to block Plaintiff from exploring" the knowledge of Ms. Campbell. See Plaintiff's Opposition, pp. 30, 35-36.

       This statement is purportedly based on discovery objections and defense counsel's "reserving" the right to object to the deposition of Ms. Campbell. Id. The attorney-client privilege is strongest where a client seeks counsel's advice to determine the legality of conduct before taking action. 81 Am. Jur. 2d Witnesses § 357 (March 2008). The Agency made the attorney client privilege objection in good faith. Defendant placed Mr. Felder and Mr. Simmons in their respective positions following Judge Kessler's February 4, 2002 Order in an effort to comply with that Order and admittedly obtained legal guidance during the process.

       Significantly, Plaintiff does not acknowledge the failure to move to compel the deposition of Attorney Campbell. Nor did Plaintiff follow-up with Defendant seeking a deposition of Ms. Campbell with limited parameters. Discovery is now closed in this matter. Moreover, in discovery Defendant produced relevant electronic mail from Ms. Campbell. See, e.g.,

Defendant's Memo., Exh.# 1 (stating, in part, "[u]sing OPF files please track Felder & Simmons as to where they were in 1997 and would possibly be today if in IS."). Through depositions, documents, and affidavits, Defendant has fully explained the process used to determine the instatement level for Mr. Felder as required by the Court Order.

## VI.    CONCLUSION

WHEREFORE, defendant requests that this matter be dismissed, with prejudice.

Respectfully submitted,


____/s_/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


_/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney



___/s/_____
ALEXANDER D. SHOAIBI,
Assistant United States Attorney
501 Third Street, N.W., Rm E-4218
Washington, D.C.  20530
(202) 514-7236


11