UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>
BARBARA FELDER, as Personal
Representative of the Estate of Marvin
Felder, deceased,

   Plaintiff,

    v.

MIKE JOHANNS, Secretary, United States
Department of Agriculture

   Defendant.
</td><td>

Civil Action No. 06–910 (CKK)
</td></tr>
</table>

**MEMORANDUM OPINION**
(January 27, 2009)

Plaintiff, Barbara Felder ("Plaintiff") filed the Complaint in this action as Personal

Representative of the Estate of her late husband, Marvin Felder ("Felder"),[1] against Defendant

Mike Johanns, in his official capacity as Secretary of the United States Department of

Agriculture ("USDA" or "the Agency"). Plaintiff's Complaint alleges that the Animal and Plant

Health Inspection Service ("APHIS") and its operating unit, International Services ("IS,"

collectively "APHIS-IS"), discriminated against Felder on account of his race asserting disparate

treatment and in retaliation for his prior protected EEOC activity, by failing to promote him

while promoting a similarly situated IS employee. In 2002, Felder and a fellow USDA

employee, Alester van Simmons, prevailed in a jury trial in a race discrimination case against

USDA and were subsequently granted equitable relief, including reinstatement to vacancies in IS.

Felder now alleges that USDA carried out its obligation to reinstate Felder and Simmons, but

---

[1]For convenience, the Court shall refer to both Plaintiff and her late husband
interchangeably as "Felder" throughout this Memorandum Opinion.

subsequently engaged in a separate act of discrimination by "paper promoting" Simmons while failing to similarly "paper promote" Felder.

Currently pending before the Court is Defendant's Renewed Motion [28] to Dismiss or for Summary Judgment ("Motion").  As Felder has subsequently filed an opposition and USDA a reply, Defendant's Motion is now ripe.  After a searching review of the parties' briefing, the exhibits attached thereto, the relevant case law, and the entire record herein, the Court shall GRANT Defendant's Motion for the reasons that follow.

## I.  BACKGROUND

### A.    The 1999 Lawsuit

Marvin Felder, an African American male, was an employee of USDA in the APHIS unit from 1978 through his death in March 2005.  Defendant's Statement of Material Facts Not In Dispute ("Def.'s Stmt.") ¶ 1.[2]  In July of 1999, Felder and another USDA employee, Alester van Simmons, filed a civil action in the United States District Court for the District of Columbia, captioned *Felder v. Glickman*, Civ. A. No. 99-1860 (GK) ("1999 Lawsuit"), alleging violations

---

[2] As a preliminary matter, the Court notes that it strictly adheres to the text of Local Civil Rule 7(h)(1) (formerly 56.1 when resolving motions for summary judgment).  *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (district courts need to invoke Local Civil Rule 56.1 before applying it to the case).  The Court has repeatedly advised the parties that it strictly adheres to Rule 7(h) and has stated that it "assumes that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  *See* May 25, 2007 Memorandum Opinion, Docket No. [14] at 15 n.2.  Thus, in most instances the Court shall cite only to Plaintiff's Statement of Material Facts ("Pl.'s Stmt.") or Defendant's Statement of Material Facts ("Def.'s Stmt.") unless a statement is contradicted by the opposing party.  Where Plaintiff has objected to relevant aspects of Defendant's proffered material fact, the Court shall cite to Plaintiff's Response to Def.'s Stmt. ("Pl.'s Resp.").  The Court notes, however, that Defendant did not file a response to Plaintiff's Statement.  The Court shall also cite directly to evidence in the record, where appropriate.

of Title VII of the Civil Rights Act of 1964.  Def. Stmt. ¶ 2.  Felder and Simmons, both African

Americans, alleged, *inter alia*, that they had been discriminated against on the basis of race

(black) when they were not selected from a 1997 roster of qualified applicants to fill management

vacancies in the IS unit of APHIS.  *Id.*  At that time, both Felder and Simmons were employees

of the USDA in the Plant Protection and Quarantine ("PPQ") unit of APHIS.  *See* Def.'s Stmt. ¶¶

16-18; *see also* Pl.'s Opp'n, Ex. S (Decl. Alester van Simmons) ("Simmons Decl.").  However,

Felder and Simmons were at different grade levels.  *See* Def.'s Stmt. ¶¶ 17, 18.

The 1999 Lawsuit was tried before a jury, with Judge Gladys Kessler presiding.  *Id.* ¶ 3.

The jury returned a verdict in favor of Felder and Simmons.  *Id.*  By order dated February 4, 2002

("February 4, 2002 Order"), Judge Kessler awarded Felder and Simmons equitable relief,

including "instatement to the first opening or vacancy which becomes available in IS,"

retroactive to February 1997, as well as "back pay to the dates on which the first and second

vacancies in IS were filled after creation of the roster on which each Plaintiff was placed (without

regard to whether selections were made from those rosters and without regard to whether

selections were made from within or without IS)."  *Id.* ¶ 4; *see also* Def.'s Mot, Ex. 1 (the

February 4, 2002 Order and Memorandum Opinion) ("February 4, 2002 Order").

    B.    *Implementation of the Order*

At the outset, the Court notes that this is not a typical failure to promote case.  Rather,

Felder's claims stem from USDA's efforts to implement a judicial order requiring equitable relief

in the form of instatement to a position in the APHIS-IS unit.  It is therefore important to make

clear what Judge Kessler's February 4, 2002 Order did—and did not—require.  As both Felder

and USDA concede, the February 4, 2002 Order did not explicitly require that USDA provide

either Felder or Simmons with a promotion upon instatement into IS.  Def.'s Stmt. ¶ 5; Pl.'s

Resp. ¶ 5.  Rather, the February 4, 2002 Order provided only that Felder and Simmons must be

instated "to the first opening or vacancy that becomes available in IS."  *See* February 4, 2002

Order.  Nonetheless, the Agency asserts that it understood the February 4, 2002 Order to require

it to determine, as an equitable matter, what positions and FP-grade levels Felder and Simmons

*would have likely* occupied in 2003 had they been selected in 1997 (but for the discrimination as

found by the jury in the 1999 Lawsuit).  *See* Def.'s Stmt. ¶ 16.  Although Felder disputes this

assertion, he has not offered any evidence—other than his own unsupported, conclusory

allegations—to contradict Defendant's assertion.[3]

> 1.     Initial Offers to Felder and Simmons for Instatement in IS

In the fall of 2002, Agency counsel and counsel for Felder and Simmons began

participating in discussions regarding Felder's and Simmons' new positions in IS, as mandated

by Judge Kessler's February 4, 2002 Order.  Def.'s Stmt. ¶ 6.  By letter dated September 26,

2002, USDA first notified both Felder and Simmons of their initial "selections"—*i.e.*, what

specific positions the Agency was offering Felder and Simmons in IS, in accordance with the

February 4, 2002 Order requiring instatement.  *See* Def.'s Mot., Ex. 3 (October 9, 2002 Letter

from Kim D. Mann, counsel for Felder and Simmons, to Assistant United States Attorney Marina

Utgoff Braswell, trial attorney for USDA in the 1999 Lawsuit) ("October 9, 2002 Letter") (noting

that "John Wyss has notified Marvin Felder and Van Simmons of their 'selections' to fill

positions in IS by letters dated September 26,  2002").  Significantly, although Felder and

Simmons had both been in the PPQ unit of APHIS at the time they applied for (and were denied)

---

[3]*See infra* discussion 41-43.

the IS vacancies in 1997, they were at different GS-grade levels at that time.  Def.'s Stmt. ¶ 16.

They were therefore placed on the selection rosters for the IS vacancies in 1997 at different grade

levels.  *Id.*  In particular, Simmons was on the FS-436-4 (GS-12) roster, while Felder was on the

FS-436-3 (GS-13) roster.  *Id.* ¶¶ 17, 18.  Accordingly, although Simmons and Felder were both

awarded positions in IS as part of the February 4, 2002 Order, they were selected for (and

ultimately converted into) IS positions at different FP levels.  Specifically, Simmons was notified

that he had been selected to fill the position of Plant Protection and Quarantines Officer, Officer

in Charge, in Hamilton, Bermuda, which was a GS-12 equivalent, and Felder was notified that he

had been selected to fill the position of APHIS Area Director in Seoul, Korea.  *Id.* ¶¶ 17, 18.

As is relevant to the instant lawsuit, in its letter to Felder notifying him of his initial

selection, USDA advised Felder that, although the position he was offered was classified as a

GS-14 equivalent, he would be "converted at APHIS' maximum lateral entry into the Foreign

Service, which is the FP-3 (GS-13 equivalent)."[4]  Pl.'s Opp'n, Ex. B (September 26, 2002 Letter

from Dr. John H. Wyss, Assistant Deputy Administrator with IS, to Felder) ("September 26,

2002 Letter").  IS assured Felder, however, that his salary would be matched.  *Id.*  USDA

explains that, since 1994, APHIS-IS has operated under an internal policy, referred to as the

"lateral entry policy," of bringing individuals into IS at a level no higher than the FP-3 (GS-13

---

[4]The PPQ unit and the IS unit are both within APHIS but operate under different pay
systems.  In particular, PPQ utilizes the GS pay system while IS utilizes the FP pay system.  The
two systems are similar in that both contain several classes (grades), in which salary ranges by
steps.  However, in the FP system, higher classes are indicated by lower numbers, while in the
GS system, the reverse is true.  Accordingly, Simmons' GS-12 level at PPQ was generally
equivalent to an FP-4 in the IS, and Felder's GS-13 level at PPQ was generally equivalent to an
FP-3.  *See* Def.'s Mot., Ex. 2 (Felder Affidavit) ("Felder Aff.") at 1-2 (explaining differences
between GS and FP salary systems).

equivalent) level.  Def.'s Stmt. ¶ 18; *see also* Def.'s Mot., Ex. 8 (Wyss Affidavit) ("Wyss Aff.").

Prospective employees above the GS-13 grade level are required to sign a statement agreeing to

take a downgrade for entry into IS.[5]  Def.'s Mot., Ex. 13 (Excerpt of Dr. John H. Wyss

Deposition) ("Wyss Depo. I") at 33-34; *see also* Wyss Aff. at 3-4.  USDA's internal policy

would have therefore required Felder to come into IS at the FP-3 grade level (GS-13 equivalent),

assuming Felder had entered IS in 1997, the retroactive date of his instatement.  *See* Wyss Depo.

I at 33-34; Wyss Aff. at 3-4.  However, because Felder's salary exceeded the highest salaried step

in the FP-3 category, he would have had to accept a downgrade in order to enter into IS in 1997.

Pl.'s Opp'n, Ex. K (Felder Rebuttal Affidavit) ("Felder Rebuttal Aff.") ¶ 4.  That is, strictly

requiring Felder to convert into IS at a FP-3 grade level, as mandated by the lateral entry policy,

would have therefore resulted in a decrease in his salary.  *See id.*  As stated in the September 26,

2002 Letter, USDA offered Felder a FP-3 position, consistent with its internal lateral entry

policy, but provided that his current salary would be matched nonetheless.  *See* September 26,

2002 Letter.

      2.    <u>Simmons' and Felder's Initial Acceptances of USDA's Offers</u>

On October 9, 2002, Felder sent USDA a letter accepting the position as APHIS-IS Area

Director in Seoul, South Korea, "pending all issues being resolved pursuant to the court order

dated February 4, 2002."  Pl.'s Opp'n, Ex. C (October 9, 2002 Letter from Felder to Dr. Wyss)

---

[5]Felder contends that the actual policy required all management-level positions to be filled internally by current Foreign Service officers.  *See* Pl.'s Resp. ¶ 18.  Although USDA confirmed at deposition that the management-level vacancies in IS were filled by current Foreign Service officers during the relevant time, rather than by individuals outside the Foreign Service system, Pl.'s Opp'n, Ex. L (Depo. Excerpt of Frieda Skaggs) ("Skaggs Depo.") at 12, Felder has not offered any evidence to contradict USDA's assertion that the official policy required only that individuals entering into IS do so at a grade level no higher than the FP-3 level.

("Felder's October 9, 2002 Letter").  By letter dated that same day, Plaintiff's counsel, Kim D.

Mann, informed Braswell, trial counsel for USDA during the 1999 Lawsuit, that "Felder has no

issues regarding the specific position and location for which he has been selected and assigned."

Def.'s Stmt. ¶ 7; *see also* Def.'s Mot., Ex. 3 (October 9, 2002 Letter from Mann to Braswell)

("Mann's October 9, 2002 Letter").  As to Simmons, Mann stated that he, unlike Felder, did not

"believe the position to which he has been assigned conforms with the" February 4, 2002 Order.

Mann's October 9, 2002 Letter.  Additionally, in relevant part, Mann informed Braswell that both

Felder and Simmons believed they were "entitled to in-grade step increases as a matter of law in

accordance with the federal regulations governing positions in IS" and would therefore "like an

explanation as to the dates on which those in-grade step increases will be deemed to have

become effective and how those increases affect their promotion potential and retirement."

Def.'s Stmt. ¶ 7; *see also* Mann's October 9, 2002 Letter.

3.      USDA's Second, More Generous Offers

Thereafter, on December 19, 2002, Dr. John H. Wyss, former Assistant Deputy

Administrator of APHIS-IS, wrote a letter to Felder informing him that USDA was now offering

him the position of APHIS Area Director in Seoul, South Korea, at the FP-2 (GS-14) grade

equivalent, rather than the previous offer at the FP-3 grade level.  Def.'s Mot., Ex. 9 (Dec. 19,

2002 Letter from Wyss to Felder) ("December 19, 2002 Letter").  Wyss requested Felder

acknowledge acceptance of the assignment so that USDA could being processing the transfer.

Def.'s Stmt. ¶ 11; *see also* December 19, 2002 Letter.  Wyss subsequently sent a second letter,

dated January 15, 2003, to Felder again stating that Felder had been selected to fill the position of

APHIS-IS Area Director in Seoul, Korea, and specifying that Felder would be placed at the FP

7

Class 2, Step 9 level.  Def.'s Stmt. ¶ 12; Def.'s Mot., Ex. 10 (January 15, 2003 Letter from Wyss to Felder) ("January 15, 2003 Letter").  The January 15, 2003 Letter repeated Wyss' previous request that Felder acknowledge acceptance of the assignment so that USDA could begin processing the transfer.  Def.'s Stmt. ¶ 12; January 15, 2003 Letter.

On February 27, 2003, Wyss sent a similar letter to Simmons, informing Simmons that he had been selected to fill the position of PPQ Officer-in-Charge, in Kingston, Jamaica, at the FP-3 grade level (GS-13 equivalent).  Def.'s Stmt. ¶ 15; Def.'s Mot., Ex. 12 (February 27, 2003 Letter from Wyss to Simmons).  Noticeably, this second offer, like Felder's second offer, contained an improved grade level, offering Simmons instatement at the FP-3 grade level rather than the FP-4 grade level originally offered.

   4.  <u>Ongoing Communications Between Felder and USDA Regarding Felder and Simmons' Positions</u>

Neither Felder nor Simmons immediately accepted these positions, but rather continued to communicate with USDA regarding various concerns as to their respective assignments.  As is specific to Felder, by letter dated January 31, 2003, he raised for the first time, through his counsel, certain issues with IS concerning his FP-grade level.  *See* Def.'s Stmt. ¶ 14; *see also* Def.'s Mot., Ex. 11 (January 31, 2003 Letter from Mann to Braswell) ("January 31, 2003 Letter").  In particular, the January 31, 2003 Letter stated that "Felder observes that other IS specialists holding FP-3 positions in 1997 have, by the end of 2002, received two promotions, not just one" and that "Felder requests similar treatment."[6]  January 31, 2003 Letter.  Thereafter,

---

   [6]The Court notes that the identity of the employee referenced by Mann in the January 31, 2003 Letter is not known, as the individual's last name was redacted from the exhibit attached to Defendant's Motion, *see* January 31, 2003 Letter, and Felder has not clarified to whom this reference was made.

on April 22, 2003, Felder himself sent an email to Ms. Ayoka Campbell, an attorney in USDA's

Office of the General Counsel, providing a further list of demands. Def.'s Stmt. ¶ 22; Def.'s

Mot., Ex. 18 (April 22, 2003 Email from Felder to Campbell) ("April 22, 2003 Email"). In

particular, Felder requested "FP-1 upon entry." Def.'s Stmt. ¶ 22; April 22, 2003 Email.

In response, Campbell sent Mann a letter, dated May 9, 2003, in which Campbell

acknowledged Felder's demand that he receive an FP-1 grade level upon entry, but stated that

Felder would be instated at the FP-2 grade level, and would not be given a promotion to the FP-1

grade level. Def.'s Stmt. ¶ 14; Def.'s Mot., Ex.14 (May 9, 2003 Letter from Campbell to Mann)

("May 9, 2003 Letter"). Specifically, Campbell stated:

> The Agency has agreed to place Felder into a FP-2 position equivalent to his current
> salary. The record is clear that most individuals working in IS in 1997 at the FP-3
> level remain at the FP-2 level today. Therefore, the Agency has offered Felder a FP-
> 2 position. Felder will be eligible for promotions to the FP-1 level and will be
> subject to IS promotion rules and regulations. USDA is unable to give Felder
> preferential treatment with regard to the FP-1 level after one year of service.

May 9, 2003 Letter. The letter also requested that Felder and Simmons unequivocally accept or

deny, in writing, the offered positions at APHIS-IS by May 30, 2003, or USDA would assume

the positions had been denied. Def.'s Stmt. ¶ 23; May 9, 2003 Letter.

By letter dated May 19, 2003, Mann responded on behalf of Felder and Simmons, stating

that "I have been authorized by my clients to express their acceptance of the offers of

employment in International Services." Def.'s Stmt. ¶ 24; Def.'s Mot., Ex. 19 (May 19, 2003

Letter from Mann to Campbell) ( "May 19, 2003 Letter"). In a subsequent email from Mann to

Braswell, dated June 4, 2003, Mann reconfirmed that "Mssrs. Felder and Simmons did accept

positions in IS unequivocally. They are not particularly satisfied with their FP- and grade levels .

. . but decided to accept the offers. Felder will continue to seek a meeting with the head of IS to

9

discuss his future in IS."  Def.'s Stmt. ¶ 25; Def.'s Mot., Ex. 20 (June 4, 2003 Email from Mann to Braswell) ("June 4, 2003 Email").

Thereafter, Felder continued his efforts to meet with IS officials about his desire to be promoted to the FP-1 grade level upon instatement.  Pl.'s Stmt. ¶¶ 36-38; *see also* Pl.'s Opp'n, Ex. E (September 25, 2003 Email from Felder to Ralph Iwamoto) (seeking a meeting with Iwamoto to discuss, *inter alia*, the "[d]ifference in handling the particulars of my case in comparison with the handling of Simmons' case (promotion).").  In particular, while attending orientation for his new IS position in Washington D.C. in October of 2003, Felder met with several IS management officials and discussed his concerns regarding his instatement into IS at the FP-2 grade level.  *See* Pl.'s Stmt. ¶¶ 37-38; *see also* Pl.'s Opp'n, Ex. J (November 18, 2003 Email from Nick Guiterrez to Felder).  Such discussions, however, were ultimately unsuccessful. As reconfirmed by Wyss in a letter to Felder dated December 5, 2003:

> [P]ursuant to Judge Gladys Kessler's February 4, 2002 Order, you are assigned to the Animal and Plant Health Inspection Service (APHIS), International Services, Foreign Service.  Your position is that of APHIS Area Director, Seoul, South Korea.  The position is classified as an Agriculturist, FP-401-2 (GS-14 equivalent).
>
> On December 23, 2008, at the beginning of Pay Period 26, you will be converted retroactively into the APHIS Foreign Service at the FP-2 level (GS-14 equivalent), effective February 14, 1997.
>
> * * *
>
> At the time of your conversion to the Foreign Service, you will be an FP-2, step 9. . . .
>
> Your reporting date is January 6, 2004.

*See* Pl.'s Opp'n, Ex. G (December 5, 2003 Letter from Wyss to Marvin Felder) ("December 5, 2003 Letter").

C.     *Procedural Background*

    1.    EEO Complaint

On November 4, 2003, Felder contacted USDA's EEO counselor, and, on December 19, 2003, he filed formal charges with USDA alleging race-based discrimination in connection with IS' failure to promote him to the FP-1 grade level while promoting Simmons to the FP-3 grade level. First Amended Complaint, Docket No. [18], ("Am. Compl.") ¶ 15. Felder also alleged that USDA's decision to promote Simmons but not to promote Felder constituted reprisal for Felder's role in the 1999 Lawsuit. *Id.* In particular, Felder noted that Judge Kessler, in ruling on post-trial motions in the 1999 Lawsuit, characterized Felder as "the person who first initiated the EEO activity and in general played a leadership role." Pl.'s Opp'n, Ex. A (February 4, 2002 Memorandum Opinion and Order, Civ. No. 99-1860, Kessler, J) at 9 n.3.[7]

    2.    USDA's Proffered Nondiscriminatory, Legitimate Reasons

In response to the EEO investigation that followed, USDA provided a more in-depth description of its basis for instating Felder into IS at the FP-2, rather than the FP-1, grade level. Specifically, USDA stated that, in order to comply with the February 4, 2002 Order, the Agency sought to place Felder and Simmons in the FP-grade levels they would have likely occupied in 2003 had they been selected in 1997. Def.'s Stmt. ¶ 16. Accordingly, Agency counsel directed the Director of the Personnel and Travel section of IS, Ms. Frieda Skaggs, to "please track Felder & Simmons as to where they were in 1997 and would possibly be today if in IS." Def.'s Stmt. ¶

---

[7]Felder's EEO Complaint also alleged that the Agency discriminated against him based upon race and retaliation by failing to provide him with certain in-step increases. *See* Pl.'s Opp'n, Ex. H (Complaint of Employment Discrimination by Marvin Felder). Felder's Amended Complaint, however, raises only USDA's failure to promote Felder to the FP-1   level upon instatement and does not raise the failure to provide in-step increases. *See generally* Am. Compl.

11

7; Pl.'s Resp. ¶ 7; *see also* Def.'s Mot., Ex. 4 (October 31, 2002 email from Campbell to Skaggs) ("October 31, 2002 Email").

At this point, it is useful to briefly explain the normal procedure for promotions in IS. Generally, all IS officers' performance evaluations are automatically reviewed on an annual basis by an intermediate selection board to determine promotions and all other types of incentives. *See* Def.'s Mot., Ex. 6 (Skaggs Affidavit) ("Skaggs Aff.") at 4-5; *see also* Wyss Aff. at 3. The board considers the evaluations of all candidates of the same class level and series,[8] and then ranks them. Wyss Aff. at 3. There is a forced ranking of the employees, such that one employee is ranked number "1" and the next employee is ranked number "2." *Id.* If there are one or more promotional opportunities, the top ranked employees would be the ones recommended for the positions. *Id.* IS has no discretion in who is recommended—*i.e.*, the number "1" employee must be recommended for the first promotion. *Id.* The board makes the recommendations to the IS Deputy Administrator, who in turns makes the recommendations to the APHIS Administrator, who makes the final decision whether to accept the recommendation. *Id.* The employees are thus competing against each other for promotion. Def.'s Stmt. ¶ 19. As neither Felder nor Simmons was in IS prior to 2003, neither, quite obviously, went through the general promotion process described above. Therefore, USDA states that it decided to determine Felder's and

---

[8] Plaintiff argues that IS considers certain occupational series (GS-436, GS-401, and GS-414) to be interchangeable series for promotion purposes. Pl.'s Resp. ¶ 19. That is, an employee in one of those three series could complete on equal footing for a promotion in any of the other series. *Id.* Although USDA acknowledges that "some" of the IS positions can be occupied by individuals in different occupational series, *see* Skaggs Depo. at 60-61, it is not entirely clear from the record if all positions are equally interchangeable and if so, when this policy took effect. Nonetheless, the Court shall, for purposes of this Memorandum Opinion, assume Felder is correct.

Simmons' class levels, salary and conditions by extrapolating what would have happened if they had entered IS in 1997.  Wyss Aff. at 1.  USDA did so in two specific ways, described below.

Before turning to the particular methods USDA used in determining which FP-grade level to place Felder and Simmons at upon instatement, the Court notes that USDA concedes that it did not follow the Agency's established policy regarding promotions and lateral entries in this instance, given the atypical nature of Felder's and Simmons' instatement.  *See, e.g.,* Wyss. Aff. at 3 ("I believe the policy was followed as close as possible, but being a court ordered settlement case there may have been some deviation in favor of the Complaint [*sic*]."); Pl.'s Opp'n, Ex. P (Excerpt of Wyss Deposition) ("Wyss Depo. II") at 50-51 (acknowledging that USDA did not follow its lateral entry policy when it permitted Felder to enter into IS at the FP-2, rather than FP-3, grade level).  The final decision to place Felder at the FP-2 grade level was made by the Office of General Counsel for USDA, with input provided by Wyss and Skaggs.  *See* Wyss Aff. at 5.

a.      Comparators

First, Agency counsel, Campbell, asked Skaggs to determine if any individual had been converted to IS during the designated time period, which was defined as June 9, 1997 to December 9, 1998, and to consider any step increases or promotions that Felder or Simmons might have received had they, like those individuals, been converted into the system in 1997.  Skaggs Aff. at 3; October 31, 2003 Email.  As Skaggs explained, the 1997 to 1998 time frame was chosen because it encompassed the same roster that Felder and Simmons would have been on at the time they applied for the IS vacancy positions.[9]  *See* Def.'s Mot., Ex. 5 (Excerpt from

---

[9]The Court notes that Felder alleges that Wyss and Skaggs have given conflicting testimony as to the relevant time frame at issue.  *See* Pl.'s Opp'n at 32-33.  For the reasons discussed below, *infra* 46-38, the Court finds that any inconsistency, if it exists, is not material.

13

Skaggs Deposition) ("Skaggs Depo.") at 41-42.  USDA concedes that nothing in the IS policy

manuals suggests using a comparator for purposes of determining the likelihood of promotions.

*See id.* at 32-33.

Skaggs determined that only one individual, Ken Nagata, had entered APHIS-IS in 1997.

Skaggs Aff. at 3; Skaggs Depo. at 43-44.  Nagata had entered IS at the FP-5 grade level and had

received a promotion to the FP-4 grade level in November of 2001.  Skaggs Aff. at 3.  Although

Nagata entered APHIS-IS at one grade level lower (FP-5) than Simmons (FP-4), USDA

determined that Nagata was sufficiently similar to Simmons and therefore determined that

Simmons would likely follow, or "parallel," the same career ladder.  Def.'s Stmt. ¶ 9; Skaggs

Aff. at 3-4.  Consequently, because Nagata had received a promotion in the time period at issue

(1997-2002), USDA concluded that Simmons should be brought in at a higher level as well.

Def.'s Stmt. ¶ 9.  For that reason, USDA offered to place Simmons into APHIS-IS at an FP-3

grade level—*i.e.,* to give him a retroactive paper promotion from the FP-4 grade level at which

he otherwise would have entered APHIS-IS.  *Id.* ¶¶ 9, 17.

As USDA acknowledges, it determined that only one individual—Nagata—entered into

IS during the relevant time period (June 9, 1997 to December 9, 1998).  Skaggs Aff. at 3; Skaggs

Depo. at 43-44.  As stated above, Nagata entered into IS at the FP-5 grade level, while Felder

would have entered into IS at the FP-3 grade level.  Accordingly, with respect to Felder, USDA

determined that Nagata was not a sufficient comparator and, as no other individual entered into

IS during the relevant time period, USDA concluded that no comparator could be located that

would show a promotion from the FP-2 grade level to the FP-1 grade level.  Def.'s Stmt. ¶ 10.

Felder contests USDA's determination that no similarly situated comparator received a

14

promotion from FP-2 to FP-1 during the 1997 to 2002 time period.  Pl.'s Resp. ¶ 10.  According

to Felder, USDA, in fact, promoted ten similarly situated IS employees, comparable to Felder,

from the FP-2 grade level to the FP-1 grade level during the 1997 to 2002 time period.  Pl.'s

Resp.  ¶ 10.  As Felder points out, each of the ten IS employees were in the same or

interchangeable occupational series as Felder (GS-436, GS-401, GS-414).  *Id*.  In addition, none

of the ten IS employees referenced by Felder is African American.  *See* Pl.'s Opp'n, Ex. Q

(charts detailing 1997 to 2002 promotions from FP-2 to FP-1) ("1997-2002 Promotion Data");

*see also* Skaggs Aff. at 5-8 (indicating that seven of the IS employees referenced by Felder were

white with no EEO activity; two were Hispanic with no EEO activity; and one was white with

EEO activity).

Nonetheless, it is equally undisputed that all of these ten IS employees had more than five

years of service in IS (*i.e.*, the amount of service that Felder would have had at the time of

instatement, assuming service from 1997 to 2002), but Felder did not have five years service in

IS.  Def.'s Stmt. ¶ 19; Pl.'s Resp. ¶ 19 ("Plaintiff admits that those IS employees promoted from

FP-2 to FP-1 between 1997 and 2002 had greater than five years of service in IS.").  Indeed, as

review of the record evidence demonstrates, the majority of those individuals Felder points to

who were promoted from the FP-2 grade level to the FP-1 grade level had *substantially* more

than five years of service in the Foreign Service.  *See* 1997-2002 Promotion Data (demonstrating

that the majority of the ten individuals had entered into the Foreign Service in the 1980's, three

as early as 1983).[10]  Significantly, the Court notes that Felder offers no other evidence concerning

---

[10] By contrast, the Court notes that it appears, from its own review of the record evidence, that a minority—two of the ten individuals—may have had only slightly more than five years experience in the Foreign Service.  *See* 1997-2002 Promotion Data.  The Court emphasizes,

these ten IS employees.  That is, Felder has not provided any information as to the positions, location of job, supervisors, and/or job duties of each of the ten individuals Felder asserts are similarly situated to him.

b.      Review of 1997-2002 FP-2 to FP-1 Promotions

In addition, USDA determined that very few employees are promoted from the FP-2 to FP-1 grade level each year.  *See* Def.'s Stmt. ¶ 20; *see also* May 9, 2003 Letter.  In reaching this determination, USDA reviewed the annual promotions from FP-2 to FP-1 grade level within IS for the years 1997 - 2002, which USDA counsel had requested Ms. Skaggs to compile.[11]  *See* Wyss Depo. II at 32.  Skaggs admits that, in compiling the data requested by USDA counsel, she did not consult or rely upon the Foreign Service policy manual that is typically used in determining promotions.  Skaggs Depo. at 32-33.

As the record shows, Skaggs determined the following information as to promotions from the FP-2 grade level to the FP-1 grade level from 1992 to 2002:

- In 1997, there were <u>three</u> promotions from the FP-2 to the FP-1 level out of a total of 23 employees;

- In 1998, there was <u>one</u> promotion from the FP-2 to the FP-1 level out of a total of 17 employees;

---

however, that both parties have unequivocally agreed that *all* ten IS employees who were promoted from the FP-2 grade level to the FP-1 grade level between 1997 and 2002 had greater than five years of service in IS, unlike Felder.  Def.'s Stmt. ¶ 19; Pl.'s Resp. ¶ 19.

[11]Although Felder alleges that it is unclear at what point in time IS looked at the annual promotion figures for 1997 through 2002 and how, if at all, those figures were used in determining to instate Felder at the FP-2 grade level, Wyss in fact clearly explained that IS looked at those figures and related tables, as prepared by Skaggs, in determining the best equitable level for Felder to enter into IS.  *See* Wyss Depo. II at 32.  Felder offers no evidence to dispute Wyss' statement.

- In 1999, there were <u>three</u> promotions from the FP-2 to the FP-1 level out of a total of 19 employees;

- In 2000, there were <u>zero</u> promotions from the FP-2 to the FP-1 level out of a total of 18 employees;

- In 2001, there were <u>four</u> promotions from the FP-2 level to the FP-1 level out of a total of 23 employees;

- In 2002, there were <u>three</u> promotions from the FP-2 level to the FP-1 level out of a total of 18 employees; and

*See* Def.'s Stmt. ¶ 20; *see also* Skaggs Aff. at 5-8; 1997-2002 Promotion Data.  Significantly, USDA asserts—and Felder *concedes*—that all employees promoted from the FP-2 to the FP-1 grade level during the 1997 to 2002 time period had more than five years of experience in IS. Def.'s Stmt. ¶ 19 ("Those individuals who did receive promotions from the FP-2 to the FP-1 level between 1997 and 2003 had greater than the five years of foreign service experience that Mr. Felder would be credited with (presuming service by Felder from 1997 to 2003)."); Pl.'s Resp. ¶ 18 ("Plaintiff admits that those IS employees promoted from FP-2 to FP-1 between 1997 and 2002 had greater than five years of service in IS.").  Again, the majority of those individuals who were ultimately promoted to the FP-1 grade level had *substantially* more than five years of experience in the Foreign Service.  *See* 1997-2002 Promotion Data.  Indeed, the Court notes that even the majority of those individuals who did not receive a promotion to the FP-1 grade level during the relevant time period also had substantially more than five years of experience in the Foreign Service.  *See id.* (demonstrating, for example, that several had entered into the Foreign Service as early as 1983).  USDA therefore concluded that a person first entering onto duty in IS in 1997 at the FP-2 grade level would not have likely obtained a promotion to the FP-1 grade level by 2002.  *See* Def.'s Stmt. ¶ 19.

Felder admits that the numbers cited above by USDA are accurate, but disputes USDA's conclusion that "very few employees" are promoted from the FP-2 to the FP-1 grade level each year.  *See* Pl.'s Resp. ¶ 20.  Rather, Felder contends that, upon review of IS records, it is apparent that employees at the FP-2 grade level who were not promoted to the FP-1 grade level in a particular year are eligible for promotion again the next year, such that "the total pool of FP-2 employees during the six-year period in question is roughly the same 15 to 20 unpromoted employees."  *Id.*  Felder further asserts that, "[b]y 2003, IS has promoted a majority of them to an FP-1 level."  *Id.*  As an initial matter, the Court notes that Felder's contention, even if accurate, does not disprove or contradict USDA's conclusion that "[v]ery few employees are promoted from the FP-2 to the FP-1 level *each year*."  *See* Def.'s Stmt. ¶ 20 (emphasis added).  Rather, as the undisputed figures above demonstrate, USDA's statement is accurate.  Therefore, in actuality, Felder is not contesting the accuracy of USDA's conclusion but rather the method used by USDA (*i.e.*, looking at annual rates of promotion).  Moreover, Felder's own conclusions are not accurate.  For example, as reference to the relevant tables and figures (which are attached as Exhibit Q to Plaintiff's Opposition) shows, over the time period at issue, there were 36 *different* employees at the FP-2 grade level who were eligible for promotion to the FP-1 grade level during the 1997 to 2002 time period.  *See* 1997-2002 Promotion Data.  Of these 36 different employees, only 14, or a little more than one-third, received a promotion to the FP-1 grade level.  *See id.*  In other words, about two-thirds did *not* receive a promotion from the FP-2 grade level to the FP-1 grade level during this time.[12]  *See id.*  Finally, the Court reiterates the undisputed fact that *all*

---

[12]The Court notes that, as to the 22 IS employees who did not receive a promotion to the FP-1 grade level from 1997-2002, neither USDA nor Felder has introduced any evidence as to their race or prior EEO activity.

18

employees ultimately promoted from the FP-2 to the FP-1 grade level during the 1997 to 2002 time period had more than five years of experience in IS, unlike Felder.  Def.'s Stmt. ¶ 19; Pl.'s Resp. ¶ 18.

Finally, in further explaining why Felder was not promoted from the FP-2 grade level to the FP-1 grade level, but Simmons was promoted from the FP-4 grade level to the FP-3 grade level, USDA explained that "it is normally much easier to come in as an FP-4 and get promoted to an FP-3 than it would be to come in at an FP-3 and get promoted to an FP-2 and then to an FP-1." Wyss Aff. at 3.  Although Felder disputes this assertion, *see* Pl.'s Opp'n at 26, Felder has not presented any evidence to contradict the accuracy of this statement.

3.      The Instant Lawsuit

Felder filed the above-captioned matter on May 15, 2006, alleging that USDA discriminated against him on account of his race and in retaliation for his prior protected EEOC activity (*i.e.,* the 1999 Lawsuit), by failing to promote him while promoting a similarly situated IS employee.  *See* Complaint, Docket No. [1].[13]  Specifically, Felder asserts a claim for disparate treatment on the basis of race, alleging that he was treated less favorably than Simmons and ten other IS employees, as well as a claim for retaliation based upon Felder's participation in the 1999 Lawsuit.  *See generally id.*; *see also* Pl.'s Opp'n.  USDA thereafter filed a motion to dismiss or in the alternative for summary judgment, which Felder opposed.  Felder also filed a cross-motion for a continuance to obtain discovery pursuant to Rule 56(f).  On May 5, 2007, the Court issued an order: (1) denying USDA's motion insofar as it argued that Felder's Complaint

---

[13]Felder subsequently filed a First Amended Complaint on June 26, 2007.  *See* Docket No. [18].

must be brought as an action before Judge Kessler relating to her February 4, 2002 Order; (2)

denying without prejudice USDA's motion insofar as it argued that Felder's Complaint should be

dismissed for failure to exhaust his administrative remedies; (3) denying without prejudice

USDA's motion insofar as it argued that summary judgment in its favor was appropriate; and (4)

granting Felder's request, pursuant to Rule 56(f), for a continuance to obtain discovery.  5/25/07

Order, Docket No. [13].  Accordingly, the parties thereafter engaged in discovery, at the close of

which USDA filed a Renewed Motion to Dismiss or for Summary Judgment, which is now

pending before the Court.  Docket No. [28].

## II.  LEGAL STANDARDS

### A.    *Federal Rule of Civil Procedure 12(b)(6)*

In evaluating a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for

failure to state a claim, the court must construe the complaint in a light most favorable to the

plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded

factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F.

Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir.

1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be

granted the benefit of all inferences that can be derived from the facts alleged.").  While the court

must construe the complaint in a plaintiff's favor, it "need not accept inferences drawn by the

plaintiff[] if such inferences are unsupported by the facts set out in the complaint."  *Kowal v.

MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Moreover, the court is not bound to

accept the legal conclusions of the nonmoving party.  *See Taylor v. FDIC*, 132 F.3d 753, 762

(D.C. Cir. 1997).

The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993). Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control). If, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." FED. R. CIV. P. 12(b).

B.      *Summary Judgment Pursuant to Federal Rule of Civil Procedure 56*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, USDA, as the moving party, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Felder, in response to USDA's Motion, must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

21

showing that there is a genuine issue for trial.'"  *Id.* at 324.

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment."  *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing FED. R. CIV. P. 56(e)) (emphasis in original).

Importantly, "[w]hile summary judgment must be approached with specific caution in discrimination cases, a plaintiff is not relieved of his obligation to support his allegations by

affidavits or other competent evidence showing that there is a genuine issue for trial." *Morgan v. Fed. Home Loan Mortgage Corp.*, 172 F. Supp. 2d 98, 104 (D.D.C. 2001) (quoting *Calhoun v. Johnson*, No. 95-2397, 1998 WL 164780, at *3 (D.D.C. Mar. 31, 1998) (internal citation omitted), *aff'd*, No. 99-5126, 1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 2000)); *see also Marshall v. James*, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (special caution "does not eliminate the use of summary judgment in discrimination cases") (citing cases). "Summary judgment is not a 'disfavored procedural shortcut,' but is an integral procedural tool which promotes the speedy and inexpensive resolution of every case." *Marshall*, 276 F. Supp. 2d at 47 (quoting *Celotex Corp.*, 477 U.S. at 327). Accordingly, the Court reviews USDA's Motion under a "heightened standard" that reflects "special caution." *Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879 (D.C. Cir. 1997) (internal quotations omitted), *overturned on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (en banc). Nonetheless, while this special standard is more exacting, it is not inherently preclusive. Although more circumspect, the Court shall continue to grant a motion for summary judgment in which the nonmoving party has failed to submit evidence that creates a genuine factual dispute and the moving party is entitled to a judgment as a matter of law.

### III. DISCUSSION

USDA has moved to dismiss Felder's Complaint, or in the alternative, has moved for summary judgment, arguing that Felder failed to exhaust his administrative remedies and/or because USDA had a legitimate, non-discriminatory and non-retaliatory reason for promoting Simmons to the FP-4 grade level while not promoting Felder to the FP-1 grade level, and for promoting ten other IS individuals to the FP-1 grade level, but not Felder, during the 1997 to 2002 time period. *See generally* Def.'s Mot.; Def.'s Reply. Felder opposes USDA's motion,

23

arguing that he properly exhausted his administrative remedies and that USDA's asserted reasons are a pretext for the Agency's discriminatory and retaliatory motives.  Finally, Felder argues that, to the extent USDA's motion seeks dismissal pursuant to Rule 12(b)(6), it must be treated as a request for summary judgment because it relies upon appended materials outside the pleadings and that are not the proper subject of judicial notice.  *See generally* Pl.'s Opp'n.

Before reaching the merits of USDA's Motion, the Court must therefore decide whether the Motion should be treated as a motion to dismiss pursuant to Rule 12(b)(6) or a motion for summary judgment pursuant to Rule 56.  The Court notes that USDA's Motion relies heavily on numerous affidavits, depositions, and other documents.  In addressing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court is limited to considering facts alleged in the complaint, any documents attached to or incorporated by reference in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See St. Francis Xavier Parochial Sch.*, 117 F.3d at 624; *Marshall County Health Care Auth.*, 988 F.2d at 1226 n.6.  If on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment."  FED. R. CIV. P. 12(b).  Here, the documents proffered by USDA in support of its Motion are not referred to or incorporated by reference in Felder's Complaint and are, with the exception of the documents pertaining to the 1999 Lawsuit, beyond the scope of judicial notice.  As such, because USDA relies on those documents in arguing that Felder failed to exhaust his administrative remedies and that the Agency had a legitimate, non-discriminatory and non-retaliatory reason for promoting Simmons but declining to promote Felder, USDA's Motion must be addressed pursuant to Rule 56.

A.      *Failure to Exhaust Administrative Remedies*

USDA first argues that it is entitled to summary judgment on Felder's discrimination and

retaliation claims because Felder failed to make timely EEO contact as required by EEOC

regulations.  Def.'s Mot. at 1.  The EEOC has "established detailed procedures for the

administrative resolution of discrimination complaints, including a series of time limits for

seeking informal adjustment of complaints, filing of formal charges, and appealing agency

decisions to the Commission."  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  As

is relevant here, aggrieved federal employees must initiate contact with an EEO counselor within

45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action,

within 45 days of the effective date of the action.  29 C.F.R. § 1614.105(a)(1).  "'Because timely

exhaustion of administrative remedies is a prerequisite to a Title VII action against the federal

government,' a court may not consider a discrimination claim that has not been exhausted in this

manner absent a basis for equitable tolling."  *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir.

2008) (quoting *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003)); *see also Hill v.

Kempthorne*, 577 F. Supp. 2d 58, 64 (D.D.C. 2008) ("A federal employee alleging retaliation in

violation of Title VII must timely exhaust hir or her administrative remedies.").

USDA argues that Felder was aware, as of June 4, 2003 at the latest, that he would be

assigned to a position at the FP-2 level, and was therefore required to contact an EEO counselor

within 45 days of that date, which he failed to do.  Def. Mot. at 12-18; Def.'s Reply at 1-3.  As

discussed above, Felder received his assignment to the IS position of Area Director in Seoul,

Korea, in January 2003 and was notified at that time that the position would be provided at the

FP-2 grade level.  Def.'s Mot. at 13; *see also* January 15, 2003 Letter.  Additionally, by email

dated June 4, 2003, counsel for Felder confirmed with USDA that Felder had "unequivocally" accepted assignment to that position, which he knew was to be provided at the FP-2 grade level. Def.'s Reply at 2-3; *see also* June 4, 2003 Email.  USDA therefore argues that Felder was fully aware, as of June 4, 2003 at the latest, that he would be entering into IS at the FP-2, rather than FP-1, grade level and was therefore required to contact an EEO counselor within 45 days of that date.  *See* Def.'s Mot. at 12-18; *see also* Def.'s Reply at 2-3.  Felder disputes USDA's argument, asserting that the Agency improperly focuses on the date Felder first became aware of which FP-grade level USDA intended to assign him upon transfer to IS rather than on the effective date of the challenged personnel action at issue, *i.e.,* the date Felder was in fact converted into the IS system at the FP-2 grade level, which occurred on December 23, 2008, *see* December 5, 2003 Letter.  Pl.'s Opp'n at 16.

As an initial matter, the Court must decide what alleged discriminatory act or personnel action Felder now challenges.  *James v. England*, 332 F. Supp. 2d 239, 246 (D.D.C. 2004).  The Court recognizes that this is not a typical failure-to-promote case.  Rather, here, Felder challenges USDA's refusal to instate him at the FP-1 grade level—that is, to "paper promote" him to the FP-1 grade level, effective upon his instatement.  That decision and the decision to instate Felder at the FP-2 grade level are thus two sides of the same coin.  Accordingly, the Court concludes that the Felder's Complaint challenges USDA's instatement decision, which was made effective on December 23, 2003, the date on which Felder converted into the IS system.  *See* December 23, 2003 Letter ("On December 23, 2003, at the beginning of Pay Period 26, you will be converted retroactively into the APHIS Foreign Service at the FP-2 level (GS-14 equivalent) . . . .").

The Court agrees with Felder that the pertinent date for determining the timeliness of Felder's EEO contact is December 23, 2008, the effective date of the personnel action challenged, and *not* the date on which Felder became aware of what that personnel action would be.[14]  The EEOC regulations explicitly provide that "in the case of a personnel action," an aggrieved individual must contact an EEO counselor "within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).  Accordingly, several of our fellow district court judges in the District of Columbia have "reasoned that '[a]s the plain language of the regulations indicates, the 45-day filing period begins to run from the effective date of the [personnel] action not from notice of that action.'"  *James,* 332 F. Supp. 2d at 246 (emphasis in original) (quoting *Scarborough v. Natsio*, 190 F. Supp. 2d 5, 15-16 (D.D.C. 2002)); *see also Silver v. Leavitt*, Civ. Act. No. 05-0968, 2006 WL 626928, *7 (D.D.C. Mar. 13, 2006) ("The EEOC regulations state that the relevant date is the date on which the personnel action . . . became effective, not the date on which plaintiff *learned* of the personnel action.") (emphasis in original).  "The fact that [Felder] had notice of the [personnel action] in [June] has no bearing on this timeliness analysis because it is not until the effective date of the personnel action that the 45-day window opened."  *James*, 332 F. Supp. 2d at 246.  Although these decision are not binding, their reasoning is persuasive.  Accordingly, the Court concludes that Felder properly exhausted his administrative remedies, as required by EEOC regulations.

---

[14]The parties have spilled much ink debating when USDA made the final decision to instate Felder at the FP-2 grade level and when Felder became aware that the decision was definite.  *See* Def.'s Mot. at 12-18; Def.'s Reply at 1-3; Pl.'s Opp'n at 16-23.  However, as the Court explains above, the date upon which Felder learned of the decision to instate him at the FP-2 grade level is not relevant to the determination of timeliness and the Court therefore need not resolve the parties' dispute on this matter.

B.      *Discrimination and Retaliation Claims*

In addition to arguing that Felder failed to timely exhaust his administrative remedies,

USDA argues that summary judgment is appropriate because USDA had a legitimate, non-

discriminatory and non-retaliatory reason for giving Simmons a promotion from the FP-4 grade

level to the FP-3 grade level and for promoting ten other IS employees from the FP-2 to the FP-1

grade level while declining to promote Felder from the FP-2 grade level to the FP-1 grade level.

Title VII of the Civil Rights Act prohibits the federal government from discriminating in

employment on the grounds of race, 42 U.S.C. § 2000e-16, and from retaliating against

employees for engaging in activity protected by Title VII, *id.* § 2000e-3(a).  To prove a violation

of Title VII, a plaintiff must demonstrate by a preponderance of the evidence that the actions

taken by an employer were "more likely than not based on the consideration of impermissible

factors."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (internal quotation

marks and citation omitted).  Furthermore, a plaintiff may prove his claim with direct evidence,[15]

and absent direct evidence, he may prove his claim using indirect evidence pursuant to the

burden-shifting analysis created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Carpenter v. Fed'l Nat'l Mort. Assoc.*, 165 F.3d 69, 72 (D.C. Cir. 1999).

Where, as here, the record contains no direct evidence of discrimination or retaliation, it

is necessary to employ the familiar *McDonnell Douglas* tripartite burden-shifting framework.

*Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000) (citing *McDonnell Douglas Corp.*, 411

---

[15] Direct evidence "is evidence that, if believed by the fact finder, proves the particular fact in question *without any need for inference.*"  *Brown v. Small*, 437 F. Supp. 2d 125, 130 n. 7 (D.D.C. 2006) (emphasis in original) (citing *Randle v. LaSalle Telecomms., Inc.*, 876 F.2d 563, 569 (7th Cir. 1989)).

28

U.S. at 802). "Like claims of discrimination, claims of retaliation are also governed by the

*McDonnell Douglas* burden-shifting scheme." *Carney v. Am. Univ.*, 151 F.3d 1090, 1094 (D.C.

Cir. 1998) (citing *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984)). Under this

paradigm, a plaintiff has the initial burden of proving by a preponderance of the evidence a prima

facie case. *McDonnell Douglas*, 411 U.S. at 802. If he succeeds, the burden shifts to the

defendant to articulate some legitimate, non-discriminatory or non-retaliatory reason justifying its

conduct. *Id.* If the defendant is successful, then "the *McDonnell Douglas* framework—with its

presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel*

*non.*" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (internal

citations and quotation marks omitted).

        For a claim alleging disparate-treatment discrimination, a plaintiff makes out a prima

facie case by showing (1) that he is a member of a protected group; (2) that he suffered an

adverse employment action; and (3) the unfavorable action gives rise to an inference of

discrimination. *Wiley v. Glassman*, 531 F.3d 151, 155 (D.C. Cir. 2007); *Mastro v. Potomac*

*Elec. Power.* Co., 447 F.3d 843, 850 (D.C. Cir. 2006). For a claim of retaliation, the prima facie

elements are (1) that he engaged in a statutorily protected activity; (2) that he suffered a

materially adverse action; and (3) a causal connection exists between the two. *Wiley,* 511 F.3d at

155.

        The D.C. Circuit has clarified that the *McDonnell Douglas* prima facie factors are

"almost always irrelevant" and are "largely [an] unnecessary sideshow" *Brady v. Office of the*

*Sergeant at Arms*, 520 F.3d 490, 492-93 (D.C. Cir. 2008). Where an employer asserts a

legitimate, non-discriminatory (or non-retaliatory) reason for its challenged conduct, thereby

doing "everything that would be required of [it] if the plaintiff had properly made out a prima

facie case, whether the plaintiff really did so is no longer relevant." *Id.*, 520 F.3d at 494 (quoting

*U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)); *see also Adeyemi v.*

*D.C.*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (holding that the prima facie inquiry "is irrelevant

when an employer has asserted a legitimate, non-discriminatory reason for an adverse

employment action").  "And by the time the district court considers an employer's motion for

summary judgment or judgment as a matter of law, the employer ordinarily will have asserted a

legitimate, non-discriminatory reason for the challenged decision—for example, through a

declaration, deposition, or other testimony from the employer's decisionmaker." *Brady*, 520

F.3d at 493.  In such circumstances, a district court's inquiry collapses into a single question:

"[h]as the employee produced sufficient evidence for a reasonable jury to find that the

employer's asserted non-discriminatory [or non-retaliatory] reason was not the actual reason and

that the employer intentionally discriminated against the employee on the basis of race, color,

religion, sex, or national origin?" *Id.* at 494.

Based on this guidance, the D.C. Circuit has stated in no uncertain terms that a lower

court should not evaluate whether a plaintiff has established a prima facie case where a defendant

sets forth a legitimate, non-discriminatory and non-retaliatory reason for its conduct: "the district

court need not —*and should not*—decide whether the plaintiff actually made out a prima facie

case under *McDonnell Douglas*." *Id.* at 495 (emphasis in original); *see also Adeyemi*, 525 F.3d

at 1226 n.1 ("the prima facie case is ultimately *irrelevant* here") (emphasis added); *Wiley,* 511

F.3d at 156 (D.C. Cir. 2007) ("[g]iven this record [which includes articulated, non-discriminatory

reasons] we 'need not address the Government's contentions that [appellant] failed to make out a

prima facie case'") (quoting *George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005)).

Nevertheless, the Supreme Court also advised lower courts in *Reeves v. Sanderson Plumbing Products, Inc.* that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated [or retaliated]." 530 U.S. 133, 148 (2000).  That is, the Supreme Court suggested that the evidence used to establish a prima face case could be used to aid a jury's determination on "the issue of whether the USDA's explanation is pretextual." *Id.* at 143 (quoting *Burdine*, 450 U.S. at 255 n.10).  *See also Brady*, 520 F.3d at 495 (explaining *Reeves* requires lower courts to "determin[e] whether summary judgment or judgment as a matter of law is warranted . . . [by] consider[ing] all relevant evidence presented by the plaintiff and defendant").  Accordingly, because USDA in this case has asserted a legitimate, non-discriminatory and non-retaliatory reason for its challenged conduct, all of the evidence in the record shall be considered, including that which would be used to establish Felder's prima facie case (but not for the purpose of evaluating whether a prima facie case has been established), to address the ultimate question of discrimination or retaliation *vel non*.

As explained above, Felder claims that USDA's decision to instate him at the FP-2 grade level, rather than the FP-1 grade level was based on discriminatory and retaliatory motivations. *See generally* Am. Compl.  In response, USDA explains that , in order to comply with Judge Kessler's February 4, 2002 Order, USDA attempted to determine, in good faith, what positions Simmons and Felder would have likely occupied in 2003, but for the discrimination (as found in the 1999 Lawsuit).  Def.'s Stmt. ¶ 16.  Accordingly, USDA asserts that it placed Felder in the FP-2 grade level based on its determination that he would not have likely obtained a promotion

31

to the FP-1 grade level by 2003.  Def.'s Reply at 4-5.  Because USDA has proffered a legitimate,

nondiscriminatory and nonretaliatory reason for its decision, whether Felder has established a

prima facie case of discrimination or retaliation is "irrelevant."[16]  *Adeyemi*, 525 F.3d at 1226.

Accordingly, the court's inquiry collapses into the single question of whether Felder has

produced sufficient evidence for a reasonable jury to find that USDA's asserted non-

discriminatory, non-retaliatory reason was not the actual reason for Felder's instatement at the

FP-2 grade level, and that the real reason was based on discrimination and/or retaliation.  *See*

*Brady*, 520 F.3d at 493.

"A plaintiff such as [Felder] may try in multiple ways to show that the employer's stated

reason for the employment action was not the actual reason (in other words, was a pretext)."  *Id.*

at 495.  In particular, a plaintiff may do so by "produc[ing] evidence suggesting that the employer

treated other employees of a different race . . . more favorably in the same factual

circumstances," or by "attempt[ing] to demonstrate that the employer is making up or lying about

the underlying facts that formed the predicate for the employment decisions."  *Id.*  Here, Felder

argues that record evidence exists sufficient for a reasonable jury to find that USDA's asserted

non-discriminatory and non-retaliatory reason was a pretext because: (1) IS treated similarly

situated employees more favorably than Felder; and (2) other record evidence exists

demonstrating that IS' asserted reason is fabricated.  *See* Pl.'s Opp'n at 23-24.  The Court finds

that neither of these arguments relies on evidence that is sufficient to raise an inference of

discrimination or retaliation.

---

[16]In addition, the Court notes that USDA has not challenged Felder's prima facie case of
race discrimination or retaliation.  *See generally* Def.'s Mot; Def.'s Reply.

1.     Similarly Situated IS Employees

First, Felder attempts to demonstrate that USDA's proffered legitimate, non-discriminatory and non-retaliatory reason was a pretext by introducing evidence that USDA treated similarly situated employees more favorably treatment than Felder.  One of the "most commonly employed method[s] of demonstrating that an employer's explanation is pretextual is to show that a similarly situated person of a different race [] received more favorable treatment." *Brady*, 520 F.3d at 495 (quoting 1 Lex K. Larson, Employment Discrimination § 8.04, at 8-66 (2d ed. 2007).  A plaintiff who attempts to demonstrate that the employer's reasons are pretextual based upon evidence suggesting favorable treatment of a similarly situated employee outside the plaintiff's protected class must proffer sufficient evidence to show that the comparators are in fact similarly situated to the plaintiff.  Generally this requires that the plaintiff show "that all of the relevant aspects of [the plaintiff's] employment situation were 'nearly identical' to those of the [other employee]." *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995).

Felder sets forth two arguments in support of his claim that USDA treated other similarly situated IS employees more favorably: (1) that USDA treated Simmons more favorably than Felder, by "paper promoting" Simmons but not Felder; and (2) that USDA treated ten other IS employees more favorably than Felder, by promoting those individuals from the FP-2 to the FP-1 grade level but refusing to similarly promote Felder.  The Court shall examine each argument in turn.

a.     Simmons

Felder argues that USDA properly implemented the February 4, 2002 Order, but then

impermissibly discriminated and retaliated against Felder by promoting Simmons, his co-plaintiff

in the 1999 Lawsuit, but refusing to similarly promote Felder.  Pl's Opp'n at 23-24.  As an initial

matter, the Court notes that Felder's factual predicate to this argument—*i.e.*, that USDA "paper

promoted" Simmons but did not similarly "paper promote" Felder—is not, in fact, accurate.

Rather, the evidence in the record makes clear that USDA gave *both* Simmons and Felder "paper

promotions"—Simmons from the FP-4 to the FP-3 grade level, and Felder from the FP-3 to the

FP-2 grade level.  As discussed above, IS initially offered Felder the Area Director position at the

FP-3 grade level, as required by IS' lateral entry policy.  *See* September 26, 2002 Letter; *see*

*supra* 5-6.  Upon reconsideration, USDA subsequently offered Felder the Area Director position

at the FP-2 grade level.  Def.'s Stmt. ¶¶ 11-12; December 19, 2002 Letter; January 15, 2003

Letter; *see supra* 7-8.  The record is therefore clear that Felder was given a "paper promotion"

from the FP-3 grade level to the FP-2 grade level, effective upon his instatement into IS.  *See*

December 5, 2003 Letter (explaining that Felder would be instated at the FP-2 level).

 Felder attempts to dispute this fact by arguing that his instatement at the FP-2 grade level

was "mandatory."  Pl.'s Opp'n at 12.  According to Felder, USDA "had no choice" but to instate

him at the FP-2 grade level because Felder's salary at PPQ had no equivalent salary bracket at the

FP-3 level.  Pl.'s Opp'n at 12 n.6.  Felder therefore argues that USDA "had to start him at an FP-

2 level."  *Id.*  Interestingly, this position is inconsistent with Felder's previous admission that the

"Agency [] [gave] me a 'paper' promotion.  It promoted me from an FP-3, the level or 'grade' I

would have entered IS in February 1997, to the FP-2 position that I was in fact given when I

entered into IS."  Felder's Rebuttal Aff. ¶¶ 3-4.  Felder fails to acknowledge this change in his

position or explain his reasons for now asserting that the promotion to the FP-2 grade level was

not, in fact, a promotion.  More importantly, Felder presents no evidence—other than his own

conclusory assertions—to support his current position that USDA was required to instate him at

the FP-2 grade level.  In fact, the evidence in the record is to the contrary.  As noted above, under

USDA's lateral entry policy, USDA requires individuals to come into IS at a level no higher than

the FP-3, and those prospective employees above the GS-13 grade level (*i.e.,* FP-3 equivalent)

are required to downgrade for entry into IS.  Wyss Aff. at 3-4; *see supra* 5-6.  Judge Kessler's

February 4, 2002 Order did not, on its face, require USDA to ensure that Felder's salary did not

decrease upon instatement to IS, *see* February 4, 2002 Order, and Felder provides no evidence of

any IS policy or procedure that would have (in contradiction to the lateral entry policy) required

IS to ensure Felder's salary would remain at or above its previous level.[17]  Accordingly, the

evidence demonstrates that Felder—like Simmons—received a "paper promotion" upon

instatement to IS.  Given that USDA promoted both Felder and Simmons one FP grade level

upon instatement, the Court is hard pressed to find that USDA treated Simmons more favorably

in the same factual circumstances.  *Brady*, 520 F.3d at 495.

However, even assuming that Simmons, but not Felder, was promoted by USDA, Felder

has failed to proffer evidence "that all of the relevant aspects of [Felder's] employment situation

were 'nearly identical' to those of [Simmons]."  *Neuren*, 43 F.3d at 1514.  To the contrary, it is

undisputed that Simmons and Felder were, at all times relevant to this lawsuit, at different GS-

grade levels (and therefore at different FP-grade levels).  Def.'s Stmt. ¶ 16.  That is, Simmons

---

[17]Even assuming Felder was correct that USDA was prohibited from downgrading
Felder's salary as a result of the instatement, Felder offers no reason why USDA could not bring
Felder in at the FP-3 grade level, but guarantee a salary match, as it did in its initial offer to
Felder.  *See* September 26, 2002 Letter.

was promoted from the FP-4 to the FP-3 grade level upon instatement, while Felder was promoted from the FP-3 to the FP-2 grade level but denied a promotion from the FP-2 to the FP-1 grade level. This difference is material. As USDA explained in justifying the decision to promote Simmons from an FP-4 to an FP-3, but not Felder from an FP-2 to an FP-1, "it is normally much easier to come in as an FP-4 and get promoted to an FP-3 than it would be to come in at an FP-3 and get promoted to an FP-2 and then to an FP-1." Wyss Aff. at 3. Although Felder disputes this assertion, *see* Pl.'s Opp'n at 26, he has not offered any evidence to the contrary. Accordingly, the Court finds that Simmons was not at the same grade level as Felder and therefore was not similarly situated to Felder.[18]

Finally, before proceeding to Felder's next argument, the Court notes that, even assuming Simmons was similarly situated to Felder and had been treated more favorably than Felder, such evidence would be insufficient to infer USDA impermissibly discriminated and/or retaliated against Felder. First, it is undisputed that Simmons is—like Felder—an African American. Although a plaintiff is not required to show, as part of his prima facie case, that he was discriminated against in favor of an individual outside his protected class, *see, e.g., George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005), the fact that Simmons is of the same protected class as Felder strongly cuts against any inference of discrimination based upon race, *see Murray v. Gilmore*, 406 F.3d 708, 715 (D.C. Cir. 2005). *Cf Teneyck v. Omni Shoreham Hotel*, 365 F.3d

---

[18]Felder appears to believe that the difference in Felder and Simmons' grade level is irrelevant to the determination of whether Simmons was similarly situated to Felder because the two "were not competing for the same job or vacancy or for the same promotion in connection with their instatement." Pl.'s Opp'n at 25. Far from demonstrating that Felder and Simmons are comparable, this argument in fact further illustrates the material differences between Felder's and Simmons' situations.

1139 (D.C. Cir. 2004) ("The employer's hiring of a person of the same race or sex as the plaintiff

might be relevant in assessing the merits of a plaintiff's claim beyond the state of the prima facie

case, but it is not a factor in the plaintiff's establishment of a prima facie case).[19]  Felder has not

provided any evidence in these circumstances from which a reasonable jury could infer that

USDA promoted Simmons, but not Felder, based on race discrimination.

Second, it is equally undisputed that Simmons—like Felder—engaged in protected

activity (*i.e.,* filing the 1999 Lawsuit).  Nonetheless, Felder alleges that because he had a

leadership role in the 1999 Lawsuit, a fact acknowledged by Judge Kessler, USDA had a reason

to retaliate against him and not Simmons.  *See* Pl.'s Opp'n, Ex. A (February 4, 2002

Memorandum Opinion and Order, Civ. No. 99-1860, Kessler, J) at 9 n.3 (noting that Felder was

"the person who first initiated the EEO activity and in general played a leadership role").  Felder,

however, fails to provide any objective evidence supporting his theory.  "An aggrieved employee

might speculate that [his employer] met in secret to conspire or otherwise nefariously plot against

---

[19] For this reason, Felder's reliance on *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005), *Stella v. Mineta*, 284 F.3d 135, 145-46 (D.C. Cir. 2002), and *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850-51 (D.C. Cir. 2006), is inapposite.  Pl.'s Opp'n at 24 n.9. These decisions hold only that "a plaintiff claiming discriminatory firing need not prove, to make out a prima facie case, that she was replaced by someone outside the relevant class."  *See, e.g., Stella*, 284 F.3d at 145 (internal quotations omitted); *see also George*, 407 F.3d at 323 ("In *Stella*, we made it clear that 'a plaintiff in a discrimination case need not demonstrate that she was replaced by a person outside her protected class in order to carry her burden of establishing a prima facie case under McDonnell Douglas. . . '"); *Mastro*, 447 F.3d at 850 ("[W]e have expressly rejected as immaterial a requirement that the plaintiff be replaced by an individual outside her protected class" in assessing a plaintiff's prima facie case.).  The question here is not whether Felder has established a prima facie case, but whether he has produced sufficient evidence from which a reasonable jury could infer that USDA's non-discriminatory reasons are pretextual.  One way a plaintiff may attempt to cast doubt on an employer's reasons is by "produc[ing] evidence suggesting that the employer treated other employees of a different race, color, religion, sex or natural origin more favorably in the same factual circumstances."  *Brady*, 520 F.3d at 495. Felder, however, has failed to do so.

him; '[h]owever, a plaintiff may not rest on mere speculation alone[,] but must produce some *objective* evidence' in support of his theories." *Hamilton v. Paulson*, 542 F. Supp. 2d 37, 60 (D.D.C. 2008) (citing *Guerrero v. Univ. of District of Columbia*, 251 F. Supp. 2d 13, 25 (D.D.C. 2003) (emphasis in original).

b.      The Ten Other IS Comparators

Alternatively, Felder argues that the record evidence shows that USDA promoted ten other similarly situated IS employees, all non-African-American IS employees in job series comparable to Felder's, from the FP-2 grade level to the FP-1 grade level between 1997 and 2002, but declined to similarly promote Felder.  Pl.'s Opp'n at 27-28.  Specifically, Felder points to record evidence that eight white IS employees and two white (hispanic) IS employees, assigned to the GS-436, GS-401, and GS-414 series, were promoted from FP-2 to FP-1 during the relevant time period.  *Id.*  However, as with Simmons, Felder has not shown that these ten IS employees are "similarly situated" to Felder—*i.e.*, "that all of the relevant aspects of [the Felder's] employment situation were 'nearly identical' to those of the [other employee]." *Neuren,* 43 F.3d at 1514.  Significantly, as Felder concedes, all of the ten IS employees who were promoted from the FP-2 to the FP-1 grade level during the 1997 to 2002 time period had more than five years of experience at IS.  Def.'s Stmt. ¶ 19 ("Those individuals who did receive promotions from the FP-2 to the FP-1 level between 1997 and 2003 had greater than the five years of foreign service experience that Mr. Felder would be credited with (presuming service by Felder from 1997 to 2003).");  Pl.'s Resp. ¶ 18 ("Felder admits that those IS employees promoted from FP-2 to FP-1 between 1997 and 2002 had greater than five years of service in IS.").  Indeed, as discussed above, a majority of those individuals who were ultimately promoted to the FP-1

grade level had *substantially* more than five years of experience in the Foreign Service, some

going back as far as 1983.[20]  *See supra* at 16; *see also* 1997-2002 Promotion Data.  USDA

therefore concluded that a person first entering onto duty in IS in 1997 at the FP-2 grade level

would not have likely obtained a promotion to the FP-1 grade level by 2002.  *See* Def.'s Stmt. ¶

19.  Assuming Felder had been instated into IS in 1997, he, however, would have had only five

years of experience at the time of his actual instatement in 2003.  *See* Def.'s Stmt. ¶ 19.  Based

upon the information USDA compiled, the Agency concluded that a person such as Felder who

first entered onto duty in IS in 1997—that is, a person with less than five years of experience in

IS—at the FP-2 grade level would not have likely obtained an FP-1 grade level by 2003.[21]  *See*

Def.'s Stmt. ¶ 19.

    Moreover, even setting aside the question of experience in IS, Felder has not proffered

any evidence as to the respective positions, location of job, supervisors, and/or job duties of each

of these allegedly comparable employees.  *See Montgomery v. Chao*, 546 F.3d 703, 707 (D.C.

Cir. 2008) (Plaintiff's "evidence did not establish that any of those employees were similarly

---

    [20]The Court notes that Felder entirely ignores that 22 IS employees (16 of whom were in the GS-436, GS-401, and GS-414 series), did *not* receive a promotion from the FP-2 to the FP-1 level during the relevant time period, many of whom also had substantially more than five years of experience in the Foreign Service.  *See* 1997-2002 Promotion Data.

    [21]As Felder points out, in compiling this information, USDA did not include or consider data as to the length of time between these employees' initial promotions to the FP-2 grade level and their subsequent promotions to the FP-1 grade level (*i.e.*, how long each employee ultimately promoted to the FP-1 grade level waited before receiving such promotion) although Wyss acknowledged that such information could be relevant.  Pl.'s Resp. ¶ 32; Wyss Depo. II at 43-44. However, as the Court concludes these individuals are not similarly situated to Felder, it is irrelevant whether some of these individuals waited longer or shorter periods of time for the promotion to the FP-1 grade level.  Moreover, a plaintiff "'must do more than just deny or criticize the proffered reasons of the defendant[s].'"  *Waterhouse*, 124 F. Supp. 2d at 8.  He must also show that the real reason was based on discriminatory and/or retaliatory motives.

situated to him.  None of them worked in the same position he had, and none worked in the same branch of the agency.").  Indeed, Felder presents absolutely no evidence about these individuals other than their names, their race, the date they entered in IS and the year they were promoted to the FP-1 grade level.  *See* Pl.'s Opp'n at 27-28.

Nonetheless, Felder maintains that a reasonable jury may find that these ten IS employees were similarly situated to Felder because "[t]he only known arguably relevant different between Mr. Felder and these 10 would-be comparators, aside from their race and color, is their length of service in IS," which Felder contends is irrelevant.  *See id.* at 27.  The Court rejects this argument for two reasons.  First, Felder has not shown that the length of an individual's service in IS is, in fact, irrelevant.  The Court emphasizes that Felder has not directed the Court to any evidence, other than his own unsupported opinion, that experience outside of IS is comparable to experience within IS.  Rather, Felder presents only his own belief that his "26 years of experience in PPQ, 22 years [of which were] as a manager," should have been treated as comparable experience by USDA because the "management positions [that he held in PPQ since 1982] were very much the same in terms of responsibility as those held by GS-436 APHIS/IS employees at the FP-3 through FP-1 levels."  *Id.* at 28.  Felder therefore argues that "there is no reason why this experience and length of service in APHIS/PPQ should not 'count' in Mr. Felder's case towards achieving comparator status."  *Id.*  Again, however, Felder presents no evidence to support his own self-serving opinions.

By contrast, USDA presents evidence that experience outside of IS is not comparable to experience in IS in assessing an individual's promotion potential.  As Wyss explained at his deposition, Felder's experience in PPQ "would [not] have made any difference" because "almost

40

everybody, and probably everybody that entered the foreign service had kind of either Veterinary service or PPQ previously." Wyss Depo. II at 46-47.  Felder offers no evidence to contradict or dispute USDA's assertion, other than his own self-serving, unsupported opinions and the unsupported opinions of his co-plaintiff in the 1999 Lawsuit.  *See* Pl.'s Opp'n at 27-28.  A "[p]laintiff cannot establish pretext simply based on [his] own subjective assessment of his own performance, for 'plaintiff's perception of h[is]self, of h[is] work is not relevant.  It is the perception of the decisionmaker which is relevant." *Waterhouse,* 124 F. Supp. 2d at 7 (internal citation and quotation marks omitted), *aff'd*, 298 F.3d 989 (D.C. Cir. 2002); *see also Hastie v. Henderson*, 121 F. Supp.2d 72, 81 (D.D.C. 2000) (finding no genuine issue of material fact where plaintiff provided no evidence "other than her own self-serving and conclusory statement[s]"); *Saunders v. DiMario*, No. Civ. A. 97-1002, 1998 WL 525798, *4 (D.D.C. Aug. 14, 1998) ("Plaintiff has otherwise offered the type of self-serving allegations that are simply insufficient to establish pretext.").

Felder responds by making the unsupported accusation that USDA's reliance on the length of service in IS as a material factor distinguishing Felder from these ten IS employees is discriminatory because it is "a carry-over from the Agency's era of discrimination against African Americans when it filled management positions only from within.  (As a result, it promoted 10 white employees and 0 black employees to the FP-1 position during the six-year timeframe at issue here.)."  Pl.'s Opp'n at 27-28.  Felder, however, has offered absolutely no evidence to support this bald assertion nor is there any evidence on the record now before the Court to support such a claim.  Indeed, to the contrary, the Court notes that Judge Kessler, in denying Felder's request in the 1999 Lawsuit that USDA be permanently enjoined from

41

discriminating against African Americans when engaging in future hiring and selection practices to fill vacancies in IS, explicitly found that: "There is no basis for entering such a broad injunction as to all African-Americans, and no evidence that these two Plaintiffs need broad injunctive relief to vindicate their individuals rights."  Pl.'s Opp'n, Ex. A (February 4, 2002 Memorandum Opinion and Order, Civ. No. 99-1860, Kessler, J) at 11.

Second, Felder appears to be under the mistaken impression that an *absence* of evidence demonstrating that these ten IS employees are *different* from Felder is sufficient to show that they are, in fact, similarly situated.  The D.C. Circuit has made abundantly clear, however, that, "[o]nce the employer offers [a legitimate non-discriminatory and non-retaliatory] justification, the burden of production shifts back to the plaintiff, . . . who retains the burden of persuasion throughout."  *Royall v. Nat'l Ass'n of Letter Carriers,* 548 F.3d 137,144 (D.C. Cir. 2008); *see also Aka,* 156 F.3d at 1289 ("in producing nondiscriminatory reasons for its challenged action, the employer is not obligated to support these reasons with objective evidence sufficient to satisfy the 'preponderance of the evidence' standard, and [] the plaintiff at all times retains the ultimate burden of persuasion") (citing *Burdine*, 450 U.S. at 259-60).  Felder has not proffered evidence that "all of the relevant aspects" of these individuals' employment situation are "nearly identical" to those of Felder, and therefore has failed to demonstrate that these ten IS employees are "similarly situated."  *See Neuren,* 43 F.3d at 1514.  "'In the absence of evidence that the comparators were actually similarly situated' to him, an inference of falsity or discrimination is not reasonable."  *Montgomery,* 546 F.3d at 707 (quoting *Waterhouse*, 298 F. 3d at 995-96).[22]

---

[22]Relying upon *George v. Leavitt*, Felder also asserts that USDA's motion for summary judgment should be denied because "Felder has shown that neither of the two most common legitimate reasons for failing to promote Mr. Felder, lack of qualifications and absence of

2.     Other Evidence That IS' Legitimate, Nondiscriminatory And Nonretaliatory Reason Is Not Credible

Felder also argues that USDA's proffered reason for instating Felder at the FP-2, rather than the FP-1, grade level is "nothing but a ruse designed to cover up the discriminatory intent behind IS' predetermined decision not to promote Mr. Felder." Pl.'s Opp'n at 29. In support of this claim, Felder asserts that: (1) USDA is "hiding" its real reason for its decision behind claims of attorney-client privilege; (2) USDA's asserted reason has materially changed over time and across individuals and is therefore not credible; and (3) USDA knew in advance that there would be no comparator for Felder. *See* Pl.'s Opp'n at 29-37. The Court shall examine each argument in turn.

a.     Attorney-Client Privilege

First, Felder attacks USDA's assertion that the Agency believed in good faith that, in order to comply with Judge Kessler's February 4, 2002 Order, it was required to determine what FP-grade levels both Simmons and Felder would likely have occupied in 2003 if they had been originally selected to the IS vacancies in 1997. *See* Pl.'s Opp'n at 29-30. Felder argues that the February 4, 2002 Order did not explicitly require IS to promote either Felder or Simmons, and IS was therefore under no legal obligation to promote either employee. *Id.* However, the fact that

---

vacancy, is the asserted basis for the Agency's decision not to give Mr. Felder the same 'paper promotion' it gave Mr. Simmons." Pl.'s Opp'n at 28-29. Felder is mistaken, however, as these factors go to a plaintiff's ability to establish an inference of discrimination as part of his or her prima facie case. *George,* 407 F.3d at 412. Where, however, as here, the employer has asserted a nondiscriminatory legitimate reason for the challenged action, "'the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s].'" *Reeves*, 530 U.S. at 142-43. The only question remaining is whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady,* 520 F.3d at 494.

the February 4, 2002 Order is silent as to promotions, which USDA concedes, *see* Def.'s Stmt. ¶

5, does not, by itself, negate or otherwise contradict USDA's good faith belief that, in order to

equitably implement the February 4, 2002 Order, the Agency should determine—not just what

positions Felder and Simmons would have been instated to 1997—but what positions Felder and

Simmons would have *likely* occupied in 2003.  *See* Def.'s Reply at 4-5.  The Court finds that

USDA's good faith belief is, under the circumstances, a reasonable one, and Felder has not

offered any evidence—other than his own unfounded speculations—demonstrating that USDA's

assertion is a post-hoc fabrication.  *See Ginger v. District of Columbia*, 527 F.3d 1340, 1347

(D.C. Cir. 2008) (rejecting plaintiff's arguments that defendant's "justifications were intended to

cover up [defendant's] true motivation [because] their theory is not supported by the record," but

rather only by plaintiff's own vague and unsubstantiated allegations).  Indeed, the fact that the

Agency's final offers to Simmons and Felder both included "paper promotions" to the FP-3 and

FP-2 grade levels respectively strongly supports USDA's assertion that it has consistently

understood that it was required to place Felder and Simmons in the positions they would have

likely occupied in 2003, rather than in the positions they would have occupied in 1997 (*i.e.,* FP-4

and FP-3 grade levels respectively).  The fact that Felder disagrees with the Agency's

determination that he would have likely obtained only the FP-2 grade level, and not the FP-1

grade level, by 2003 does not contradict USDA's legitimate nondiscriminatory and nonretaliatory

reasons for making that determination in the first place.

Felder attempts to shift the blame for his failure to present any evidence contradicting

USDA's assertion onto the Agency itself, alleging that USDA "blocked" Felder's efforts during

discovery to question deposition witnesses regarding communications the IS staff had with

44

USDA counsel in reaching the decision to instate Felder at the FP-2 grade level and refused to

permit Felder to depose USDA counsel Campbell. Pl.'s Opp'n at 30, 35-36. Felder argues that

"USDA cannot have it both ways, its Agency witnesses using advice of counsel as a sword to

establish or aid its defense while its counsel invokes attorney-client privilege as a shield to avoid

having its witnesses answer questions about that advice and defense." *Id.* at 37. In support of

this proposition, Felder cites *Intex Recreation Corp. v. Metalast, S.A.*, No. Civ. A. 01-1213, 2005

WL 5099032, *4 (D.D.C. Mar. 2, 2005) and *Aspex Eyewear Inc. v. E'lite Optik, Inc.*, 276 F.

Supp. 2d 1984, 1092-93 (D. Nev. 2003). Both *Intex* and *Aspex Eyewear*, however, involved

motions to compel. As USDA points out, discovery in this matter is closed, and at no time

during discovery (or even afterwards) did Felder move to compel the communications of which

he now complains. *See* Def.'s Reply at 10-11. Having failed to move to compel, as Felder

should have done if he believed the communications were improperly withheld on the grounds of

attorney-client privilege, the Court agrees that Felder cannot now use his failure to do so to create

an issue of material fact precluding summary judgment. As the D.C. Circuit has observed, "in

producing nondiscriminatory reasons for its challenged action, the employer is not obligated to

support these reasons with objective evidence sufficient to satisfy the 'preponderance of the

evidence' standard," rather "the plaintiff at all times retains the ultimate burden of persuasion."

*Aka*, 156 F.3d at 1289.

     b.  Alleged Inconsistencies

   Felder next argues that USDA's asserted legitimate, nondiscriminatory and nonretaliatory

reason should not be credited because the offered reason has materially changed over time and

across individuals. Pl.'s Opp'n at 31- 33. As the D.C. Circuit observed in *Brady*, a plaintiff may

try to cast doubt on an employer's asserted reasons by pointing to "changes and inconsistencies in [those] stated reasons." 520 F. 3d at 495 n.3. The Court finds, however, that Felder has not offered any evidence that USDA's reasons have, in fact, materially changed and/or been inconsistent. To the contrary, the evidence in the record demonstrates that USDA has consistently explained that it instated Felder at the FP-2 grade level based on its determination that an individual, like Felder, who entered into IS in 1997 at the FP-3 grade level and was later promoted to the FP-2 grade level would have been unlikely to receive an additional promotion to the FP-1 grade level by 2003. Admittedly, USDA utilized different methods for reaching this conclusion, but both its search for a comparator employee and its review of all annual promotions from the FP-2 to FP-1 grade level from 1997 to 2002 went directly to the key question—whether Felder, assuming entrance into IS in 1997, would have likely received a promotion to the FP-1 grade level by the time of his actual instatement in 2003. USDA has been consistently clear that it determined the answer to that question was no. Felder has offered no evidence to the contrary.

Felder nonetheless argues that USDA's initial explanation, as provided by USDA counsel, Campbell, in her May 9, 2003 Letter, varies materially from USDA's explanation, as provided during the subsequent EEO investigation. *See* Pl.'s Opp'n at 31-32. In her May 9, 2003 Letter, Campbell explained that USDA had agreed to place Felder at the FP-2 grade level (rather than at the FP-3 grade level as previously offered in September of 2002), but had concluded that a promotion to the FP-1 grade level was not appropriate: "The record is clear that most individuals working in IS in 1997 at the FP-3 level remain at the FP-2 level today. Therefore, the Agency has offered Felder a FP-2 position." May 9, 2003 Letter. However,

according to Felder, during the subsequent EEO investigation, USDA "abandoned" this initial reason for not promoting Felder to the FP-1 grade level, and instead adopted a new explanation based on the absence of a comparator employee for Felder.  Pl.'s Opp'n at 31-32.  Thereafter, Felder argus that Wyss added yet another "new wrinkle" when he explained that promotions are easier to secure when moving from an FP-4 to and FP-3 grade level than when seeking to be double-promoted from an FP-3 to an FP-1 grade level.  *Id.* at 32.

The Court, however, finds nothing inconsistent about these explanations.  Semantics aside, each is simply one way of articulating USDA's ultimate determination that an individual who, like Felder, would have entered into IS in 1997 at the FP-3 grade level and was later promoted to the FP-2 grade level, would have been unlikely to receive a second promotion to the FP-1 grade level by 2003.  Accordingly, the Court concludes that Felder "has not demonstrated the type of 'shifting rationale,' or an after-the-fact statement that is required to establish that the defendant's nondiscriminatory [and nonretaliatory] reason is a pretext for discrimination." *Jones v. Bernanke*, 493 F. Supp. 2d 18, 33 (D.D.C. 2007); *cf Kalinoski v. Guiterrez*, 435 F. Supp. 2d 55, 68 (D.D.C. 2006) (inferring a shifting rationale where the plaintiff's supervisor had mentioned that it replaced the plaintiff because of her job performance, yet, during a deposition, the plaintiff's supervisor stated that he had no concerns about the plaintiff's work performance).

Felder also argues that the "the parameters" of the "criteria IS elected to employ in defining [a] comparator" were "constantly changing as Mr. Felder's request for promotion and his subsequent EEO case progressed."  Pl.'s Opp'n at 29.  Specifically, Felder argues: (1) Skaggs stated that, in determining whether there was a comparator to Felder, she looked at individuals who entered into IS from June 9, 1997 to December 9, 1998, whereas Wyss initially stated that

USDA looked only to those individuals entering IS in 1997 but then later testified that the relevant time period was in fact 1995 and 1999; (2) Wyss initially stated that, in processing Felder's request for a promotion, IS followed the State Department and USDA Foreign Agriculture Service policies on handling lateral entries in Felder's case, but Skaggs later admitted that IS did not use either policy in determining Felder's placement; and (3) Skaggs stated that she looked for any individuals entering into IS in the designated time period, while Wyss stated that the search was limited to individuals in the same occupational series as Felder.  Pl.'s Opp'n at 32-33.  Upon closer inspection, each of these alleged inconsistencies disappear and/or are of such a minor character that they do not give rise to an inference of discrimination or retaliation. The Court will examine each in turn.

i.      Alleged inconsistencies as to time period

First, Felder alleges that Wyss and Skaggs gave conflicting testimony as to the relevant time period in which USDA searched for a comparator for Felder and Simmons.  *Id.* at 32-33.  Skaggs averred that she was asked by Agency counsel to "determine if any individual had been converted to the FS system during the designated time period," which she states is "June 9, 1997 - December 9, 1998."  Skaggs Aff. at 3.  As Skaggs explained, the 1997 to 1998 time frame was chosen because it encompassed the same roster that Felder and Simmons would have been on at the time they applied for the IS vacancy positions.  *See* Skaggs Depo. at 41-42.  As to Wyss, he testified as follows at his deposition:

Q.  When you say that they came in at the same time, what timeframe did you consider to be the same time?

A.  I believe we were looking at a 1997 date.

Q.  So they would have had to come in in 1997 to be considered a comparative?

48

A.  Or around that time.

Q.  What do you mean by around that time, please?

A.  I imagine if there was a year or two before or a year or two after they would have been considered.

Q.  So between 1995 and 1999 would have been around the same time as you defined it?

A.  Roughly.

Wyss Depo II at 28-29.

The Court finds that Wyss' testimony does not conflict with that of Skaggs.  Although Skaggs provided a more detailed description of the relevant time frame (including the day, month and year), this is reasonable given that she, and not Wyss, was responsible for actually collecting the data at issue.  *See* October 31, 2008 Email.  More importantly, both Wyss and Skaggs testified as to the same basic time period—*i.e.,* the time frame in which Felder and Simmons would have been originally instated into IS.  As to Wyss' statement that he "imagine[s]" IS would have considered whether any comparator who entered into IS "a year or two before or a year or two after," such an assertion does not inherently conflict with Skaggs' statement that she was requested to compile data as to the June 9, 1997 to December 9, 1998 time period. Moreover, the only way in which a reasonable jury could possibly infer that this alleged inconsistency gives rise to any inference of discriminatory or retaliatory motive is if, for example, Felder had presented evidence that USDA was manipulating the dates to disguise that an individual similarly situated to Felder did in fact enter into IS "a year or two before or a year or two after" the dates searched by Skaggs and was subsequently promoted from the FP-2 to the FP-1 grade level.  Felder, however, has failed to provide any evidence of discriminatory or

retaliatory motive, and accordingly, "no reasonable jury could make such a gargantuan inferential

leap other than through rank speculation." *Hamilton,* 542 F. Supp. 2d at 55 (rejecting plaintiff's

claim that alleged inconsistencies in the record gave rise to inference of discrimination).

     ii.  Alleged inconsistencies as to application of IS' policy

  Second, Felder alleges that Wyss gave contradictory testimony as to whether USDA

followed Agency policy in instating Felder to the FP-2 grade level. Pl.'s Opp'n at 32-33.

According to Felder, Wyss initially stated that IS followed the State Department and USDA

Foreign Agriculture Service policies on handling lateral entries in Felder's case, but Skaggs later

admitted that IS did not use either policy in determining Felder's placement. Pl.'s Opp'n at 32-

33. Again, however, upon closer inspection, the Court finds that there is no inconsistency in the

record. Wyss stated in his affidavit that "I believe the policy was followed as close as possible,

but being a court ordered settlement case there may have been some deviation in favor of the

Complaint [*sic*]." Wyss Aff. at 3. As Wyss further clarified at deposition, the reference to

"policy" in his affidavit was to IS' lateral entry policy, not the State Department and USDA

Foreign Agriculture Service policies on handling lateral entries: "Q. Now, you indicated that in

deciding which position to place Mr. Felder in you looked at agency policy. What form did that

agency policy take. . . . A. I think the only thing relevant here would be the normal lateral entry

policy coming in as an FP-3.". Wyss Depo. II at 50-51. As to Skaggs, when asked at deposition

whether she referenced Agency policy regarding lateral entries in compiling the 1997-2002

Promotion Data, Skaggs replied "No." Skaggs Depo. at 32-33. Nothing about these statements

is inconsistent. Together both indicate that, given the unique context of Felder's instatement,

USDA did not follow the general policy for promotions and, indeed, affirmatively acted in

contravention to IS' lateral entry policy to Felder's benefit.

To the extent Felder implies that USDA's asserted reason should not be credited because USDA did not follow IS' normal policy, the Court cannot agree.  Admittedly, a plaintiff may attempt to cast doubt on an employer's asserted reasons by offering evidence of "the employer's failure to follow established procedures or criteria."  *Brady*, 520 F.3d at 495 n.3.  However, here, the fact that the Agency did not follow the lateral entry policy, and permitted Felder to enter into IS at the FP-2, rather than FP-3, grade level, affirmatively *benefitted* Felder.  Accordingly, any claim that USDA's not to follow IS' lateral entry policy raises an inference of discrimination and/or retaliation is, to say the least, nonsensical.  Moreover, given the atypical nature of Felder's instatement, the fact that USDA did not follow the normal policy for promotions does not give rise to an inference of discrimination or retaliation in this case.  As described above, promotions are generally decided on a yearly basis by an intermediate selection board.  *See supra* 12-13.  As Felder was not in IS prior to 2003, he obviously did not go through the normal promotion process.  USDA therefore decided to determine both Felder's and Simmons' grade level by extrapolating what would have happened if they had entered into IS in 1997.  Wyss Aff. at 1.  Finally, although Felder complains that USDA's "comparators" approach is not specifically provided for in any internal policy, *see* Pl.'s Opp'n at 35, the evidence demonstrates that USDA used the same "comparators" approach in assessing both Felder's and Simmons' potential for promotions.  *See* Def.'s Stmt. ¶¶ 9, 10.  Consequently, the fact that USDA did not follow established Agency policy in this instance, where such policies were inapplicable to the situation at hand, is neither surprising nor unreasonable, and does not give rise to an inference of discrimination or retaliation.

iii.  Alleged inconsistencies as to occupational series

Finally, Felder alleges that Skaggs and Wyss gave contradictory testimony as to whether a comparator employee, as defined by USDA, was required to be in the same occupational series as Felder.  Pl.'s Opp'n at 32-33.  According to Felder, Skaggs testified that she searched for any individuals entering into IS in the designated time period, while Wyss stated that the search was limited to individuals in the same occupational series as Felder.  *Id.*  However, once again, upon closer inspection, these alleged discrepancies disappear.  Skaggs stated, in her affidavit and deposition, that she was directed to locate IS employees who entered into IS between June 1997 and December 1998, without specifying whether or not her search was limited by occupational series.  *See* Pl.'s Resp. ¶ 9; *see also* Skaggs Depo. at 41-44; Skaggs Aff. at 3.  Wyss, however, testified in his deposition that USDA searched for individuals that "came in at the same time, same series, as Mr. Felder."  Wyss Depo. II at 28.  These statements are not contradictory.  Arguably, had Plaintiff's counsel followed-up with Skaggs to clarify whether her search was limited by occupational series, any potential inconsistencies would have been clarified.  Regardless, Felder presents no evidence to dispute Wyss' statement that the search was limited by occupational series, and Skagg's testimony does not affirmatively contradict this assertion.

Felder also argues that, to the extent the search for a comparator was limited by occupational series, such a limitation was unfair.  Pl.'s Opp'n at 34-35.  According to Felder, IS considers certain occupational series (GS-436, GS-401, and GS-414) to be interchangeable series for promotion purposes, such that an employee in one of those three series could complete on equal footing for a promotion in any of the other series.  Pl.'s Resp. ¶ 19.  Felder therefore argues that IS' decision to limit its search for a similarly situated employee to only those in Felder's

occupational series (436) was "flawed and inexplicably unfair" and that "[f]reed of that erroneous constraint," it is clear that ten similarly situated IS employees in those related occupational series received promotions from the FP-2 to the FP-1 grade level. Pl.'s Opp'n at 34-35. However, as explained above, Felder admits that *all* of these ten IS employees had more than five years experience in IS, unlike Felder. *See* Pl.'s Resp. ¶ 19. Felder therefore has not shown that any of those ten IS employees are similarly situated to Felder, and he has thus failed to show why USDA's decision to limit the search for a comparator by occupational series was discriminatory or retaliatory. *Waterhouse*, 124 F. Supp. 2d at 8 (A plaintiff "'must do more than just deny or criticize the proffered reasons of the defendant[s].'") (quoting *Vasilevsky v. Reno*, 31 F. Supp. 2d 143, 149 (D.D.C. 1998); *Fishbach v. District of Columbia Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C. Cir. 1996) (absent discriminatory or retaliatory intent, employment decisions that are unwise or unfair do not violate Title VII). Moreover, the record evidence demonstrates that USDA used the same parameters in locating a comparator for both Felder and Simmons, a fact that Felder does not dispute. *See* Def.'s Stmt. ¶¶ 9, 10. Accordingly, Felder has not presented any evidence from which a reasonable jury could infer USDA limited its search to individuals within Felder's occupational series for impermissible reasons.

                    c.      USDA Knew in Advance it Search for a Comparator Would Fail

Felder also argues that USDA's asserted reason for not promoting Felder to the FP-1 grade level is "a sham by design" because USDA designed its search for a comparator employee in such a way that it knew no comparator would be found. Pl.'s Opp'n at 33-34. According to Felder, because no management-level employees entered into IS in the relevant time period, USDA would have known in advance that, by limiting its search to only those employees who

entered IS between 1997 and 1998, there would be no comparator for Felder.  *Id.*; *see also* Pl.'s

Stmt. ¶ 30.  Although Felder is correct, as USDA concedes, that no management-level employees

entered into IS during the relevant time period, *see* Skaggs Depo at 12; *supra* 6 n.5, Skaggs

testified that the search was in fact limited to the 1997 - 1998 time period because that was the

time period in which Felder and Simmons would have originally entered into IS.  *See* Skaggs

Aff. at 3; *see also* Skaggs Depo. at 41-42.  Felder has offered no evidence to rebut or contradict

this statement, let alone any evidence from which a jury might infer that the real reason for so

limiting the search was discriminatory and/or retaliatory.  *Dancy v. Am. Red Cross*, 972 F.Supp.

1, 3 (D.D.C.1997) ("The evidence presented in support of this claim, however, consists only of

plaintiff's vague, unsubstantiated allegations and is, therefore, insufficient.").  "[Felder's]

unsupported, personal speculation about the motivations of [USDA] personnel is, without more,

simply not enough to show pretext."  *Asghar v. Paulson*, 580 F. Supp. 2d 30, 37 (D.D.C. 2008);

*see also Montgomery*, 546 F.3d at 708 ("The possibility that a jury might speculate in the

plaintiff's favor under such circumstances is not sufficient to defeat summary judgment.");

*Brown v. Small,* 2007 WL 158719, at *6 (D.D.C. Jan. 19, 2007) (holding that speculation about

decision-maker's hidden motives is insufficient to counter the USDA's legitimate

non-discriminatory reason).

The Court finds that a reasonable jury could not, based on the evidence in the record,

infer that USDA instated Felder at the FP-2 grade level for discriminatory and/or retaliatory

reasons.  None of Plaintiff's proffered evidence casts doubt on USDA's asserted legitimate,

nondiscriminatory and nonretaliatory reason, and the record amply supports USDA's position

that it instated Felder at the FP-2 grade level based upon its determination that an individual

entering IS at the FP-3 grade level in 1997 would have been unlikely to have obtained a

promotion to the FP-1 grade level by 2003.  Indeed, the evidence in the record actually confirms

that, far from discriminating and/or retaliating against Felder, USDA affirmatively promoted

Felder from the FP-3 grade level to the FP-2 grade level upon entry into IS in contravention of its

normal policy.  Although Felder may disagree with USDA's decision to instate him at the FP-2

grade level and not the FP-1 grade level, Felder has provided no evidence, other than his own

unsupported speculation, that USDA's reason for doing so was pretext and that the real reason

was based upon discriminatory and/or retaliatory motives.  Accordingly, the Court shall GRANT

USDA's Motion for Summary Judgment.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendant's Motion for

Summary Judgment.  This case is therefore DISMISSED in its entirety.  An appropriate Order

accompanies this Memorandum Opinion.

Date:   January 27, 2009

*/s/*
COLLEEN KOLLAR-KOTELLY
United States District Judge